UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
In Re:                          )
                                )
AREDIA and ZOMETA PRODUCTS      )   No. 3:06-MDL-01760
LIABILITY LITIGATION            )   Judge Campbell/Brown
(MDL No. 1760)                  )
                                )
This Document Relates to        )
All Cases                       )
```

**O R D E R**

A hearing was held in this matter on August 28, 2007. As an initial matter the Magistrate Judge inquired if there were any objections to the Plaintiffs' Steering Committee's (PSC) request for an order dealing with the common benefit fund (Docket Entry 505). The Magistrate Judge had sent notice to all parties in this request, providing a deadline for any objections. The deadline has passed and no objections were made by any party. Accordingly, the Magistrate Judge will enter the proposed order which accompanied this motion (Docket Entry 505).

Also pending is the Plaintiffs' motion in *Kopel v. Novartis Pharmaceutical Corporation*, Case No. 3:07-0779. This motion was pending at the time this case was transferred to this district under the MDL procedures. The Defendants have responded to this motion (Docket Entry 576). From an initial reading of the pleadings, it appears that a reply might be useful in resolving this issue. Accordingly, the Plaintiffs in this matter may file a reply limited to five pages before **September 10, 2007**.

There are several motions concerning the Defendant's allegation that several of the Plaintiffs' fact sheets are

deficient (Docket Entries, 553, 555, 557, 565, 567, 569 and 572). Unless the Magistrate Judge is advised that the parties have resolved the questions concerning the Plaintiffs' fact sheets, the Magistrate Judge will rule upon those matters as soon as the Plaintiffs have responded. The Magistrate Judge is certainly aware that many of the Plaintiffs are in extremely poor health or are now represented by a personal representative. Nevertheless, these are important documents and, as the Plaintiffs brought their lawsuits, they need to timely complete the Plaintiffs' fact sheets so that discovery may proceed in an orderly fashion.

The Plaintiffs have requested permission to file two exhibits non-electronically (Docket Entry 589). This motion is **GRANTED**. Plaintiffs may file a copy with the Clerk's office. Additionally, the Plaintiffs should provide chambers an additional copy of these two exhibits.

The Magistrate Judge next inquired about the status of the New Jersey state cases. He was advised that there are a few of these cases filed in New Jersey and there may be yet a few more filed. Mr. Valad advised that he was counsel for the majority of these cases and he further advised that he anticipated filing with the New Jersey courts a request to, in effect, have them handled by one judge. Mr. Valad was requested to keep this Court advised of the New Jersey proceedings and if a single judge is designated in New Jersey, Mr. Valad is to advise the undersigned so that the efforts of the two courts may be properly coordinated.

Finally, the Magistrate Judge heard arguments on Plaintiffs' motion to compel and for sanction of attorneys fees for
2

Case 3:06-md-01760   Document 597   Filed 09/05/07   Page 2 of 10 PageID #: 8768

violation of the Court's discovery orders (Docket Entry 508). This motion is **DENIED** without prejudice.

Discovery in cases of this magnitude is always difficult. From the briefs of the parties, as well as extensive oral argument, it appears that approximately seven million pages have already been furnished by the Defendant and that there may be up to an additional three million pages involved before the dust finally settles. The Plaintiffs in their motion and supporting documents (Docket Entries 508 through 517), pointed out a number of examples of what they believe are improper redactions, inadequately explained redactions, erroneous redactions, and excessive use of confidentiality designations. The Defendant, in its response (Docket Entry 545), vigorously protested its innocence.

Prior to the hearing, the Magistrate Judge entered an order (Docket Entry 545) requiring Defendant to furnish unredacted copies of Exhibits 8 through 13 of Docket Entry 508, and, additionally, to file with the Court *in camera* both redacted and unredacted copies of a substantial list of documents. The Magistrate Judge randomly selected these documents from the list of redacted documents that the Plaintiffs were concerned about. Novartis complied with this order and filed two large three-ring binders, totaling approximately four inches of documents.

The Magistrate Judge reviewed the randomly selected documents to determine if it appeared the redactions were properly made. The Magistrate Judge found that these redactions primarily were proper. What appears to cause the Plaintiffs concern is that in many cases they are given a document which will have a small

amount of text with a good deal blacked out and then a number of pages totally blacked out. From his review of the sample documents, the Magistrate Judge is forced to agree with the Defendants. They have not redacted information involving the two products in this case, Zometa and Aredia, but they have deleted information which concerns other drugs of the programs and other programs. The Magistrate Judge has to conclude that, in fact, this material concerning other drugs, products, and procedures is not relevant nor likely to lead to relevant material and therefore is properly redacted.

The Magistrate Judge has repeatedly cautioned the Defendant that it needed to provide an adequate log showing the reasons for the redactions. The Defendant's log leaves a good bit to be desired. However, based on correspondence between the parties as well as statements in court, it is clear that the log is adequate.

Turning to some of the specific items complained about, the Magistrate Judge reviewed these in some detail.

Exhibit 8 is an internal document of Novartis with a title and most of the contents removed. In reviewing the unredacted document, the redacted pages do, in fact, comprise discussion of products other than Aredia o**r** Zometa.

Exhibit 9 involves an article written by Dr. John Hellspein, one of the Plaintiffs' experts. This document was redacted to delete the name of the institution where Dr. Hellspein works at the University of Iowa. Novartis' contention on this matter is that this was an article received from Hellspein by a

4

Novartis employee with a note to consider the matter as copyright and for personal information only with a request not to forward without prior permission. Novartis admits that it redacted from this copy the name of the laboratory where he was employed and his name and the name of a colleague and their affiliation on another page. Defendant points out that it received the same article from other sources and it did provide the Plaintiffs' Steering Committee (PSC) with nonredacted copies, citing the relevant Bates numbers. Defendant contends that because of the nature by which it received this particular document it was required by HIPPA regulations to delete this material.

This illustrates a problem that has continuously occurred in this case and will undoubtedly continue to occur in the future. A document received one way may be under different protections than a document received in another way. In this case, the Magistrate Judge believes that the redaction is proper, although on a practical sense, a bit nonsensical. In addition, there is some consideration of the old rule of no harm, no foul, since the PSC has unredacted copies.

The PSC points out that having to sort through the millions of pages for unredacted copies is an undue burden on them. Novartis, on the other hand, contends that the Plaintiffs have made extensive requests and that it has attempted to comply by providing all documents that are responsive. Defendant contends that when it provides documents in this wide fashion, it would be an undue burden on Novartis to have to specifically point out to the Plaintiffs which documents are duplicates. Both arguments have

5

some validity. However, given the volume of documents involved, and those yet to be involved in this case, the Magistrate Judge does not believe that Novartis has a responsibility, as a matter of routine, to identify duplicate documents. It would certainly be helpful if Novartis could do so, if it is possible, with a reasonable amount of effort. The Magistrate Judge would frankly hope that the computer gurus that help sort through this material for both sides would have a program that could easily identify duplicate documents. Nevertheless, if Plaintiffs ask for a good bit of material, they run the risk of getting exactly that.

Exhibit 10 is a document addressed on its face as being sent to all associates worldwide. The rest of the document is essentially blocked out. Frankly, the Magistrate Judge wonders why any part of the document was furnished to the Plaintiffs in the first place. The Magistrate Judge has reviewed the unredacted document and, again, it deals with company policies, procedures, and management training that does not relate to the two drugs at issue. Accordingly, it is nonresponsive. In connection with documents of this nature, the Plaintiffs contend that the Defendant is overusing the confidentiality footer, which then requires Plaintiffs to file the majority of documents attached to motions under seal. Novartis contends that much of what it does is proprietary, that there are a number of competitors who would like to have information about its procedures, policies and plans and that it, as a matter of company policy, must deem this information confidential. The Magistrate Judge is concerned about the overuse of both the blackout pen and the confidentiality stamp.

Nevertheless, from the documents he has reviewed, the Magistrate Judge cannot say that Novartis has unduly abused these tools. Given the number of documents, there will undoubtedly be some errors. However, from a review of the random sample, the Magistrate Judge has simply not found any wholesale abuse.

Exhibit 11 is a document which has the email address of a Novartis employee blacked out. The Defendant admits that the email address was erroneously redacted; however, Defendant points out that it provided twenty-one other copies of the document without the redaction. If twenty-two copies of the document are produced, the Magistrate Judge begins to understand how this case can approach ten million documents. He only wishes he had some magic wand that could reduce the production down to one copy of each document produced. However, this simply is not within his powers.

Exhibit 12 is again a published article which apparently has a redaction of the author and the author's affiliation from the top page. Again, Novartis admits that this was erroneously redacted. However, Novartis again points out that it provided nine nonredacted copies.

Exhibit 13 is a document which has a few words deleted from the document. From reading the document in its redacted context, it appears that the word is "associated." On its face, this redaction would appear to be nonsensical.

However, Novartis pointed out that this document was on their privilege log and argued that the redaction of the word was proper. Novartis explained that this document was edited by one of

7

its attorneys using the strike-out redline method and it had redacted the attorney's rough drafting changes as part of work product. There was apparently an email that accompanied this edited document that would have made it clear that it was from an attorney and that the changes were his. Unfortunately, the PSC did not have this explanation up front. However, with this explanation and with a review of the unredacted document, it appears that this redaction is arguably attorney work product privileged and is so reflected on Novartis' log.

Exhibit 14 is a published article which discusses ONJ and which is designated confidential. The PSC properly points out that a published article can hardly be deemed confidential. Novartis admits that it did, in fact, erroneously produce one copy of the document with a confidential footer. However, Novaartis again points out that it provided ten other copies of the document without a confidential footer. The Plaintiffs are certainly free to use any document which has not been deemed confidential without being bound by any confidential footer.

The final Exhibit 15, again, is a published article published in a professional journal discussing patient care with OMJ. This document was also designated as confidential. Novartis again admits that it erroneously produced this copy with a confidential footer. However, Novartis points out that after it realized the error, this article was reproduced without a confidential footer on July 23, 2007, and that it also produced at least five other copies of the document without the confidential footer.

8

By denying this motion the Magistrate Judge does not in any way intend to sanction overuse of the blackout pen or the confidentiality stamp and he again repeats what he said earlier: these tools should be used with restraint. However, the reality of the situation is that given the volume of documents involved in this case, some errors will undoubtedly occur. In the Magistrate Judge's opinion; however, these errors have not yet reached the level that requires sanctions or the wholesale stripping of redactions and confidentiality designations from productions.

Mr. Gary Reuben, counsel for Novartis, who appeared with Ms. Latimer, has assured the Court that he will be available to resolve any questions the PSC has. The Magistrate Judge will take him at his word on this matter.[1]

The Magistrate Judge is aware that there are a number of Plaintiffs who are extremely ill or who have died and that discovery is important to their case. The Magistrate Judge certainly has no intention of allowing either party to hide the ball from the other. The Magistrate Judge cannot give the Defendant a commendation for its handling of some of these documents. Nevertheless, he is not convinced that it has risen to the level that requires sanctions or the imposition of attorneys' fees at this time.

---

[1] In reviewing the docket sheet in this matter, Mr. Reuben does not, at the present time, appear on the list of counsel for the Defendant. It is possible that his name has been omitted in error; however, if Mr. Reuben has not formally applied for admission and paid the requisite fee, he should do so forthwith.

9

It is so **ORDERED**.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge