IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

_____

IN RE: AREDIA® AND ZOMETA® ) No. 3:06-MD-1760
PRODUCTS LIABILITY LITIGATION )
(MDL No. 1760) ) JUDGE CAMPBELL
)
) MAGISTRATE JUDGE BROWN
**This Document Relates To:** )
**Case Nos:** 3:05-CV-00718; 3:05-CV-00719; )
3:05-CV-00716; 3:06-CV-00506, 3:06-CV-00495; )
3:06-CV-00551; 3:06-CV-00618; 3:06-CV-00499; )
3:06-CV-00386; 3:06-CV-00385; 3:06-CV-00511; )
3:06-CV-00374; 3:06-CV-00376; 3:06-CV-00384; )
3:06-CV-00523; 3:06-CV-00391; 3:06-CV-00550; )
3:06-CV-00379; 3:06-CV-00375; 3:06-CV-00507; )
3:06-CV-00522; 3:06-CV-00514; 3:06-CV-00518; )
3:06-CV-00370; 3:06-CV-00392; 3:06-CV-00382; )
3:06-CV-00368; 3:06-CV-00393; 3:06-CV-00553; )
3:06-CV-00509; 3:06-CV-00521; 3:06-CV-00823; )
3:06-CV-00496; 3:06-CV-00372; 3:06-CV-00510; )
3:06-CV-00510; 3:06-CV-00512; 3:06-CV-00373; )
3:06-CV-00503; 3:06-CV-00497; 3:06-CV-00504; )
3:06-CV-00387; 3:06-CV-00526; 3:06-CV-00554; )
3:06-CV-00517; 3:06-CV-00378; 3:06-CV-00394; )
3:06-CV-00383; 3:06-CV-00377; 3:06-CV-00513; )
3:06-CV-00693; 3:06-CV-00371; 3:06-CV-00525; )
3:06-CV-00390; 3:06-CV-00381; 3:06-CV-00505; )
3:06-CV-00501; 3:06-CV-00516; 3:06-CV-00508; )
3:06-CV-00388; 3:06-CV-00389; 3:06-CV-00500; )
3:06-CV-00527; 3:06-CV-00554; 3:06-CV-00502; )
_____)

**NOVARTIS PHARMACEUTICALS CORPORATION'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR *EX PARTE* CONTACTS WITH CERTAIN
<u>PLAINTIFFS' TREATING PHYSICIANS</u>**

Through this Motion, Novartis Pharmaceuticals Corporation ("NPC") asks this Court to recognize NPC's right to engage in substantive *ex parte* contacts with plaintiffs' treating and/or prescribing physicians. As shown below, federal procedural rules permit such contacts where neither federal nor state substantive law precludes them. Because there is no substantive federal

prohibition on *ex parte* contacts and because 30 of the 34 states in which plaintiffs in the first-wave cases reside provide no substantive protection to physician-patient communications in litigation circumstances, the Court should permit *ex parte* conversations with physicians of plaintiffs residing in those states.

Moreover, as this Court has previously noted, *ex parte* communications with plaintiffs' physicians "may expedite the discovery process and reduce expenses in this litigation." Case Management Order ("CMO"), Docket #89 at 35, ¶ XI.C. In fact, significant efficiencies have already been realized following the Court's permission to conduct *ex parte* communications with treating physicians of the two then-putative class representatives Sybila Duncan and Carrie Lee, including avoiding unnecessary depositions of physicians and shortening the depositions of those physicians required to be formally deposed. *See* Docket #421 ("Duncan/Lee Order").[1] These efficiency benefits are no less important now that discovery is scheduled to close for the claims of more than 100 plaintiffs in less than five months. *See* CMO, Docket #89 at 40, ¶ XV.B.6. Time constraints are not, however, the only reason the Court should permit *ex parte* contacts. *See* Docket #442 at 2 ("The timing constrain[t]s were not the only reason the Magistrate Judge granted the *ex parte* contacts."). Due process also requires that NPC be given equally unfettered access to these potentially important trial witnesses as the plaintiffs already have. Accordingly, NPC respectfully requests that the Court grant this motion and permit NPC to meet with and question *ex parte* plaintiffs' doctors for the claims at issue in this motion. Plaintiffs oppose this

---

[1] NPC observes that, though in its prior Order granting *ex parte* communications, the Court required NPC to give the treating physicians the opportunity to include plaintiffs' counsel in the interviews, no treating physicians elected to do so.

motion, and wrongly would reserve to themselves the right to and benefits of *ex parte* conversations.[2]

## ARGUMENT

Plaintiffs' health care providers likely will offer testimony on, *inter alia*, whether each plaintiff was prescribed Aredia® – or a generic equivalent – and/or Zometa® (and, if so, for what duration, at what dose, with which concomitant medications, what warnings were provided, and what benefits were intended and derived), whether plaintiffs have a past or present jaw injury, what risk factors plaintiffs had for such an injury, prognosis and treatment course for such injury, and damages. Some of plaintiffs' physicians may have opinions on medical causation. Permitting NPC to engage in substantive *ex parte* conversations with plaintiffs' health care providers regarding plaintiffs' relevant medical information would permit NPC to determine which of plaintiffs' heath care providers it needs to depose and also facilitates a more streamlined deposition in cases where the providers' deposition is needed. These efficiencies inure to the benefit of NPC as well as the provider, the plaintiffs and, ultimately, the Court. Such contacts also place NPC and its counsel on an equal playing field with plaintiffs and plaintiffs' counsel – who currently have unfettered access to plaintiffs' providers.

Federal procedural law permits *ex parte* contacts with fact witnesses in the absence of state or federal substantive prohibitions against such contacts. No federal substantive law prohibits such contacts with physicians. This Court previously held that *ex parte* contacts were permissible with medical and dental providers of plaintiffs residing in California and Georgia, which recognize a physician-plaintiff privilege, but deem it waived by the initiation of a lawsuit

---

[2] Counsel for NPC sent a letter on 10/19/2007 to the PSC requesting consent to the ex parte contacts sought by this memorandum. In a 10/22/2007 conference call with counsel for NPC on various discovery matters, Mr. Germany stated that the PSC was not willing to consent.

such as those at issue here. *See* Duncan/Lee Order. Twenty-three other states are in line with California and Georgia on this issue. Five additional states do not recognize any applicable physician-plaintiff privilege in the first instance, so there is no restriction on NPC's ability to contact treating physicians there.

I. **FEDERAL PROCEDURAL LAW ALLOWS *EX PARTE* CONTACTS WHERE, AS HERE, THERE IS NO APPLICABLE PRIVILEGE OR OTHER SUBSTANTIVE PROHIBITION ON SUCH CONTACTS.**

Federal, rather than state, law then controls the procedural aspects of the discovery process. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (in diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts).[3]

The ability of counsel, including defense counsel, to conduct private witness interviews in federal court is "time-honored and decision-honored." *IBM v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975) (counsel for all parties may interview the adverse party's witnesses without the presence of opposing counsel); *see Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("the Federal Rules of Civil Procedure . . . have never been thought to preclude the use of such

---

[3] *See also Weiss v. Astellas Pharma, U.S., Inc.*, 2007 WL 2137782, at *3 (E.D. Ky. July 23, 2007) (Ex. A) ("Given that plaintiff has no substantive state law privilege, the federal court must now turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians."); *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047, 2005 WL 1799509, at *2-3 (S.D. Ind. July 25, 2005) (finding that because under state law, plaintiff waived any physician-patient privilege by placing medical condition at issue, informal witness interviews were permissible under federal procedural law) (Ex. B); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) (Ex. C) ("[W]hen the issue before the court is not *what* may be discovered, but *how* that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law."); *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("the issue of how discovery may be conducted is one of federal procedure"); *Evertson v. Dalkon Shield Claimants Trust*, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) (Ex. D) ("The method for discovering unprivileged material – whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews – is entirely a matter of procedure governed by the Federal Rules of Civil Procedure."); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) (although state law governs existence and waiver of privilege, "Federal Rules of Civil Procedure govern the discovery conducted in this case;" "[n]othing in those Rules prohibits informal interviews").

4

venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak").

The Sixth Circuit has recognized that *ex parte* contacts with treating physicians are permissible discovery tools. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (allowing *ex parte* contacts under federal procedural rules). In addition, this Court has authorized *ex parte* interviews when applicable state law waived confidentiality between a patient and physician. *See* Duncan/Lee Order; *see also Travis v. Thane Int'l, Inc.*, No. 3:02-CV-1030, 2005 WL 1971900, at *2 (M.D. Tenn. Aug. 15, 2005) (admitting evidence obtained from *ex parte* interview) (Ex. E). Other courts in the Sixth Circuit also have allowed *ex parte* contacts. *See Weiss*, 2007 WL 2137782 at * 2-5 (granting contacts and stating that "treating physicians are important fact witnesses" and "absent a privilege, no party is entitled to restrict an opponent's access to a witness" (internal quotations omitted)); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 805 (N.D. Ohio 2002) (denying a motion to preclude *ex parte* communications in products liability case); *Schwarz v. United States*, No. 94-CV-71147-DT, 1995 WL 871136, at *2 (E.D. Mich. Jan. 30, 1995) (federal rules do not prohibit *ex parte* contacts with a trial witness (a certified public accountant)) (Ex. F).[4]

---

[4] Private witness interviews protected from participation by opposing counsel have long been favored by courts to ensure that attorneys can represent their clients effectively within the adversarial process and gather information freely in preparing their cases for trial without revealing work product information. *See*, *e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product of lawyers consists, *inter alia*, of witness interviews and exposing such work product to opposing counsel's scrutiny would lead to "the interests of the clients and the cause of justice . . . be[ing] poorly served"); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935-36 (6th Cir. 1980) (attorney work product privilege creates zone of privacy in which attorney can investigate and prepare case; identity of whom counsel chose to interview and memoranda of interviews protected work product); *IBM*, 526 F.2d at 42, 44 (issuing writ of mandamus to permit defendant in civil suit to conduct private witness interviews; order barring such interviews "unduly infringed upon counsels' ability to prepare their case for trial").

5

Accordingly, *ex parte* contacts with plaintiffs' health care providers must be allowed unless federal substantive law or state privilege precludes such contacts. As to the plaintiffs addressed in this motion, no such ban on *ex parte* contacts exists.

### A. Federal substantive law does not preclude *ex parte* contacts.

There is no federal physician-patient or dentist-patient privilege. *See Hancock v. Dobson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (refusing to recognize a federal common law physician-patient privilege). Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 also provides no impediment to *ex parte* contacts here. HIPAA was enacted "to improve . . . the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." § 261, 110 Stat. at 2021. In order to ensure the confidentiality of the transmitted health information, the United States Department of Health and Human Services promulgated concomitant privacy regulations, including the "Privacy Rule." 67 Fed. Reg. 53182 (Aug. 14, 2002). The Privacy Rule expressly provides that a physician may disclose a patient's medical information once the patient executes a valid authorization as prescribed in the Rule. 45 C.F.R. §§ 164.502(a)(1)(iv), 164.508 (2007). Courts have held that once a patient-turned-plaintiff executes such an authorization, *ex parte* interviews between the plaintiff's treaters and defense counsel are permissible. *See Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *4-5 (E.D. Mich. Nov. 10, 2005) (HIPAA permits *ex parte* interviews when they are conducted in compliance with HIPAA regulations based on the principle of fundamental fairness to investigate the health condition of the plaintiff without interference of and without disclosing work product to plaintiff's counsel) (Ex. G); *cf. Law v. Zuckerman*, 307 F. Supp. 2d 705 (D.

6

Md.) (informal witness interviews conducted consistent with HIPAA's disclosure requirements are permissible). HIPAA also does not prevent *ex parte* communications where a qualified protective order is in place. *See Croskey*, 2005 WL 4704767, at *4-5 (Ex. G). Here, NPC is seeking disclosure of information pertinent only to the medical conditions plaintiffs placed at issue, and the Court previously approved a HIPAA-compliant authorization that will permit such disclosures. *See* 5/11/2007 Letter from Latimer to Osborn attaching authorization at Ex. H. Discovery via informal *ex parte* interviews is therefore permissible under applicable federal law.

**B.** ***Ex parte* contacts are permissible where plaintiffs reside in a state that has not recognized any physician-patient privilege.**

Five states – Alabama, Kentucky, Maryland, Massachusetts, and South Carolina –, do not recognize any physician-patient privilege that would require this Court to prohibit *ex parte* communications with the treating physicians of plaintiffs who are residents of those states.[5] *See, e.g., Norris v. State*, 601 So. 2d 1105, 1106 (Ala. Crim. App. 1985) ("Alabama does not recognize a physician/patient privilege of confidentiality.") (Ex. I); *Stidham v. Clark*, 74 S.W. 3d 719, 729-730 (Ky. 2002) (C.J. Keller, concurring) (clarifying that Kentucky recognizes no physician-patient privilege) (Ex. J); *Butler-Tullio v. Scroggins*, 774 A.2d 1209 (Md. Ct. Spec. App. 2001) ("there is no physician-patient privilege in Maryland") (Ex. K); *Alberts v. Devine*, 479 N.E. 2d 113, 119 (Mass. 1985) (no evidentiary privilege for physician-patient communications) (Ex. L); *McCormick v. England*, 494 S.E.2d 431, 433-34 (S.C. 1997) (South Carolina does not recognize physician-patient testimonial privilege) (Ex. M). In states where no privilege is recognized, there is no state-law-specific basis to prohibit *ex parte* contacts.

---

[5] Eight Wave I plaintiffs reside in Alabama, Kentucky, Maryland, Massachusetts, or South Carolina: Sarah A. Cole, Pamela Kyle, Phyllis Newman, James Simmons, Julie Lowell, Otilia Zinger, and Randy Woollard.

7

### C. Where the initiation of litigation waives a physician-patient privilege, state law does not impede *ex parte* contacts.

Twenty-five of the states where the Wave I plaintiffs reside – Arizona, Arkansas, California, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Washington, and Wisconsin – recognize a physician-patient privilege, but deem that privilege waived by the initiation of litigation that puts the plaintiffs' health in issue.[6] *See* Ex. N, "Table of States Recognizing That Physician-Patient Privilege Is Waived By Initiation Of Litigation;" *see also Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) (finding that when the plaintiff in a negligence action asserts claims for mental or physical injury, plaintiff thereby places her mental or physical status in controversy). This Court has already determined that the substantive laws of two of those states, California and Georgia, do not stand in the way of *ex parte* contacts. *See* Duncan/Lee Order. This is so because, although California and Georgia recognize a physician-plaintiff privilege, that privilege is waived by the initiation of litigation such as the lawsuits brought by plaintiffs here. *See, e.g., City & County of San Francisco v. Superior Court*, 231 P.2d 26, 28 (Cal. 1951) ("if there had

---

[6] There are 84 Wave I plaintiffs who are residents of those 25 states: Karen Evers, Diann Romero, Patsy Carter, Shirley A. Grizzle, Angela D. Wood, Eula Mae McDaniel, Scott R. Brown, Michel Hendrix, Victor Kalily, Nancy Radin, Sally Reinardy, Janet G. Tucker, Charles Ulatowski, Brenda Melching, William White, Runette Champion, Susan Eberhart, Glenn Hiller, Kathryn A. Beard, Edwin Melau, Georgian Wilson, Gerald L. McIntosh, Jacquelyn Prose, Debra L. Thompson, Denise White, Donald Arbuckle, Mindy J. Knopf, Gary Stevens, Arlene Perkins, Zena Biocca, Jack Cuthbert, Fred Fragomeli, Terry Anderson, Betty Swanson, Kyle E. Broyles, Francis Jo Calloway, Marsha Brown, John E. Brodie, Linda H. Johnson, Ruth Baldwin, Mary C. Blumenshine, Elizabeth A. Miller, Margaret Cartelli, Angelina Casali, Barbara Davids, Helene Deutsch, Susan Schirripa, Suzanne Strakhov, Elaine Guilbeau, Victor R. Brown, Marcus B. Marsh, Susanna E. Michaels, Alison Williams, Rita Fussman, Marie Talley, Burdette Burt, Joseph Deltour, Delores J. Brown, Lonnie G. Tackett, Loretta Gee, Rick Ingram, James Patton, Helene E. Shrum, Punnose K. Thomas, Sandra Mendelsohn, Antoinette Nightlinger, John Bartoli, Suzanne Brown, Linda Wallace, Timothy Hogan, Randy Woollard, Betty Foster, Bobby Lynn Montgomery, Beulah Conklin, Linda Herring, Carol King, Dixie M. Stoller, Jacqueline Wilson, Gary Fry, Sharon Hillcoat, Thomas W. McKay, Gerald Ray Worthington, Gaylah Balter, Carol Hill, Beverly Joslin, and Sally McCleery.

8

been a physician-patient relationship, the privilege would be waived . . . by [plaintiff's] bringing the action for personal injuries") (Ex. O); Ga. Code. Ann. § 24-9-40 ("[T]he privilege shall be waived to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding."). The remaining 23 states at issue likewise recognize waiver in the case of litigation. *See, e.g., Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo. 1999) ("most common" waiver of physician-patient privilege "involve[s] plaintiffs who voluntarily place their medical condition in issue by . . . alleging that they suffered physical or mental injuries") (Ex. P); *Steinberg v. Jensen*, 534 N.W.2d 361, 368 (Wis. 1995) ("the physician-patient privilege did not protect communications relevant to or within the scope of discovery") (Ex. Q); *Stigliano v. Connaught Laboratories, Inc.*, 658 A2d 715, 718 (N.J. 1995) ("[b]y bringing suit . . . plaintiffs have waived the physician-patient privilege"); *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990) ("[w]hen a party-patient places a condition in issue by way of a claim, counterclaim, or affirmative defense, she waives the physician-patient privilege") (Ex. R); *Dillenbeck v. Hess*, 536 N.E.2d 1126, 1135 (N.Y. 1989) ("a plaintiff waives the physician-patient privilege by commencing an action which puts plaintiff's own physical condition in issue") (Ex. S); *see* Ex. N, "Table of States Recognizing That Physician-Patient Privilege is Waived By Initiation of Litigation."[7] As this Court previously concluded, in states where the applicable privilege is waived by the initiation of litigation, there is no state-law specific basis to prohibit *ex parte* contacts and such contacts shall be permitted.

---

[7] At this time, NPC does not seek *ex parte* communications with plaintiffs' treating physicians where such communications are governed by Florida, Oregon, West Virginia or Connecticut law.

9

## II. *EX PARTE* CONTACTS SERVE THE INTERESTS OF EFFICIENT DISCOVERY AND DUE PROCESS.

### A. *Ex parte* contacts promote efficient discovery.

As the Court recognized in the CMO, discovery via informal *ex parte* interviews would offer the most efficient means of pursuing discovery in the litigation, especially given the number of plaintiffs and corresponding physicians NPC needs to evaluate. Docket #89 at 35, ¶ XI.C. The parties are conducting fact discovery on claims of Wave 1 plaintiffs. Under the terms of the CMO, NPC is entitled to depose the plaintiff and fifteen other individuals per plaintiff. CMO, ¶ XI.B. Given the number of claims upon which discovery needs to be taken, the parties face the daunting prospect of conducting a significant number of depositions before the close of discovery, the majority of which involve treating physicians, dentists, and oral surgeons. Many of the individual plaintiffs have been treated by dozens of treaters. Complicating the issue is the fact that many plaintiffs frequently are evaluated and treated by multiple physicians at a single office or treatment facility. In other words, medical records reveal overlapping treatment by different oncologists and/or medical specialists.

*Ex parte* communications would allow NPC to identify medical treaters whose testimony is essential to the plaintiffs' claims and separate them from treaters whose care was merely ancillary, thereby allowing NPC to narrow the number of physicians it must depose during fact discovery and to more carefully circumscribe those depositions NPC does take. As borne out by experience in connection with the claims of putative class representatives Duncan and Lee, where *ex parte* contacts were allowed, NPC can determine which witnesses have relevant information and make scheduling decisions based on that information. Where contacts were not allowed, such as in the case of former putative class representative Dora Jackson, NPC was forced to depose certain physicians to learn that even though their medical records indicated

10

otherwise, they did not have information directly relevant to the class certification issue. *Ex parte* contacts after deposition permit NPC to obtain updates on the plaintiffs' condition, treatment, and the provider's opinions without noticing follow on depositions, except where absolutely necessary. Permitting *ex parte* contacts with plaintiffs' treating physicians also will reduce the number of scheduling difficulties and disputes. Finally, private interviews permit investigation and preparation of defense theories without revealing work product. *Ex parte* contacts will reduce the burdens on the defendant, the providers, the Court and even plaintiffs' counsel – thereby increasing the overall efficiency of litigating these cases. *Eve v. Sandoz Pharms. Corp.*, No. IP 98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) (permitting *ex parte* communications with treating physicians because such communications reduce costs of trial preparation) (Ex. C).

### B. *Ex parte* contacts protect NPC's due process rights.

Constitutional due process rights require fundamental fairness – including a level playing field with respect to access to important witnesses. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S. 18, 26, 33 (1981). Fundamental fairness requires equal access by all parties to fact witnesses needed to prepare for and present their cases at dispositive proceedings, such as the class certification hearing or trial.

No party has a proprietary right to any witness or the evidence that witness has. *Patton*, 2005 WL 1799509, at *4; *King v. Ahrens*, 798 F. Supp. 1371, 1373-74 (W.D. Ark. 1992). A party is deprived of due process when a law (or other state action) gives the opposing party favored access to evidence that results in an uneven "playing field." *Cf. United States v. White*, 454 F.2d 435, 438-39 (7th Cir. 1971) ("witnesses . . . are the property of neither the prosecution

11

nor the defense;" defendants must have an equal right and opportunity to interview witnesses as prosecutors); *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (same).

NPC will be deprived of its due process rights if the Court permits counsel for plaintiffs continued favored access to key witnesses. Before this Court entered its May 10, 2007 class-related order on *ex parte* contacts, plaintiffs' counsel had been conducting unilateral *ex parte* discussions with plaintiffs' treating physicians. *See* Deposition of Min-Chung Chen, MD (dated January 30, 2007) at 13-16 (discussing conversation with plaintiff's attorney in which plaintiff's attorney "walked [him] through what type of questions might be asked," whether the physician had any knowledge of ONJ, and what that knowledge consisted of, including alternative causes for development of ONJ) (Ex. U); Deposition of David Varner, MD (dated February 20, 2007) at 21-24 (discussing multiple conversations with plaintiff's attorneys, including discussions regarding putative class action, claims in putative class action, treatment of plaintiff and her oral condition at that time and "how the deposition would go") (Ex. V). In fact, prior to the deposition of one Anderson plaintiff's dentist, one member of the PSC provided him *prior to the deposition* with a copy of the transcript from the deposition of another plaintiff's treating periodontist and used the transcript to discuss likely questions at the dentist's deposition. *See* Deposition of Donald Miller, DDS (dated March 10, 2007) at 14-15 (Ex. W).

In other instances, once depositions concluded and the transcription ended, plaintiffs' counsel indicated to NPC that they would stay at the deposition site after the deposition record had been closed to discuss unidentified topics with the health care provider. Without approval for *ex parte* contacts, NPC did not have an opportunity to question the health care providers about those conversations unless a second deposition was scheduled. Given plaintiffs' contacts with these physicians, NPC is entitled to equal access. *IBM*, 526 F.2d at 44 (trial is "a quest for

12

truth," and "[t]hat quest will more often be successful *if both sides have an equal opportunity* to interview the persons who have the information from which the truth may be determined") (emphasis added) (internal citation omitted); *see also Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir. 1997) ("a party's right to interview witnesses is a valuable right").[8]

This Court's order corrected this inequity with respect to the putative class representatives, but a broader remedy is needed for discovery involving the large number of individual-injury plaintiffs.

## CONCLUSION

Because permitting *ex parte* communications with these plaintiffs' treating physicians is necessary both to protect NPC's due process rights and to increase the efficiency of discovery, this Court should enter an order compelling the 92 identified plaintiffs to sign authorizations permitting them.

Respectfully submitted,

November 12, 2007

s/ Katharine R. Latimer
Joe G. Hollingsworth
Katharine R. Latimer
Donald W. Fowler
Robert E. Johnston
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., Ninth Floor
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

---

[8] If the Court denies NPC the right to *ex parte* contacts, NPC requests that all counsel for plaintiffs be similarly prohibited from having any further *ex parte* contacts with plaintiffs' treaters.

13

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 12th day of November 2007 served a true and correct copy of the foregoing Novartis Pharmaceuticals Corporation's Memorandum in Support of its Motion for *Ex Parte* Contacts with Certain Plaintiffs' Treating Physicians on Plaintiffs' Liaison Counsel:

> C. Patrick Flynn
> Flynn & Radford
> 320 Seven Springs Way
> Suite 150
> Brentwood, TN 37027

> s/ Katharine R. Latimer
> Katharine R. Latimer
> SPRIGGS & HOLLINGSWORTH
> 1350 I Street, N.W., Ninth Floor
> Washington, DC 20005
> (202) 898-5800
> (202) 682-1639 (fax)
>
> *Attorneys for Defendant*
> *Novartis Pharmaceuticals Corporation*