IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT
OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| IN RE: AREDIA® AND ZOMETA® PRODUCTS LIABILITY LITIGATION (MDL No. 1760) | ) No. 3:06-MD-1760 ) ) JUDGE CAMPBELL ) ) MAGISTRATE JUDGE BROWN |
| **This Document Relates To Case Nos:** 3:05-CV-00718; 3:05-CV-00719; 3:05-CV-00716; 3:06-CV-00506, 3:06-CV-00495; 3:06-CV-00551; 3:06-CV-00618; 3:06-CV-00499; 3:06-CV-00386; 3:06-CV-00385; 3:06-CV-00511; 3:06-CV-00374; 3:06-CV-00376; 3:06-CV-00384; 3:06-CV-00523; 3:06-CV-00391; 3:06-CV-00550; 3:06-CV-00379; 3:06-CV-00375; 3:06-CV-00507; 3:06-CV-00522; 3:06-CV-00514; 3:06-CV-00518; 3:06-CV-00370; 3:06-CV-00392; 3:06-CV-00382; 3:06-CV-00368; 3:06-CV-00393; 3:06-CV-00553; 3:06-CV-00509; 3:06-CV-00521; 3:06-CV-00823; 3:06-CV-00496; 3:06-CV-00372; 3:06-CV-00510; 3:06-CV-00510; 3:06-CV-00512; 3:06-CV-00373; 3:06-CV-00503; 3:06-CV-00497; 3:06-CV-00504; 3:06-CV-00387; 3:06-CV-00526; 3:06-CV-00554; 3:06-CV-00517; 3:06-CV-00378; 3:06-CV-00394; 3:06-CV-00383; 3:06-CV-00377; 3:06-CV-00513; 3:06-CV-00693; 3:06-CV-00371; 3:06-CV-00525; 3:06-CV-00390; 3:06-CV-00381; 3:06-CV-00505; 3:06-CV-00501; 3:06-CV-00516; 3:06-CV-00508; 3:06-CV-00388; 3:06-CV-00389; 3:06-CV-00500; 3:06-CV-00527; 3:06-CV-00554; 3:06-CV-00502; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## PSC'S RESPONSE IN OPPOSITION TO NOVARTIS' MOTION TO COMPEL PLAINTIFFS TO AUTHORIZE EX PARTE MEETINGS WITH THEIR DOCTORS

The Plaintiffs' Steering Committee submits this response in opposition to Novartis' motion to compel Plaintiffs to authorize *ex parte* meetings with their treating doctors. Novartis wants to have clandestine meetings with the Plaintiff's treating physicians. To do this, Novartis wants this Court to force a waiver on the Plaintiffs.

1

Before addressing the merits of Novartis' argument, it is important to note that Novartis failed to identify a single piece of information which it is able to obtain through an *ex parte* conference that it cannot obtain through conventional discovery. No court has found that *ex parte* conferences are necessary for defense counsel to obtain information that they are unable to obtain through conventional discovery. *Ex parte* conferences yield no more information from doctors. Novartis has no "facts" on the record to justify compelling a waiver from the plaintiffs.

It is also important to note that counsel for Novartis attempted the same maneuver in *Weiss v. Astellas Pharma US, Inc.*, 2007 WL 2137782 (E.D.Ky.). The Court in *Weiss* refused to compel the same relief sought here. The Court in *Weiss* refused to order plaintiffs to execute authorizations for *ex parte* communications with the treating physicians. Although the district court acknowledged that *ex parte* contacts about the patients' medical records were allowed under state law, the district court refused to force the plaintiffs to waive their rights. The district court found that defense counsel were not permitted to discuss confidential communications between patients and their physicians. *Id. Ex parte* contact should be confined to the patients' medical records only. *Id.* The district court refused to compel or forbid *ex parte* contacts with the treating physicians. In essence, the district court abstained from making an order either way. *Id. Weiss* stands for the principle that a district court in the Sixth Circuit will not force plaintiffs to waive their rights under state law.

Novartis argues that the initiation of litigation waives a physician-patient privilege, so that *ex parte* contacts are permissible. This is wrong. Novartis' research misses the mark. These are states that bar *ex parte* contacts even after the plaintiff waives the physician-patient privilege by putting his or her physical condition at issue. The following list is a summary of the law in those states relating to this argument:

**Arizona**—*Duquette v. Superior Court*, 778 P.2d 634 (Az.Ct.App.1989) (holding that defense counsel in medical malpractice action may not engage in *ex parte* communications with plaintiff's treating physicians without having obtained plaintiff's consent.)

**Arkansas**—*Kraemer v. Patterson*, 29 S.W.3d 684 (Ark.2000) (holding that *ex parte* communication with treating physician was barred by rule unless patient expressly consents. Furthermore, the patient shall not be required, by order of the court or otherwise, to authorize any communication. In other words, in compliance with the privilege, the rule allows the control of the information disseminated to remain with the patient.)

**California**—*Hale v. Superior Court,* 28 Cal.App.4th 1421 (Cal.Ct.App.1994) (holding that defendant's estate was prohibited from communicating with plaintiff's physician except through formal discovery. Even if patient's medical condition was in issue in suit arising from fatal automobile accident, physician-patient privilege was not waived as to otherwise protected aspects of medical history during lifetime or as to unrelated condition patient may have suffered from at time of death.)

**Georgia**—*Crisp v. Regional Hosp., Inc. v. Sanders*, 636 S.E.2d 123 (Ga.Ct.App.2006) (affirming patient's motion for a protective order to prevent *ex parte* contact with treating physicians, and denying hospitals' motion to dismiss for plaintiff's failure to provide authorizations to allow *ex parte* contact.)

**Illinois**—*Petrillo v. Syntex Lab., Inc*., 499 N.E.2d 952 (Ill.Ct.App.1986) (holding that public policy favoring physician-patient confidentiality and fiduciary nature of physician-patient relationship justified prohibition against *ex parte* communications. Patient who files suit does not consent to physician's discussing patient's medical confidences pertinent to lawsuit with third parties outside authorized discovery methods and does not consent to physician discussing patient's confidences in *ex parte* conference with patient's legal adversary, but consents to release of medical information relevant to lawsuit only pursuant to methods of discovery.)

**Indiana**—*CUA v. Morrison,* 626 N.E.2d 581 (Ind.Ct.App.1993) (holding that waiver of physician privilege by filing a lawsuit does not include *ex parte* interviews of treating physicians. These interviews compromise the physician-patient privilege and are not allowed.)

**Iowa**—*Roosevelt v. Sweeney*, 394 N.W.2d 353 (Iowa 1986) (holding that court may not force a waiver of the physician patient privilege to allow *ex parte* interviews of treating doctors after the plaintiff files a lawsuit and put his medical condition at issue.)

**Massachusetts**—*Schwartz v. Goldstein*, 508 N.E.2d 97 (Mass.1987) (opposing counsel may not engage in clandestine, unauthorized discussions with the plaintiff's treating physicians. Plaintiff may sue that physician for invasion of privacy and breach of confidentiality.)

3

**Minnesota**—*Lillebo v. Zimmer, Inc.*, 2004 WL 2066772 (D.Minn.) (Minnesota statute does not allow defendants to conduct *ex parte* interviews. Plaintiffs must be given notice and an opportunity to be present at the interview.)

**Mississippi**—*Scott v. Flynt*, 704 So.2d 998 (Miss.1996) (*ex parte* interviews between defense counsel and the plaintiff's treating doctors are prohibited even if plaintiff places his mental and physical condition at issue by filing a lawsuit.)

**New Jersey**—*Stempler v. Speidell*, 495 A.2d 857 (N.J.1985) (courts may compel medical authorizations for *ex parte* interviews of treating physicians but conditions should be imposed to require defense counsel to provide plaintiff's counsel notice of date and time of proposed interviews with a description of the anticipated scope of interview and communicate with unmistakable clarity that physician's participation in an *ex parte* interview is voluntary.)

**North Carolina**—*Crist v. Moffatt*, 389 S.E.2d 41 (N.C.1990) (plaintiff's waiver of physician-patient privilege by placing his mental and physical condition at issue does not include *ex parte* interviews by defense counsel, which are prohibited by law without the plaintiff's consent.)

**Ohio**—*Hammonds v. Aetna Casualty & Surety Co.*, 243 F.Supp.793 (E.D.1965) (plaintiff's waiver of physician-patient privilege by placing his mental and physical condition at issue does not include *ex parte* interviews by defense counsel, which are prohibited by law without the plaintiff's consent.)

**Pennsylvania**—*Marek v. Ketyer*, 733 A.2d 1268 (Pa.Super.1999) (plaintiff's waiver of physician-patient privilege by placing his mental and physical condition at issue does not include *ex parte* interviews by defense counsel, which are prohibited by law without the plaintiff's consent.)

**Rhode Island**—*Pitre v. Curhan*, 2001 WL 770941 (R.I.Super) (plaintiff's waiver of physician-patient privilege by placing his mental and physical condition at issue does not include *ex parte* interviews by defense counsel, which are prohibited by law without the plaintiff's consent.)

**Tennessee**—*Alsip v. Johnson City Medical Center*, 197 S.W.3d 722 (Tenn.2006) (the covenant of confidentiality contained in the contract between patient and physician remains after the filing of a medical malpractice lawsuit such that a trial court may not authorize defense counsel to communicate *ex parte* with non-party physicians.)

**Texas**—*Perkins v. United States*, 877 F.Supp. 330 (E.D.Tex.1995) (in a personal injury suit, a defense lawyer may not contact *ex parte* a plaintiff's non-party treating physician without the plaintiff's authorization, even though plaintiff waives physician-patient privilege by placing his mental and physical condition at issue.)

**Washington**—*Rowe v. Vaagen Bros. Lumber Co.*, 996 P.2d 1103 (Wa.Ct.App.2000) (plaintiff's waiver of physician-patient privilege by placing his mental and physical condition at issue does not include *ex parte* interviews by defense counsel, which are prohibited by law without the plaintiff's consent.)

This Court cannot force a waiver on the Plaintiffs in the aforementioned states because state law governs the issue. *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir.1992). However, for all states and every litigant in this MDL, the Court should refrain from ordering, or even allowing, such contacts between Novartis' counsel and the Plaintiff's doctors. Nothing in the rules of civil procedure requires such an order. This Court should exercise its discretion to govern discovery by refusing such an order and so avoid future conflict and motion practice. The policy reasons for this are manifest.

Novartis claims that the *ex parte* contacts will promote efficient discovery. Yet, the compelled waiver makes Novartis' counsel and the plaintiff's physicians the sole arbiters of what conditions are relevant to their claim. The supervision of what is discoverable cannot be delegated to a physician and a defendant's attorney or representatives. A physician is not trained in deciding what is or is not legally relevant. A patient and his opponent's counsel are likely to disagree upon what information has a direct medical relevance to the claim. Without attributing improper motives to Novartis' counsel, the very nature of the adversary process makes it unlikely that they will adequately safeguard the interests of the plaintiff during an *ex parte* interview.

Novartis' counsel is obligated to discover evidence that is believed to be relevant in order to fulfill the duty to the client, even if the relevance of the solicited information is contested by the plaintiff. Further, because Novartis' counsel would likely be unaware that the answer to a question requires the disclosure of privileged information, it would be impossible as a practical matter for them to protect this as yet unuttered statement. The compelled authorization does nothing to ensure that Novartis' inquiry will be limited to relevant conditions. The Plaintiff's counsel has no opportunity to any privilege if their counsel cannot be present during the interview. To take this

5

concept to the extreme, it would be impossible for a patient to seek protection from the court, if necessary, where the patient has no idea that an *ex parte* interview has taken or is about to take place.

Modern public policy strongly favors the confidential and fiduciary relationship existing between a patient and his physician. This public policy arises from the fact that society possesses an established and beneficial interest in the sanctity of the physician-patient relationship. This public policy extends through at least two separate indicia: (1) the promulgated code of ethics adopted by the medical profession and upon which the public relies to be faithfully executed so as to protect the confidential relationship existing between a patient and his physician; and (2) the fiduciary relationship, recognized by courts throughout the United States, which exists between a patient and his treating physician. It is thus axiomatic that conduct which threatens the sanctity of that relationship runs afoul of public policy, because public policy strongly favors both the confidential and fiduciary nature of the physician-patient relationship,

*Ex parte* conferences between defense counsel and a plaintiff's treating physician jeopardize the sanctity of the physician-patient relationship and, therefore, are prohibited as against public policy in these states. These states find no appreciative gain, regarding the evidence to be obtained, through such meetings. Accordingly, these states joined the growing number of courts which prohibit *ex parte* discussion of a patient's medical confidences due to the threat posed to the sanctity of the doctor-patient relationship.

The first indicia of a public policy prohibiting *ex parte* conferences is that found in the code of ethics which governs the conduct of the medical profession and upon which the public relies to be faithfully executed. The code of ethics for the medical profession is comprised of three separate

6

prongs: (1) the Hippocratic Oath; (2) The American Medical Association's (AMA) Principles of Medical Ethics; and (3) The Current Opinions of the Judicial Council of the AMA (1984 ed.). These three prongs underscore the highly confidential nature of the physician-patient relationship and, perhaps more importantly, affirmatively advertise to the public that a patient can properly expect his physician to protect those medical confidences which are disclosed during the physician-patient relationship.

According to the Judicial Council of the AMA, the Hippocratic Oath was first conceived during the fifth century B.C. It is the oldest statement of ethics governing the medical profession and demonstrates that the confidentiality of the physician-patient relationship is rooted deep in history. The oath states: "Whatever, in connection with my professional practice or not in connection with it, I see or hear, in the life of men, which ought not to be spoken abroad, I will not divulge, as reckoning that all such should be kept secret." The AMA's Judicial Council explains: "The Oath of Hippocrates, a brief statement of principles, has come down through history as a living statement of ideals to be cherished by the physician." As a reading of the oath discloses, physicians have for several hundred years acknowledged their obligation of keeping in trust a patient's confidences.

The AMA's Principles of Medical Ethics is the second prong comprising the ethics of the medical profession. The current principles were adopted in 1977 and are eight in number. Principle II states in relevant part, "A physician shall deal honestly with his patients and colleagues." Principle IV states, "A physician shall respect the rights of patients, of colleagues, and of other health professionals, and shall safeguard patient confidences within the constraints of the law." These principles are the ethical guidelines of the physician and dictate that the physician owes his patient an obligation of honesty as well as confidentiality.

7

The third prong of the rules comprising the ethics of the medical profession is found in the Current Opinions of the Judicial Council of the AMA. These opinions reflect the AMA's position on how a physician should act in particular circumstances. Section 5.05 of the Current Opinions, for example, states, "The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree .... The physician should not reveal confidential communications or information without the *express consent of the patient*, unless required to do so by law." Section 5.06 deals specifically with the attorney-physician relationship and again reiterates the requirement of patient consent: "The patient's history, diagnosis, treatment, and prognosis may be discussed with the patient's lawyer with the consent of the patient or the patient's lawful representative."

Moreover, Sections 5.07 and 5.08 state: "History, diagnosis, prognosis, and the like acquired during the physician-patient relationship may be disclosed to an insurance company representative only if the patient or his lawful representative has consented to the disclosure." (The American Medical Association, Current Opinions of the Judicial Council, sec. 5.08.) Both the protection of confidentiality and the appropriate release of information in records is the rightful expectation of the patient. A physician should respect the patient's expectations of confidentiality concerning medical records that involve the patient's care and treatment. (The American Medical Association, Current Opinions of the Judicial Council, sec. 5.07.)

A reading and comparison of the Hippocratic Oath, the AMA's Principles of Medical Ethics, and the Current Opinions of the AMA's Judicial Council reveals without any question the medical profession's obligation to keep communications divulged by a patient to his physician as confidential as possible. Indeed, the Hippocratic Oath speaks of "secrecy." The AMA's Principles

8

of Medical Ethics requires a physician to "safeguard patient's confidences," and the AMA's Judicial Council mandates physicians to keep patient's discussions "confidential to the greatest degree possible."

In addition to confidentiality, the ethics of the medical profession consistently require patient consent before confidential information is released. According to the AMA's Judicial Council, prior consent is "the rightful expectation of the patient." AMA Current Opinions, sec. 5.07. Confidentiality and patient consent are inextricably tied together. The relationship between a patient and his physician remains confidential only as long as a patient can rest assured that he must give his consent before any of the information disclosed during the physician-patient relationship is released to third parties.

The consent that is necessary before a patient's confidences may be properly disclosed to third parties is twofold in nature. The consent can take the form of an express consent (*e.g.* a written waiver) or it can be implied at law by the patient's conduct. In this regard, when a patient files suit he or she implicitly consents to his physician releasing any of the medical information related to the mental or physical condition which the patient has placed at issue in the lawsuit. The patient's implicit consent is necessarily limited. He or she consents only to the release of his medical information relative to the lawsuit. A patient certainly does not, by simply filing suit, consent to his physician discussing that patient's medical confidences with third parties outside court authorized discovery methods. Nor does he or she consent to a treating physician discussing the patient's confidences in an *ex parte* conference with the patient's legal adversary.

To the contrary, when a patient files suit he or she consents only to the release of certain information. The plaintiff does not automatically consent to the termination of the confidential

9

relationship existing with the doctor. In this respect, the confidential nature of the physician-patient relationship continues to exist even though the patient, by filing suit, has consented to the disclosure through court authorized discovery methods of that information relevant to the condition placed at issue in the lawsuit. Therefore, because the confidential relationship remains intact, the doctor continues to owe his patient an ethical obligation to release his patient's medical information pursuant only to that patient's consent. *See* the AMA Current Opinions, secs. 5.05, 5.06, and 5.08.

*Ex parte* conferences damage the confidential nature of the physician-patient relationship by violating the patient's right to believe that his physician is faithfully executing that physician's ethical obligations. It is important to remember that the ethics of the medical profession constitute more than just a set of regulations affecting members of a particular profession. They also grant the public an affirmative right to rely on his physician to faithfully execute those ethical obligations. It is the patient's "secrets," the patient's "confidences," and the patient's "information" which constitute the subject matter sought to be protected through the medical profession's code of ethics.

Courts which have embraced this issue have repeatedly found that a patient has the right to rely on his physician to execute that physician's ethical duties so as to protect the confidential relationship existing between a patient and his physician. In *Hammonds v. Aetna Casualty & Surety Co.* (N.D.Ohio 1965), 243 F.Supp. 793, 801 for example, the court noted, "Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath and every patient has a *right to rely* upon this warranty of silence." (Emphasis added.) Patients in these states possess a similar right—namely, the right to rely on physicians to faithfully execute their ethical duties and protect the confidentiality of the physician-patient relationship.

The second indicia of the public policy prohibiting *ex parte* conferences between a plaintiff's

10

treating physician and defense counsel rests in the fiduciary relationship that exists between a patient and his treating physician. The fiduciary nature of the physician-patient relationship flows not from the physician's ethical duties, but rather as a result of the physician's unique role in society. Conduct which threatens the fiduciary relationship existing between a patient and his physician runs contrary to the interests of society and should be restricted. *Ex parte* conferences between defense counsel and plaintiff's physician threaten the fiduciary nature of their relationship. Therefore, *ex parte* conferences are barred as being against public policy in many states.

The existence of this fiduciary relationship gives rise to the implied promise that the physician will refrain from engaging in conduct that is inconsistent with the "good faith" required of a fiduciary. When the patient files suit and places a specific mental or physical condition at issue, the fiduciary relationship requires that the patient have a right to rest assured that the physician will act in good faith while complying with court-authorized discovery. When a patient files suit, (1) the physician should be prepared to release those records relevant to the condition placed at issue, (2) be available to give depositions, and (3) be prepared to testify should he be called upon to do so. The patient, because of the fiduciary relationship, should also have the right to expect that his physician will provide the medical information sought by the patient's adversary pursuant only to court authorized methods of discovery.

Discussion of the patient's confidences under any other circumstances such as the *ex parte* conference is inconsistent with the duties of a fiduciary. The physician could engage in conduct which may be contrary to a fiduciary's obligation of good faith. The physician could harm the interests of the patient by disclosing intimate facts of the patient which are unrelated and irrelevant to the physical condition at issue in the lawsuit. *Ex parte* conferences involve conduct which can

11

be contrary to the public policy favoring the fiduciary nature of the physician-patient relationship.

The entire concept of the *ex parte* conference tends to weaken the compelling obligations of a fiduciary. At the very heart of every fiduciary relationship exists an atmosphere of trust, loyalty, and faith. It is difficult to believe that a doctor can engage in an *ex parte* conference with the legal adversary of his patient without endangering the trust and faith invested by his patient. The duties owed by a physician as a fiduciary are such that he or she should not engage in an *ex parte* conference with defense counsel. The public has an interest in having those qualities safeguarded from conduct which places them in jeopardy. Combined with the fact that *ex parte* conferences produce no additional information beyond normal discovery, this Court should not compel authorizations in the states that forbid *ex parte* conferences.

Novartis next asserts that taking the deposition of a treating physician to obtain that physician's opinion is costly, inefficient, and will cause scheduling problems for both defense counsel as well as the plaintiff's treating physician. A deposition, however, is not the only means available for defense counsel to obtain the opinion of a treating physician. Novartis' counsel can, if concerned about costs and scheduling, obtain the opinion of the treating physician by sending a deposition upon written questions pursuant to Fed. R. Civ. P. 31. Novartis has already obtained copies of all of the plaintiff's relevant medical records. Should the two methods outlined above prove insufficient, there are other accommodations without forcing the Plaintiffs to waive their right.

Novartis' other argument is that prohibiting its counsel from engaging in *ex parte* conferences with a plaintiff's treating physician deprives it of Due Process under law. Novartis throws out this basic constitutional principal without linking it to any law. There is no evidence in the record of any unethical, suspicious, or even questionable conduct on the part of the PSC

12

attorneys regarding their relationships with their treating physicians. There is no evidence that Novartis has been deprived of Due Process under law. In contrast, Novartis has availed itself of every defense allowed by our civil justice system. The lack of an "uneven playing field" as described by Novartis is notably absent.

Compelled authorization for *ex parte* interviews could lead to a situation where the interests of the physician are placed at odds with the interests of the patient. In *Miles v. Farrell*, 549 F.Supp. 82 (N.D.Ill.1982), the court addressed such a scenario. In *Miles*, a minor brought a malpractice action against the defendant. The minor's parents were deposed and disclosed that a Dr. Flynn was currently treating their son. Immediately after that deposition, defense counsel approached and convinced Dr. Flynn to act as an expert witness in their case against the patient Dr. Flynn was currently treating. From that point on, Dr. Flynn continued to treat the minor plaintiff while, at the same time, he was employed by defense counsel as an expert witness for the purpose of testifying against the minor plaintiff. Dr. Flynn never disclosed his employment relationship with defense counsel to the minor's parents.

On motion of the plaintiff, the *Miles* court barred Dr. Flynn from testifying by finding that, "Dr. Flynn owes a fiduciary duty of confidentiality to his patient. As a general rule, a treating physician may not discuss his patient's medical condition with opposing counsel except pursuant to discovery authorized under the applicable rules of civil procedure." Dr. Flynn had a clear conflict of interest which he had an obligation to disclose to his patient. The *Miles* court refused to interpret the Rules of Civil Procedure in a manner that would allow defense counsel to approach a plaintiff's treating physician for *ex parte* discussions while the plaintiff remains under the care and supervision of that treating physician.

13

Novartis argues that efficiency justifies *ex parte* contacts here. This is also wrong. *Ex parte* contacts will unleash a barrage of motion practice. Plaintiffs have a duty to ensure that defense counsel will not surreptitiously discuss confidential communications. Plaintiffs have a duty to insure that defense counsel will not create the unfortunate spectacle memorialized in *Miles v. Farrell* or warned of in *Weiss v. Astellas Pharma US, Inc*. It is no stretch of the imagination to recognize the conflicts of interest that may arise when a pharmaceutical lawyer pressures a physician. Such a conflict of interest could stand in the way of the plaintiff receiving proper medical care. Such a conflict of interest will surely spawn excessive motion practice by both sides. This is not a brand of efficiency. It is a recipe for contention and further motion practice.

Novartis argues that prohibiting *ex parte* conferences is tantamount to standing in the way of getting the truth. This is nothing more than a bald and conclusory assertion. Again, Novartis has not identified a single piece of information or evidence which it can obtain through an *ex parte* conference that it cannot already obtain through the methods of discovery. A rule barring *ex parte* conferences does not stand in the way of discovering the truth. It merely regulates the discovery process so as to protect the confidential relationship existing between a patient and doctor. The treating physician is still free to testify as to his opinions and conclusions regarding the physical condition placed at issue in the plaintiff's lawsuit.

The relationship of patient to physician is a particularly intimate one. The Plaintiffs bare their bodies to the physician. The protection of that confidential relationship is worth some inconvenience to Novartis. At this point, there is no urgency to justify Novartis' motion. Novartis can meet all of the deadlines set by this Court through traditional channels of medical discovery. This Court should deny the motion, as in *Weiss*, because forcing Plaintiffs to waive their rights is

14

Case 3:06-md-01760    Document 839    Filed 12/06/07    Page 14 of 17 PageID #: 12809

not function of discovery in the Federal Rules of Civil Procedure.

## Conclusion

Based on the foregoing, this Court should deny Novartis' motion to compel the Plaintiffs to waive their rights by signing an authorization that allows *ex parte* contacts with their physicians.

PLAINTIFFS' STEERING COMMITTEE:


 /s/ Clinton L. Kelly
F. Dulin Kelly, Esq.
Clinton L. Kelly, Esq.
KELLY, KELLY & ALLMAN
629 East Main Street
Hendersonville, Tennessee 37075
Telephone: (615) 824-3703
Facsimile: (615) 822-7339

Russel H. Beatie
Daniel A. Osborn
BEATIE AND OSBORN LLP
521 Fifth Avenue
New York, New York 10175
Telephone: (212) 888-9000
Facsimile: (212) 888-9664

Robert G. Germany, Esq.
PITTMAN, GERMANY, ROBERTS &
WELSH, L.L.P.
410 South President Street
P.O. Box 22985
Jackson, Mississippi 39225
Telephone: (601) 948-6200
Facsimile: (601) 948-6187

C. Patrick Flynn, Esq.
Michael K. Radford, Esq.
FLYNN AND RADFORD ATTORNEYS, P.C.
Seven Springs I, Suite 150
320 Seven Springs Way
Brentwood, Tennessee 37207
Telephone: (615) 370-9448
Facsimile: (615) 370-9313

Bart T. Valad, Esq.
John Vecchione, Esq.
THE LAW FIRM OF BART T. VALAD, PLLC
3863 Plaza Drive
Fairfax, Virginia 22030
Telephone: (703) 352-4800
Facsimile: (703) 352-4820

Jeffrey C. Bogert, Esq.
LAW OFFICES OF JEFFREY C. BOGERT
501 Colorado Blvd., Suite 208
Santa Monica, California 90401
Telephone: (310) 395-5025
Facsimile: (310) 395-5071

## CERTIFICATE OF SERVICE

     I hereby certify that on the 6th day of December, 2007, a true and correct copy of the foregoing Response will be served via electronic transmission to those persons identified on Schedule B – Panel Attorney Service List as of November 14, 2006 (DE 188).

                                            /s/ Clinton L. Kelly