# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| AREDIA® AND ZOMETA® PRODUCTS | ) |
| LIABILITY LITIGATION | ) |
| | ) |
| (MDL No. 1760) | ) |
| | )   No. 3:06-MD-1760 |
| This Document Relates To Case Nos.: | ) |
| 3:07-CV-01184; 3:07-CV-01185; 3:07-CV-01186; | )   JUDGE CAMPBELL |
| 3:07-CV-01187; 3:07-CV-01188; 3:07-CV-01189; | ) |
| 3:07-CV-01190; 3:07-CV-01191; 3:07-CV-01192; | )   MAGISTRATE JUDGE BROWN |
| 3:07-CV-01193; 3:07-CV-01194; 3:07-CV-01195; | ) |
| 3:07-CV-01196; 3:07-CV-01197; 3:07-CV-01198; | ) |
| 3:07-CV-01199; 3:07-CV-01200; 3:07-CV-01201; | ) |
| 3:07-CV-01202; 3:07-CV-01203; 3:07-CV-01204; | ) |
| 3:07-CV-01205; 3:07-CV-01206; 3:07-CV-01207; | ) |
| 3:07-CV-01208; 3:07-CV-01209; 3:07-CV-01210; | ) |
| 3:07-CV-01211; 3:07-CV-01213; 3:07-CV-01225; | ) |
| 3:07-CV-01226; 3:07-CV-01280 | ) |
| | ) |

## NOVARTIS PHARMACEUTICALS CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A SECTION 1404(a) VENUE TRANSFER OF THE SEVERED *ANDERSON*, *BECKER* AND *WOOD* ACTIONS TO PLAINTIFFS' HOME FORA FOLLOWING THE CLOSE OF MDL DISCOVERY IN EACH CASE

Defendant Novartis Pharmaceuticals Corporation ("NPC") submits this memorandum in support of its motion for a Section 1404(a) venue transfer of the above-referenced cases to each respective plaintiff's home forum for trial following the close of MDL discovery in each case.

### INTRODUCTION

Plaintiffs at issue in this litigation filed pharmaceutical products liability lawsuits in Tennessee, many miles from their homes in other states.[1] Each plaintiff's home forum (the

---

[1] Plaintiffs Robert Foster, personal representative of deceased plaintiff Betty Foster, and Bobby Lynn Montgomery both claim (or claimed) Tennessee as their place of residence. However, neither plaintiff resides or resided in the Middle District of Tennessee. Ms. Foster's last place of residence was in Athens, Tennessee, which is located in the

United States district court for the district in which each plaintiff resides, identified in the chart attached as Exhibit A to the Declaration of Jeffrey A. Dickey in Support of Novartis Pharmaceuticals Corporation's Motion for a Section 1404(a) Venue Transfer of the Severed *Anderson*, *Becker* and *Wood* Actions to Plaintiffs' Home Fora Following the Close of MDL Discovery in Each Case ("Dickey Declaration")) is clearly the most convenient, appropriate venue for this case. That is where the plaintiff resides, where plaintiff's physician prescribed the medication at issue, where the alleged injuries occurred, where plaintiff received medical treatment for the alleged injuries, where the claims at issue arose, and where important non-party witnesses are located – treating physicians and other medical care providers who cannot be compelled to testify at trial in this Court. Pursuant to 28 U.S.C. § 1404(a), the appropriate venue to which, following the close of MDL discovery, these lawsuits should be transferred for the convenience of the parties and witnesses and in the interest of justice is each plaintiff's home district. *See*, *e.g.*, *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 324-25 (D.N.J. 1998) (holding that plaintiffs' treating physicians would be critical trial witnesses and transferring pharmaceutical products liability lawsuits to plaintiffs' home districts).[2]

---

Eastern District of Tennessee, and Mr. Montgomery lives in Brighton, Tennessee, which is located in the Western District of Tennessee. The appropriate trial venue for Mr. Foster and Mr. Montgomery is separately addressed at the end of this memorandum and the memorandum otherwise addresses the claims of the other 30 plaintiffs.

[2] The portion of the Court's CMO regarding the briefing of "the appropriate venue of the severed actions for trial," Docket #89 at 39, relates to the above-captioned actions, but may also relate to the seven cases that were transferred to this Court by the Judicial Panel on Multidistrict Litigation and selected for additional discovery work-up. Those seven cases are: *Conklin v. Novartis Pharms. Corp.*, No. 3:06-CV-0505; *Crews v. Novartis Pharms. Corp.*, No. 3:06-CV-0659; *Cuthbert v. Novartis Pharms. Corp.*, No. 3:06-CV-0393; *Ingram v. Novartis Pharms. Corp.*, No. 3:06-CV-0394; *Krause v. Novartis Pharms. Corp.*, No. 3:06-CV-0494; *Deutsch v. Novartis Pharms. Corp.*, No. 3:06-CV-00497; and *Fry v. Novartis Pharms. Corp.*, No. 3:06-CV-00389. *See* Docket ## 109, 110. Pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) and 28 U.S.C. §1407, an MDL court must remand a case to its originating court upon completion of pretrial proceedings. *Id.* at 34-35, 39 ("none of the arguments raised can unsettle the straightforward language [of §1407] imposing the Panel's responsibility to remand, which bars recognizing any self-assignment power in a transferee court"). Upon remand of these cases to the courts where the cases originally were filed per *Lexecon*, NPC will file motions to transfer venue to the appropriate "home" courts, if necessary.

# BACKGROUND

This is a products liability lawsuit involving two prescription intravenous medications – Aredia® and Zometa®, both of which currently remain on the market. These drugs are used in the treatment of debilitating skeletal complications primarily resulting from various forms of cancer, including multiple myeloma and breast and prostate cancer. Because of their extraordinary benefits, both drugs are the standard of care treatments for their indications. *See* Expert Report of Robert E. Coleman at 9-10, 14-17 (Docket #617); Expert Report of Professor Graham Russell at 13 (Docket #616); and Expert Report of Allan Lipton at 5-7 (Docket #621). NPC has marketed and sold Aredia® and Zometa® since receiving approval from the Food and Drug Administration ("FDA") in 1991 and 2001, respectively.

As discussed below (and as set forth in the attached Dickey Declaration), the discovery completed to date indicates that plaintiffs' prescribing physicians are in plaintiffs' home fora, plaintiffs were infused with Aredia® and/or Zometa® in their home fora, and plaintiffs received medical treatment for their alleged injuries in those fora. The discovery also indicates that none of the plaintiffs at issue here appears to have been prescribed Aredia® or Zometa® in Tennessee or to have received medical treatment in this state.

# ARGUMENT

## I. Section 1404(a) Gives Courts Broad Discretion to Transfer Lawsuits for the Convenience of the Parties and in the Interest of Justice.

Section 1404(a) allows a district court to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 537 (6th Cir. 2002); *Roberson v. Estate of Jones,* No. 1:06-CV-00265, 2007 WL 760376 (E.D. Tenn. March 8, 2007)

Case 3:06-md-01760   Document 1074   Filed 01/14/08   Page 3 of 21 PageID #: 15852

(Exhibit A).[3]  As the United States Supreme Court has explained, §1404(a) "was designed as a federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (internal quotation marks omitted). Although there is no definitive list of factors, courts analyze § 1404(a) motions by considering the convenience-of-the-parties-and-witnesses prong through various "private interest" factors and the interest-of-justice prong through various "public interest" factors.  *Piper Aircraft*, 454 U.S. at 241 n. 6; *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted).

In circumstances such as those presented here, courts repeatedly have transferred pharmaceutical products liability lawsuits to plaintiffs' home districts.  *See*, *e.g.*, *Parlodel Litig.*, 22 F. Supp. 2d at 326 and cases cited therein.  An analysis of the private interest and public interest factors presented in this case demonstrates that the same result – transfer to each plaintiff's home forum at the close of MDL discovery – is warranted here.

## II.     The "Private Interest" Factors Clearly Support Transferring These Lawsuits to Each Plaintiff's Home Forum.

In ruling on this motion, the Court should be guided by the private interest factors applicable to the §1404(a) analysis, including the convenience of the witnesses and the parties, the availability of compulsory process, where the claims arose, the cost of obtaining the attendance of witnesses at trial, plaintiff's forum choice and defendant's forum preference.  *See*, *e.g.*, *Checuti v. Conrail*, 291 F. Supp. 2d 664, 672 (N.D. Ohio 2003) (quoting *McNic Oil & Gas*

---

[3] There is no dispute that these cases could have been brought in plaintiffs' home districts.  The plaintiffs at issue here reside in Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, North Carolina, Oklahoma, Oregon, Washington and Wisconsin, *see* Dickey Declaration, all locations where NPC conducts business.

*Co. v. IBEX Res. Co.*, 23 F. Supp. 2d 729, 738-39 (E.D. Mich. 1998)); *Parlodel Litig.,* 22 F. Supp. 2d at 323. These factors favor transfer from this Court to each plaintiff's home forum.

> A. **Convenience of the Witnesses and Parties and Availability of Compulsory Process**

Convenience of non-party witnesses is the most important factor for the Court to consider when evaluating a §1404(a) transfer motion. *Kay v. Nat'l City Mortgage Co.,* 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007) ("The convenience of witnesses is considered to be of the utmost importance."); s*ee also In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) ("*In re EDRSIL*"); *Parlodel Litig.*, 22 F. Supp. 2d at 324; *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995). Of course, it would be much more convenient for plaintiffs to testify in their home fora instead of having to travel to Tennessee to testify.

Unlike plaintiffs, who may be willing to travel long distances voluntarily for trial in Tennessee and do not present any compulsory process issues, non-party treating physicians and other health care providers are unlikely to shoulder this burden voluntarily – which is why the availability of compulsory process for such witnesses is so significant.[4] Courts have recognized that plaintiffs' treating physicians are "critical witnesses" in these types of cases. *Parlodel Litig.*, 22 F. Supp. 2d at 324; *see also Zeevi v. Am. Home Prods. Corp.,* No. 99-CV-20277, 2002 WL 92902, at *2 (E.D. Pa. Jan 24, 2002) (plaintiff's treating physicians are "essential witnesses") (Exhibit B). When those witnesses are located in other states over 100 miles away from the place of trial, they cannot even be *compelled* to testify at trial because they "are not subject to the subpoena power of [the] Court." *Parlodel Litig.*, 22 F. Supp. 2d at 324 (citing Fed. R. Civ. P. 45(b)(2)).

---

[4] Here, most, if not all, of the key witnesses are located in each plaintiff's home state. None are located in Tennessee. *See* Dickey Declaration.

5

Courts granting §1404(a) motions in pharmaceutical products liability suits have repeatedly recognized the importance of testimony by non-party witnesses, such as physicians who prescribed the medication at issue or other treating health care providers. *See, e.g., McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002) ("Not only is Dr. Kilbride the only physician to have prescribed Prozac to decedent, the very drug that Plaintiff now claims caused his wife's death, but [Dr. Kilbride] is the only individual who can testify as to whether or not [the pharmaceutical company] failed to warn and/or made material misrepresentations to him regarding Prozac's safety, as specifically averred by Plaintiff"); *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003) (granting transfer motion because, *inter alia*, if treating physicians located in North Carolina were not willing to travel to the District of Columbia to testify at trial, "this Court is without the authority to compel their attendance for trial"). This Court also has recognized the important role testimony of plaintiffs' prescribing physicians and other health care providers will play in any trial of plaintiffs' claims. *See In re Aredia and Zometa Prods. Liab. Litig.*, 2007 WL 3012972 at *5 (M.D. Tenn. Oct. 10, 2007) ("Plaintiffs' failure to warn claims depend upon a number of individual factors. These drugs are typically administered by nurses, in clinics, under physicians' orders, and what, if any, warnings were given to the patient varies from individual to individual.") (Docket #693).

In this case, as in the cases cited above, the treating physicians and other health care providers are critical witnesses. For example, NPC expects that the issue of whether Aredia® and/or Zometa® caused a plaintiff's injuries will be hotly contested. *See Parlodel Litig.*, 22 F. Supp. 2d at 324 (one of the "most critical issues in these cases, specific causation . . . will rest upon testimony and other evidence from each Plaintiff's treating physicians"); *see also* Van den Wyngaert, T. et al., Osteonecrosis of the Jaw Related to the Use of Bisphosphonates. *Curr.*

*Opin. Oncol.* (2007) 19:315-22, 316 ("As an emerging disease, the epidemiology of ONJ is in full evolution and hitherto many unknowns exist, as the true causality between the use of bisphosphonates and ONJ remains unproven . . . .") (Exhibit C). Potential alternative causes for plaintiffs' alleged injuries must be considered as part of the specific causation analysis, because adverse events can be caused by pre-existing medical conditions, drugs other than Aredia® and/or Zometa®, or other causes unrelated to NPC's alleged negligence. Therefore, potentially important testimony may be developed not only from physicians or dentists who treated each plaintiff after he or she was treated with Aredia® and/or Zometa®, but also from health care providers whose treatment pre-dated each plaintiff's Aredia® and/or Zometa® use.

Moreover, given the role of the "learned intermediary" doctrine, *see, e.g.*, *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 805-15 (E.D. Texas 2002) (50-state survey of learned intermediary law), and plaintiffs' numerous allegations about inadequate warnings related to Aredia® and/or Zometa®, *see, e.g.*, Plaintiff Terry Anderson's Amended Complaint at ¶¶ 14-18, *Anderson v. Novartis Pharmaceuticals Corporation*, No. 3:07-CV-01184 (M.D. Tenn. December 5, 2007) (MDL 1760) (Docket #1) (warning allegations); Otilia Zinger's Amended Complaint at ¶¶ 14-18, *Zinger v. Novartis Pharmaceuticals Corporation*, No. 3:07-CV-01213 (M.D. Tenn. December 5, 2007) (MDL 1760) (Docket #1) (warning allegations)[5], the physician who prescribed Aredia® and/or Zometa® to each plaintiff will present important testimony. *See Parlodel Litig.*, 22 F. Supp. 2d at 324 (discussing physicians' testimony regarding "critical issue[]" of defendant's "marketing representations"). Yet, discovery obtained to date does not show that the plaintiffs at issue here received any medical treatment in

---

[5] The warning allegations in the complaints in each of the severed actions at issue here are virtually identical.

Tennessee or that any of their treating or prescribing health care providers likely to be called to testify in these cases is located in Tennessee.

Unless the Court grants this motion, there will be no way to ensure live trial testimony by any of the important non-party witnesses because they are beyond the Court's subpoena power.[6] In the unlikely event that any of these witnesses would appear voluntarily in Tennessee for trial, they would be greatly inconvenienced by the long trip from their home states. By contrast, a trial in each plaintiff's home forum would be much more convenient for these critical witnesses and would ensure, by subpoenas served on these witnesses (if necessary), that the jury can evaluate live testimony. In sum, the "inability of [the] Court to compel the live testimony of critical witnesses at trial suggests that transfer is appropriate." *Parlodel Litig.*, 22 F. Supp. 2d at 324; *see also Checuti*, 291 F. Supp. 2d at 672 (subpoena power of court over necessary witnesses a determining factor in transfer analysis); *Fontana v. E.A.R.*, 849 F. Supp. 212, 214-15 (S.D.N.Y. 1994) (transferring products liability action where "all of the relevant third-party witnesses are in Wyoming and beyond the subpoena powers of this Court . . . [but not] beyond the subpoena power of a Wyoming court"); *Monaco v. G.D. Searle & Co.*, 506 F. Supp. 695, 696 (N.D. Ill.

---

[6] Plaintiffs may contend that NPC could use deposition testimony to present these witnesses' testimony at trial. But allowing the plaintiff to choose a forum having no connection with their claims – and thereby curtailing NPC's ability to present live testimony at trial – would impermissibly hamper NPC's defense. As the Supreme Court has stated, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). Thus, courts have rejected the argument that a §1404(a) transfer motion should be denied because depositions could be used to present the trial testimony of distant witnesses. *See, e.g.*, *Kay v. Nat'l City Mortgage Co.*, 494 F. Supp. 2d 845, 853 (S.D. Ohio 2007) ("trial by video tape is simply not preferable to live examination in front of a jury"); *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) ("Depositions, . . . even when videotaped, are no substitute for live testimony."); *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1277 (N.D. Ill. 1991) ("The interest of justice is better served by ensuring the presence of live witness testimony. It is well settled that the trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured.") (citations and internal quotation marks omitted); *Paul v. Int'l Precious Metals Corp.*, 613 F. Supp. 174, 179 (S.D. Miss. 1985) (rejecting, as "particularly unappealing," plaintiff's suggestion that key witness' trial testimony be presented through videotaped deposition and concluding that defendant "should not be deprived of the opportunity to present the live testimony of the [witness].").

1979) (transferring pharmaceutical products liability lawsuit to plaintiffs' home forum because, *inter alia*, prescribing physicians were beyond transferor court's subpoena power).

Another group of non-party witnesses – plaintiffs' co-workers, employers, neighbors, friends, and/or family members – may have knowledge relevant to plaintiffs' claims or NPC's defenses as well as issues pertaining to damages. *See In re EDRSIL*, 850 F. Supp at 194 (granting transfer motion based on, *inter alia*, location of plaintiffs' co-workers and persons familiar with plaintiffs' lifestyles); *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988) (granting transfer motion based on, *inter alia*, location of all lay witnesses "with knowledge of the facts surrounding [plaintiff's] use and removal of her [intrauterine device], any attendant medical complications and injury or damages she suffered"). The discovery to date in the cases at issue here indicates that none of these witnesses reside in Tennessee, which further supports NPC's transfer request.[7] *See* Dickey Declaration.

### B.    Where Plaintiffs' Claims Arose

Analyzing which forum is most appropriate under §1404(a) also requires courts to consider where the claims arose, *i.e.*, the place of the alleged wrong. *See McGinnis*, 181 F. Supp. 2d at 690 ("The Court generally considers the place of the alleged wrong to be a very important factor in venue determinations."); *see also Costello v. Novartis Pharms. Corp.*, No. 05-3841, 2006 WL 1479800, at *2 (E.D. Pa. May 25, 2006) (transferring to plaintiff's home district pharmaceutical products liability cases in which no claims arose where action was filed and holding plaintiff's home district where claims arose "the most outstanding of the private

---

[7] Nashville is also inconvenient for the plaintiffs themselves. Each plaintiff or his or her personal representative resides hundreds of miles away from Tennessee. *See* Dickey Declaration and attached Exhibit A. For example, Terry Anderson (Columbia Heights, Minnesota) lives 888 miles from Nashville; Abbie Bowden (Fort Meyers, Florida), 829 miles; Victor Brown (Wilmington, North Carolina), 643 miles; Susan Eberhart (Hapeville, Georgia), 256 miles; Edwin Melau, deceased and represented by Patricia Melau (both of Schaumburg, Illinois), 496 miles; Brenda Melching (Oakdale, California), 2,228 miles; Debra Thompson (Bedford, Indiana), 254 miles; George Tracy (Ranier, Oregon), 2,395 miles and Otilia Zinger (East Longmeadow, Massachusetts), 1027 miles from Nashville.

factors" in considering transfer) (Exhibit D); *Parlodel Litig.*, 22 F. Supp. 2d at 326 (transferring pharmaceutical products liability claims to plaintiffs' home districts, where defendant marketed and plaintiffs consumed the medication; "this factor weighs in favor of transfer."); *In re EDRSIL,* 850 F. Supp. 188 (transferring 75 products liability actions to plaintiffs' home districts); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 826 (E.D. Tex. 1994) (transferring toxic tort case to district where alleged chemical exposure occurred).

Here, the plaintiffs' claims arose in their home fora, not in Tennessee, because the alleged prescription, purchase, and consumption of Aredia® and/or Zometa® occurred in that state, and most if not all of plaintiff's treating physicians/health care providers are in that state. *See* Dickey Declaration. Plaintiffs' claims therefore should be transferred to their home districts.

### C. Plaintiff's Forum Choice

Although plaintiff's forum choice is part of the § 1404(a) analysis, that choice is afforded considerably less weight when the action has a limited – or, as here, *no* – connection with the chosen forum. *Kay,* 494 F. Supp. 2d at 852 ("absence of events connecting the litigation to [the chosen forum] negates the deference ordinarily given to a plaintiff's choice of venue."); *Parlodel Litigation*, 22 F. Supp. 2d at 323-24 (the weight afforded a plaintiff's forum choice "diminishes when the plaintiff chooses a foreign forum rather than his or her home forum," and the "plaintiff's interest decreases even further where the central facts of a lawsuit occur[red] outside the chosen forum.") (internal quotation and citation omitted); *see also Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (giving "little weight to Plaintiff's choice of New Jersey as the forum in which to litigate these [products liability] claims" because plaintiff had no connection to New Jersey and because product was sold, used, and failed to perform adequately in North Carolina); *In re EDRSIL*, 850 F. Supp. at 194 ("A primary goal of plaintiffs

in suing in this district was apparently to effect a *de facto* multidistrict consolidation. Therefore, little deference need be shown to their choice of forum.").

The same analysis applies here. Plaintiffs at issue here have no connection to this forum, plaintiffs are not residents of Tennessee, the events giving rise to plaintiffs' claims occurred wholly outside the state of Tennessee, and the primary goal of plaintiffs' filing their claims in this Court was to facilitate the pursuit of a national class action prior to the formation of these MDL proceedings. On the other hand, plaintiffs have extensive connections to their home states where they reside and where the events giving rise to their alleged injuries occurred. Accordingly, because plaintiffs' claims have no connection to this district, the plaintiffs' choice of forum is entitled to little, if any, weight in considering whether to transfer plaintiffs' claims to their home districts.[8]

### D.     NPC's Forum Preference

A defendant's forum preference is one of the factors that courts take into account when deciding venue transfer motions. *See, e.g., White v. SmithKline Beecham Corp.*, No. 06-3025, 2007 WL 1237952, at *3 (E.D. Pa. April 26, 2007) (Exhibit E). In order that the trier of fact hear case-specific evidence in as fair and thorough a means as possible, NPC prefers to try each plaintiff's case in the plaintiff's home forum. Therefore, as in *White*, NPC's preferred forum weighs in favor of granting the transfer motion.

### E.     Cost of Obtaining the Attendance of Witnesses

"[T]he cost of transporting witnesses is an important factor" when considering whether transfer is appropriate. *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F. Supp. 193, 199 (S.D.

---

[8] The fact that any plaintiff's counsel maintains an office in Tennessee has no bearing on whether the case should remain here. *See, e.g., Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 698 (E.D. Va. 2000) ("the convenience to counsel is not an appropriate matter for consideration in resolving the appropriateness of a motion to transfer venue").

Ohio 1981). NPC expects that the testimony of several treating and prescribing health care providers will be necessary in each one of the plaintiffs' individual cases, as well as testimony from numerous other witnesses who will testify about specific causation, plaintiffs' medical history and treatment and plaintiff's alleged damages. The plaintiffs' claims are centered far from Tennessee, and as a result, none of the witnesses who would potentially be called at trial reside within Tennessee. Even if the witnesses voluntarily agreed to appear before the Court, the otherwise avoidable increased costs of obtaining their attendance would be substantial. Because the majority of these witnesses are located in and around each plaintiffs' home state, transferring plaintiffs' cases to their home districts would mitigate this financial burden.[9]

### III. The Public Interest Factors Also Support Adjudicating the Claims in These Cases in Each Plaintiff's Home Forum.

The public interest factors relevant to the §1404(a) analysis include: the interest in having local controversies decided at home; the trial court's familiarity with governing state law in diversity jurisdiction cases; and all appropriate practical considerations. *Checuti*, 291 F. Supp. 2d at 672. "In short, the Court may consider any factor that may make any eventual trial easy, expeditious and inexpensive." *Helder v. Hitachi Power Tools, USA, Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991).

### A. Local Interest in Plaintiff's Claims

When a lawsuit "involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale . . . ." *In re EDRSIL*, 850 F. Supp. at 195.

---

[9] The location of documentary evidence also is a factor in deciding whether to transfer claims under §1404(a). *See, e.g., Duha v. Agrium, Inc.*, 448 F.3d 867, 876 (6th Cir. 2006) ("Access to non-witness sources of proof, including documents in particular, is properly considered as part of the ease-of-access factor."). Various kinds of documents relevant to plaintiffs' claims here, including plaintiffs' medical records, pharmacy records, work records, insurance records, and/or workers' compensation records, are located in plaintiffs' home states. By contrast, no materially relevant documents originated in Tennessee. To the extent that this factor affects the analysis, it favors transfer to plaintiffs' home fora where the originals of these documents are located.

*See also Parlodel Litig.*, 22 F. Supp. 2d at 327 ("Plaintiffs' home districts have a greater interest in these actions because most of the central facts of these suits occurred in those districts."). Relatedly, when a forum has a local interest in the claims at issue, the burden of jury duty is appropriately placed on the residents of that forum. "[J]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508-09 (internal quotation marks omitted); *see also Shell Oil*, 917 F. Supp. at 330 (burden of jury duty more appropriately placed on residents of transferee district, which has a greater interest in the litigation).

Transferring plaintiffs' claims here to their home districts will ensure that their claims are adjudicated in the forum with a local interest in this lawsuit, by a jury drawn from the community where the plaintiff resides, where the physicians allegedly prescribed the treatment at issue here, and where the alleged injuries occurred. *See Checuti*, 291 F. Supp. 2d at 672 (transfer would "further the goal of public interest in local adjudication"); *see also Parlodel Litig.*, 22 F. Supp. 2d at 327 (transferring pharmaceutical products liability suits because, *inter alia*, "[p]laintiffs' home districts have a greater interest in these actions because most of the central facts of these suits occurred in those districts.").

Moreover, it would be contrary to the public interest to burden Tennessee residents with jury duty to decide claims having no connection to Tennessee, asserted by plaintiffs who do not reside in Tennessee. Thus, this factor also supports transferring the plaintiffs' claims to their individual home districts.

### B.      Familiarity with Governing State Law

As the Supreme Court has explained, it is appropriate to "hav[e] the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

13

*Gulf Oil*, 330 U.S. at 509. Transfer to the court sitting in the state whose law will be applied is particularly appropriate in products liability cases, because the "law of products liability varies significantly among jurisdictions." *In re EDRSIL*, 850 F. Supp. at 196. *See also Brown v. United Radio, Inc*., No.: 3:06-CV-441, 2007 U.S. Dist. LEXIS 44889, at *10-11 (E.D. Tenn. June 20, 2007) ("Not only would the [transferee court] be more experienced and likely superior to this Court in analyzing and applying the laws of its state to this case, but the fact that Kentucky law governs this dispute suggests to the Court that this lawsuit is, at its core, a Kentucky case.") (Exhibit F); *McClamrock*, 267 F. Supp. 2d at 41 (transferring pharmaceutical products liability lawsuit to North Carolina because "the courts in that jurisdiction have the greatest familiarity with North Carolina law."). Accordingly, courts have based §1404(a) transfer rulings in part on which state's substantive law would govern the claims at issue. *See, e.g., Parlodel Litig.*, 22 F. Supp. 2d at 327 ("the apparent application of the law of each Plaintiff's home state weighs in favor of transfer"); *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 n.11 (D.D.C. 1986) ("The benefit of having a local court construe its own law is a relevant factor in considering a transfer motion.").

This factor also supports transfer here because the law of each plaintiff's home forum likely governs that plaintiff's claims. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006) (applying state's choice-of-law rules and holding that substantive law of each plaintiff's home state governs each plaintiff's pharmaceutical products liability claims); *Parlodel Litig.*, 22 F. Supp. 2d at 326-27 (holding, for purposes of transfer motion, that governing law will be "the law of each Plaintiff's home state"). Although this Court need not engage in a full-blown choice-of-law analysis to decide a transfer motion, *see Shell Oil*, 917 F. Supp. at 330 & n.3, it is appropriate for the Court to conclude that conflicts between Tennessee law and the law of each

plaintiff's forum state further support NPC's transfer request. *See In re Aredia and Zometa Prods. Liab. Litig.,* at *5 (denying class certification, in part because law governing product liability claims and defenses vary from state to state) (Docket #683).

### C.    Other Practical Considerations

The MDL Court's interest in conducting a bellwether trial in certain of the former *Anderson, Becker* and *Wood* cases does not tip the scale against transfer under the circumstances here. No meaningful efficiencies will be derived from trying a bellwether case in the Middle District of Tennessee.[10] In addition, for the reasons stated above, holding a bellwether trial in the Middle District of Tennessee cuts against the traditional "public interest" factor analysis.

### IV.    The Private and Public Interest Factors Support Adjudicating the *Foster* and *Montgomery* Claims in Each Plaintiff's Home Forum, the Eastern and Western Districts, Respectively.

The private interest factors clearly favor transfer to the Eastern District of Tennessee for plaintiff Foster and the Western District of Tennessee for plaintiff Montgomery. Each district is where the respective plaintiff resides, where each plaintiff's physician prescribed the medication at issue, where the alleged injuries occurred, and where the vast majority of non-party witnesses are located.[11] Plaintiffs do not allege that any of these events occurred in the Middle District of Tennessee.

---

[10] During the January 10, 2008 hearing, the Court stated that briefing on NPC's objections related to the bellwether trial issue will occur at a later date to be determined by the Court. NPC notes that transfer of the plaintiffs formerly included in the *Anderson, Becker* and *Wood* cases to their respective home districts for trial will obviate the need to resolve any bellwether issue at this time.

[11] As set forth more fully in the Dickey Declaration and Exhibit B thereto, a trial located in this forum would be inconvenient for all of these witnesses, requiring each witness to travel *nearly 400 miles* (round trip). Conversely, a trial in the Eastern (Foster) and Western (Montgomery) Districts of Tennessee, respectively, located in plaintiffs' home forum, would be much more convenient and would require travel of substantially less distance for the witnesses. For all of the currently identified *Montgomery* witnesses, their round trip travel to court in Memphis to testify would be 40 miles or less. Seven of the currently identified *Foster* witnesses are located in Knoxville where NPC seeks to transfer Foster's claims. For the remainder of the now identified witnesses, their round trip travel to court to testify would be reduced by more than 250 miles if they were to travel to Knoxville rather than to Nashville. Even if court were held at a different division of the Eastern District of Tennessee (for example, at Chattanooga), the

15

Plaintiffs Foster and Montgomery filed these lawsuits in Nashville, approximately 190 miles from Plaintiff Foster's residence in Athens, Tennessee and approximately 196 miles from Plaintiff Montgomery's residence in Bartlett, Tennessee. Through discovery thus far in Ms. Foster's action, NPC has identified 13 potential witnesses, including three treating physicians and three oral & maxillofacial surgeons. Of those 13 potential witnesses, all are located more than 100 miles from Nashville. In discovery thus far in Mr. Montgomery's action, NPC has identified 8 potential witnesses, including his treating physician, two oncologists (including the prescribing physician) and his oral & maxillofacial surgeon.[12] Of those 8 potential witnesses, all are located approximately 200 miles from Nashville. *Costello v. Novartis Pharms. Corp.*, No. 05-3841, 2006 WL 1479800, at *2-3 (E.D. Pa. May 25, 2006) (transferring from Eastern District of Pennsylvania to plaintiff's home district in Middle District of Pennsylvania; "[t]he most outstanding of the private factors is that the claim arose entirely in the Middle District of Pennsylvania," and, with respect to public factors, "the process of trying this case will be easier and more expeditious the closer the bulk of the witnesses live to the courthouse. There will be

---

round trip driving distances for all identified *Foster* witnesses would still be reduced over travel to Nashville. The result is the same for the *Montgomery* witnesses even if court were held at Jackson, Tennessee in the Western District of Tennessee. While plaintiffs Foster and Montgomery may be willing to travel long distances to appear at trial, non-party witnesses – especially treating physicians – cannot be expected to appear readily at trial in such inconvenient circumstances.

[12] Prior to any discovery in these cases, NPC filed motions to transfer the then *Anderson*, *Becker* and *Wood* putative class actions to the Eastern District of Tennessee where a putative class action also had been pending. The arguments raised in NPC's motions to transfer primarily revolved around the forum-shopping efforts of the plaintiffs (who had sought, but been denied, joinder in the Eastern District putative class action). Because no discovery had yet taken place, NPC was unable to present the Court with specific information regarding the location of potential witnesses. The Court denied NPC's motions to transfer venue "based upon the record before it . . ." because there was "nothing in the record to indicate that transferring this case to the Eastern District will be more convenient for potential fact witnesses or Plaintiffs' treating physicians." (*Anderson, et al., v. NPC*, No. 3:05-CV-00718 (M.D. Tenn.), Docket #50 at 5; *Becker, et al., v. NPC*, No. 3:05-CV-00719 (M.D. Tenn.), Docket # 47 at 5; *Wood, et al., v. NPC*, No. 3:05-CV-00716 (M.D. Tenn.), Docket #50 at 5). The specific factual record (as developed through discovery to date), presented in this motion, shows that transfer to the Eastern (Foster) and Western (Montgomery) Districts of Tennessee will be more convenient for potential fact witnesses and plaintiffs' treating physicians.

fewer difficulties scheduling the witnesses, and less pressure to finish with a particular witness by a certain time.").

Although this Court's subpoena power extends throughout Tennessee, *see* Fed. R. Civ. P. 45(b)(2) and Tenn. R. Civ. P. 45.05(1), (2), Federal Rule of Civil Procedure 45(c)(3) shows that it is presumptively burdensome to require witnesses to travel over 100 miles to give trial testimony. Non-party witnesses – especially practicing physicians – cannot be expected to appear readily at trial in such inconvenient circumstances. This issue takes on added importance when one considers that, due to the unpredictable nature of trials, scheduling situations often arise that require witnesses to return the next morning to complete testimony commenced at the end of the prior trial day. In those circumstances, treating physicians would be placed in the difficult position of staying overnight in Nashville (or traveling a total of over 400 miles round trip, if they decide not to spend the night in Nashville). In short, the inconvenience and cost factors – for both unwilling and willing witnesses – favor transfer to the Eastern District (Foster) and the Western District (Montgomery). Based on the location of witnesses, the witness-convenience factor weighs heavily in favor of the transfer sought by NPC. *See e.g.*, *Watson v. Bortz Health Care of Rose City*, No. 05-72989, 2006 U.S. Dist. LEXIS 4852, at *12, *16-17 (E.D. Mich. Jan. 20, 2006) (transferring case from Southern Division to Northern Division of the Eastern District of Michigan where the plaintiff and all relevant witnesses resided, and all events relevant to the case occurred, in the Northern Division and finding that "inconvenience to the witnesses factor heavily favors [transfer]") (Exhibit G); *Martin ex rel. Martin v. Toyota Motor Sales, U.S.A.*, Inc., Civil No. 06-15702, 2007 U.S. Dist. LEXIS 25042 at *7 (E.D. Mich. April 4, 2007) (where all the witnesses reside in Western District, witnesses' convenience favors transfer

from Eastern to Western District of Michigan because plaintiffs and several key witnesses reside in Western District) (Exhibit H).

The public interest factor also weighs in favor of transfer. Unless this Court grants this motion, plaintiffs' forum-shopping would impose the burden of jury duty on jurors from a community where plaintiffs do not live and where their claims did not arise. Jurors in and around Nashville have to decide the many lawsuits that belong in this forum without being overloaded by cases – like *Foster* and *Montgomery* – that do not belong here. Transferring plaintiffs to their home forum would ensure that their claims are adjudicated in the forum with a local interest in the controversy, by jurors who would be properly expected to shoulder that burden. *See Cameli v. WNEP-16 The News Station*, 134 F. Supp. 2d 403, 406-07 (E.D. Pa. 2001) (granting venue transfer from Eastern District to Middle District of Pennsylvania, noting strong local interest for the dispute to be resolved where the claim arose and where the conduct occurred).

## **CONCLUSION**

For the foregoing reasons, this Court should find that the appropriate venue of the severed actions for trial is each plaintiff's home forum. Accordingly, following the completion of pretrial proceedings, plaintiffs' cases should be transferred as follows:

- *Terry Anderson v. NPC*, No. 3:07-CV-01184, to D. Minn.

- *Donald Arbuckle v. NPC*, No. 3:07-CV-01226, to D. Kan.

- *Julie Fritzky, Personal Representative of Susan Becker, Deceased v. NPC*, No. 3:07-CV-01185, to D. Conn.

- *Mary Blumenshine v. NPC,* No. 3:07-CV-01186, to W.D. Mo.

- *Abbie Bowden v. NPC,* No. 3:07-CV-01187, to M.D. Fla.

- *Marsha Brown v. NPC,* No. 3:07-CV-01188, to S.D. Miss.

- *Victor Brown v. NPC,* No. 3:07-CV-01189, to E.D.N.C.

- *Denise Shewmake, Personal Representative of Frances Jo Calloway, Deceased v. NPC,* No. 3:07-CV-01190, to N.D. Miss.

- *Gian Casali, Personal Representative of Angelina Casali, Deceased v. NPC*, No. 3:07-CV-01280, to E.D.N.Y.

- *Susan Eberhart v. NPC,* No. 3:07-CV-01191, to N.D. Ga.

- *Karen Evers v. NPC,* No. 3:07-CV-01192, to D. Ariz.

- *Robert Foster, Personal Representative of Betty Foster, Deceased v. NPC,* No. 3:07-CV-01193, to E.D. Tenn.

- *Patricia E. Fragomeli, Personal Representative of Fred Fragomeli, Deceased v. NPC*, No. 3:07-CV-01194, to W.D. Mich.

- *Carol Hill v. NPC,* No. 3:07-CV-01195, to W.D. Wash.

- *Elizabeth McCleery, Personal Representative of Sally McCleery, Deceased v. NPC,* No. 3:07-CV-01196, to E.D. Wis.

- *Orville McDaniel, Personal Representative of Eula Mae McDaniel, Deceased v. NPC,* No. 3:07-CV-01197, to W.D. Ark.

- *Patricia Melau, Personal Representative of Edwin Melau, Deceased v. NPC,* No. 3:07-CV-01198, to N.D. Ill.

- *Brenda Melching v. NPC,* No. 3:07-CV-01199, to E.D. Cal.

- *Elizabeth Miller v. NPC,* No. 3:07-CV-01200, to D.N.J.

- *Bobby Lynn Montgomery v. NPC,* 3:07-CV-01201, to W.D. Tenn.

- *Stacy Zimmerman, Personal Representative of Phyllis Newman, Deceased v. NPC,* No. 3:07-CV-01202, to D. Md.

- *Gerald Olson, Personal Representative of Donna Olson, Deceased v. NPC,* No. 3:07-CV-01203, to D. Or.

- *James Patton v. NPC,* No. 3:07-CV-01204, to W.D. Okla.

- *Roger Reinardy, Personal Representative of Sally Reinardy, Deceased v. NPC,* No. 3:07-CV-001205, to C.D. Cal.

- *Suzanne Strakhov v. NPC,* No. 3:07-CV-01206, to E.D.N.Y.

- *Marie Talley v. NPC,* No. 3:07-CV-01207, to W.D.N.C.

- *Debra Thompson v. NPC,* No. 3:07-CV-01208, to S.D. Ind.

- *George Tracy v. NPC,* No. 3:07-CV-01209, to D. Or.

- *Denise White v. NPC,* No. 3:07-CV-01210, to S.D. Iowa

- *Charles Hill Yarborough, Jr., Personal Representative of Alison Williams, Deceased v. NPC,* No. 3:07-CV-01211, to E.D.N.C.

- *Larry Wood, Personal Representative of Angela Wood, Deceased v. NPC,* No. 3:07-CV-01225, to E.D. Ark.

- *Otilia Zinger v. NPC,* No. 3:07-CV-01213, to D. Mass.


Respectfully submitted,


Dated: January 14, 2008

s/ Katharine R. Latimer
Joe G. Hollingsworth
Katharine R. Latimer
Catherine R. Baumer
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January 2008, a true and correct copy of the foregoing Novartis Pharmaceuticals Corporation's Memorandum in Support of its Motion for a Section 1404(a) Venue Transfer of the Severed *Anderson*, *Becker* and *Wood* Actions to Plaintiffs' Home Fora Following the Close of MDL Discovery in Each Case was served by operation of the Court's Electronic Case Filing System on the following, including Plaintiffs' Liaison Counsel:

C. Patrick Flynn, Esq.
Flynn & Radford, PC
320 Seven Springs Way, Suite 150
Brentwood, TN 37027

Robert G. Germany, Esq.
Pittman, Germany, Roberts & Welsh, L.L.P.
P.O. Box 22985
Jackson, MS 39225-2985

F. Dulin Kelly, Esq.
Clinton L. Kelly, Esq.
Andy L. Allman, Esq.
Kelly, Kelly & Allman
629 East Main Street
Hendersonville, TN 37075

John O. Threadgill, Esq.
Threadgill Law Firm, PC
9724 Kingston Pike, Suite 701
Knoxville, TN 37922

s/ Katharine R. Latimer
Katharine R. Latimer
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*