**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>AREDIA® and ZOMETA® PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>3:06-cv-01057 (Taylor) | No. 3:06-MDL-01760<br><br>JUDGE CAMPBELL<br><br>MAGISTRATE JUDGE BROWN |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Keith C. Taylor ("Mr. Taylor" or "Plaintiff") opposes Defendant Novartis Pharmaceuticals Corporation's ("Novartis" or "NPC") motion for summary judgment.

## I. INTRODUCTION

This case is before the Court after an extensive Multidistrict Litigation ("MDL") history. *See In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760, 2011 WL 2182824 (M.D. Tenn. Jun. 3, 2011) (Order summarizing MDL-1760 proceedings). The MDL Court has ruled on numerous occasions that there are genuine issues of material fact in these cases sufficient to defeat summary judgment. Given this extensive history the only "fact" material to this motion this Court need decide is whether Mr. Taylor has provided admissible evidence on specific causation of his disease. This Court, acting as MDL transferee court, has already ruled that the adequacy of the "warning" and general medical causation present issues of material fact.[1]

[1] In fact, Novartis has lost the issue of general medical causation in every case where we know the jury's view on the subject.

The MDL Court has found that there are genuine issues of material fact as to general causation (that is, whether Aredia® and Zometa® cause osteonecrosis of the jaw ("ONJ") generally), and whether Novartis' warnings concerning Aredia® and Zometa® were adequate. *See In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760, 2009 WL 2497536 (M.D. Tenn. Aug. 13, 2009) ("General Causation Decision") (denying NPC summary judgment as to general causation); *and In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760, Docket Nos. 2766, 2767 (M.D. Tenn. Aug. 13, 2009) ("Warnings Decision") (Order and Mem. denying NPC summary judgment as to adequacy of Aredia® and Zometa® warnings) (attached as Ex. A).[2]

The MDL Court determined that the Plaintiffs' Steering Committee ("PSC"), on behalf of all Florida MDL Plaintiffs then before it, demonstrated the existence of more than

---

[2] The Taylor Response to NPC's Statement of Undisputed Facts ("Resp. to NPC's SUF") accompanies this pleading and is incorporated herein. Documents and deposition excerpts referenced herein, and in the Resp. to NPC's SUF, are attached to the Declarations of John J. Vecchione, Esq. in the *Taylor* case ("Vecchione Decl.") filed contemporaneously herewith and are incorporated by reference herein. Plaintiff also incorporates by reference the oppositions filed from time to time by the Plaintiffs' Steering Committee in this MDL in opposition to Novartis's various motions for summary judgment regarding causation and warnings, including without limitation the *Plaintiffs' Response to Novartis's Statement of Undisputed Facts in Support of Novartis's Motion for Summary Judgment on the Adequacy of Aredia and Zometa Warnings* filed on 07/01/2009 (DE 2616) and as corrected 07/13/2009 (DE 2639); *Plaintiffs' Opposition to Novartis's Motion for Summary Judgment on the Adequacy of Aredia and Zometa Warnings* filed 07/01/2009 (DE 2614); *Plaintiffs' Memorandum In Opposition To Novartis Pharmaceuticals Corporation's Motion For Summary Judgment Based On Failure Of General Causation Proof Under Daubert* filed on 07/02/2009 (DE 2633) and as corrected 07/03/2009 (DE 2635); and the Second Declaration of Robert Germany filed on 06/28/2009 (DE 2465).

enough evidence to defeat a motion for summary judgment premised on Florida's evidentiary presumption (Fla. St. Ann. § 768.1256(1)). *See In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760, 2010 WL 813459 (M.D. Tenn. Mar. 3, 2010) ("Florida Decision").

The MDL Court has consistently denied NPC's motions for summary judgment in individual cases when an oral/maxillofacial surgeon has been named to testify to case-specific causation. *See, e.g., In re: Aredia® and Zometa® Prods. Liab. Litig. (Deutsch)*, Nos. 3:06-md-1760 (3:08-cv-0071), 2009 WL 2496891 (M.D. Tenn. Aug. 13, 2009) (denying summary judgment on every claim but express warranty under New York law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Fussman)*, Nos. 3:06-md-1760 (3:08-cv-0068), 2009 WL 2496843 (M.D. Tenn. Aug. 13, 2009) (same, North Carolina law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Forman)*, Nos. 3:06-md-1760 (3:08-cv-0069), 2009 WL 2496873 (M.D. Tenn. Aug. 13, 2009) (same, New York law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (White)*, Nos. 3:06-md-1760 (3:06-cv-0550), 2009 WL 2497692 (M.D. Tenn. Aug. 13, 2009) (same, California law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Hogan)*, Nos. 3:06-md-1760 (3:06-cv-0381), 2009 WL 2513555 (M.D. Tenn. Aug. 13, 2009) (same, Rhode Island law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Brodie)*, Nos. 3:06-md-1760 (3:06-cv-0521), 2009 WL 2497661 (M.D. Tenn. Aug. 13, 2009) (same, Missouri law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Baldwin/Winter)*, Nos. 3:06-md-1760 (3:06-cv-0496), Docket No. 4043 (M.D. Tenn. Dec. 7, 2010) (denying summary judgment of every claim but wrongful death, negligent manufacture, and express warranty under Missouri law) (attached as Ex. B); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Mahaney/Kyle)*, Nos. 3:06-md-1760 (3:06-cv-0495), Docket No. 4065 (M.D. Tenn. Dec. 7,

2010) (denying summary judgment of every claim but negligence *per se*, express warranty, and implied warranty under Kentucky law) (attached as Ex. C); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Eberhart)*, Nos. 3:06-md-1760 (3:08-cv-0913), 2010 WL 5136148 (M.D. Tenn. Dec. 7, 2010) (denying summary judgment of every claim but negligence *per se* under Georgia law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (McDaniel)*, Nos. 3:06-md-1760 (3:08-cv-0908), 2010 WL 5136142 (M.D. Tenn. Dec. 7, 2010) (same, Arkansas law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Talley)*, Nos. 3:06-md-1760 (3:08-cv-0925), 2010 WL 5092784 (M.D. Tenn. Dec. 7, 2010) (failure to warn claim survives under North Carolina law); *In re: Aredia® and Zometa® Prods. Liab. Litig. (Brown)*, Nos. 3:06-md-1760 (3:08-cv-0924), 2010 WL 5072022 (M.D. Tenn. Dec. 7, 2010) (same).

It is the same with Aredia®/Zometa® cases that have advanced in other state and federal courts. *See Stevens v. Novartis Pharms. Corp.*, 358 Mont. 474, 247 P.3d 244 (Mont. 2010), *cert. denied*, 131 S.Ct. 2938 (May 31, 2011) ($3,200,000.00 verdict in plaintiff's favor upheld under Montana law); *Bessemer, et al. v. Novartis Pharms. Corp.*, No. MID-L-1835-08, *slip op.* (N.J. Super. Ct. Law Div. Apr. 30, 2010) (Order and Mem. denying summary judgment on plaintiffs' failure to warn and express warranty claims under New Jersey law) (attached as Ex. D); (*Levine v. Novartis*, No. MID-L-5691-08 (N.J. Super. Mar. 16, 2012) (Memorandum of Decision and Order denying summary judgment as to all claims except breach of warranty) (attached as Ex. E); *Meng v. Novartis*, No. MID-L-7670-MT (N.J. Super. June 2, 2012) (denying summary judgment as to failure to warn and breach of implied warranty claims) (attached as Ex. F))**;** *Fussman v. Novartis Pharms. Corp.*, No. 1:06-cv-0149, 2010 WL 4104707 (M.D.N.C. Oct. 18, 2010) (denying summary judgment on

proximate cause arguments under North Carolina law); *Brodie v. Novartis Pharms. Corp.*, No. 4:10-cv-0138, 2011 WL 1559763 (E.D. Mo. Apr. 25, 2011) (denying renewed summary judgment motion under Missouri law); *Winter v. Novartis Pharms. Corp.*, No. 2:06-cv-4049, 2011 WL 5008008 (W.D. Mo. Oct. 20, 2011) (same); *Zimmerman v. Novartis Pharms. Corp.*, No. 8:08-cv-2089, *slip op.* (D. Md. Nov. 8, 2011) (attached as Ex. G)(denying summary judgment, Maryland law); *Fussman v. Novartis Pharms. Corp.*, No. 1:06-cv-0149, 2011 WL 5836928 (M.D.N.C. Nov. 21, 2011) (finding sufficient evidence to support jury's award of $287,000.00 in compensatory damages and $12,600,000.00 in punitive damages (punitive award later reduced to $861,000.000 under North Carolina law); (*Davids v. Novartis*, No. 06-CV-431 (E.D.N.Y. Apr. 19, 2012) (Spatt, J.)(denying Novartis motion for summary judgment on plaintiff's negligent manufacture, negligent failure to warn, and strict liability claims)(attached as Ex. H).[3]

Florida Plaintiffs have survived one motion for summary judgment. Many, if not most, of the arguments made in NPC's current motion were *already crossed* in the Opposition to Summary Judgment for Florida Plaintiffs. The Court specifically denied Novartis' motion for summary judgment based on Florida's presumption, stating:

---

[3] In the three years since summary judgments began issuing only two outlier courts have granted summary judgment and dismissed plaintiffs on Defendant's "proximate cause" motions. (*Ingram v. Novartis*, No. CIV-05-913-L, Order (July 18, 2012 W. D. Oklahoma) (Exhibit I); *and Eberhart v. Novartis,* No. 1:08-cv-2542 –WSD, Opinion and Order (Oct. 31, 2011 N.D. Ga.) (Exhibit J)). Neither case is apposite as neither deals with Florida law. They fail to note if a prescriber changes his prescribing habits to reduce the incident rate of BRONJ, such as changing what he tells a patient, it breaks the chain of causation even if he would still prescribe the drug. *Eberhart* is particularly inapposite as Novartis was given *two bites* at the summary judgment apple, losing in the MDL, and getting another summary judgment decision after *ex parte* contacts with a treating physician in the remand court.

Plaintiffs here argue that they can rebut this presumption by showing that these products were defective and unreasonably dangerous. Despite Defendant's assertion that Plaintiffs have no evidence that could overcome the presumption, **Plaintiffs offer a myriad of evidence in support of their position.** See [MDL-1760] Docket No. 3093[4]. Defendant contends that Plaintiffs do not proffer the type of evidence required to overcome the presumption, but Defendant never identifies what type of evidence it contends that would be.

The Court finds that Plaintiffs have offered proof sufficient to avoid summary judgment on this issue. The statutory presumption will apply at trial, but Plaintiffs have sufficiently raised genuine issues of material fact as to their ability to rebut that presumption. A jury will have to determine whether the presumption has been overcome in each case.

Florida Decision, 2010 WL 813459 at *2 (emphasis added); *and see Schedin v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 808 F.Supp.2d 1125, 1135 (D.Minn., 2011)(denying j.n.o.v on adequacy of label). Plaintiff adopts the opposition papers filed regarding the Florida Decision, including the Vecchione Declaration, the Response and Counter-Statement of Facts, and the Response in Opposition. Specifically, Plaintiffs adopt MDL-1760 Docket Nos. 3091, 3092, 3093, and 3094, respectively. Finally, he adopts the arguments made in opposition to NPC's *Daubert* motions regarding Dr. Vishtasb Broumand and Mr. Taylor's non-retained experts.

## II. RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

Virtually all of Defendant's "undisputed" facts are hotly contested. *See, e.g.,* Second Declaration of Robert G. Germany, *In re: Aredia® and Zometa® Prods. Liab. Litig.,* No. 3:06-md-1760, Docket No. 2465 (M.D. Tenn. Jun. 28, 2009) (adopted by reference). NPC lost as a matter of law on the issues of the adequacy of Plaintiffs' general causation evidence

[4] This is PSC's Rule 56(E)(2) Statement of Facts and Citation to the Record that Overcome Any Florida Presumption.

and its Aredia® and Zometa® . General Causation Decision and Warnings Decision, *supra*. Defendant lost on the ability of Plaintiffs' evidence to rebut Fla. St. Ann. § 768.1256(1). *See* Florida Decision, *supra.* Plaintiffs reiterate certain basic facts of Mr. Taylor's use of Zometa® and subsequent development of ONJ so this Court may be familiar with them.

## A. The Bisphosphonates Aredia® and Zometa®.

Zometa®, and its precursor Aredia®, are intravenously administered bisphosphonate drugs intended as bone strengtheners. They are prescribed to delay the onset of "skeletal-related events" ("SREs") which Novartis defines as pathologic fracture, radiation therapy to bone, surgery to bone, or spinal cord compression. *See* Zometa® Label (Mar. 2003) at ZA-0649497 (Ex. 1 to First Vecchione Decl. filed contemporaneously herewith ("FVD"). Although they are administered to patients with cancer, Aredia® and Zometa® are ***not*** antineoplastic (they do not kill or prevent the spread of cancer cells). They are not approved to reduce pain or extend life in users. *See* Zometa® Label, *id.* *See also* Rainer Boehm Dep. (Feb. 1, 2010), 254:15-255:2 (Zometa® only treats SREs); 255:17-256:9 (Zometa® not indicated to improve quality of life); 257:15-257:21 (Zometa® not promoted to improve quality of life) (Ex. 2 to FVD)**;** David Epstein Dep. (Feb. 9, 2010), 238:25-239:19 (FDA rejected NPC's pain reduction labeling as inadequate) (Excerpts Ex. 3 to FVD); R.E. Coleman, *et al.*, *Adjuvant Treatment with Zoledronic Acid in Stage II/III Breast Cancer. The AZURE Trial.*, Abstract (presented at the 33rd Annual San Antonio Breast Cancer Symposium) (Dec. 10, 2010) (Zometa® does not stop cancer from returning or extend life[5])

[5] The preliminary AZURE results also confirmed thirteen (13) cases of ONJ, all in the Zometa® arm of the trial. The final results found more in the Zometa arm only.

(Ex. 4 to FVD). The major difference between Zometa® and Aredia® is that Zometa® is much more potent, which allows a reduction in its infusion time. In order to remain on the market the drugs' labels have been amended on multiple occasions to include information about ONJ. The labels do not recommend when to stop taking the drugs. Well controlled patients should stop bisphosphonate therapy after two years' use or reduce the frequency of use. M.Q. Lacy, *et al.*, *Mayo Clinic Consensus Statement for the Use of Bisphosphonates in Multiple Myeloma*, 81 MAYO CLIN. PROC. 8, 1047-53, Aug. 2006 (Ex. 5 to FVD); R.A. Kyle, *et al.*, *American Society of Clinical Oncology 2007 Clinical Practice Guideline Update on the Role of Bisphosphonates in Multiple Myeloma*, 25 J. Clin. Oncol. 17, 2464-72, Jun. 10, 2007 (Ex. 6 to FVD); A. Corso, *et al.*, *A Different Schedule of Zoledronic Acid Can Reduce the Risk of Osteonecrosis of the Jaw in Patients with Multiple Myeloma*, 21 Leukemia, 1545-48, Apr. 5, 2007 (Ex. 7 to FVD).

**B. Aredia® and Zometa® Cause Osteonecrosis of the Jaw.**

Osteonecrosis is a generic term that means bone death. Bone is a living tissue, with new cells being created and old cells being destroyed constantly. Aredia® and Zometa® work by disrupting this "remodeling" cycle. They inhibit osteoclasts, which are the cells in living bone which remove old bone cells. Zometa® Label at ZA-0649491-92 (Ex. 1 to FVD). Disorders that naturally result in problems with osteoclasts, such as osteopetrosis and pycnodysostosis, have long been know to cause osteonecrosis specifically of the jaw bones. *See, e.g.,* Carsten Goessl Dep. (Apr. 5, 2008) Ex. 3108 (Ex. 8 to FVD). In addition a disease known as "phossy jaw" was infamous among workers in 19th century matchstick factories who were exposed daily to elemental phosphorus and its chemical byproducts. *See* W.F.

Dearden, *Fragilitis Ossium Amongst Workers in Lucifer Match Factories*, Brit. Med. J., 270-71, Jul. 29, 1899 (Ex. 9 to FVD) *and* W.F. Dearden, *The Causation of Phosphorus Necrosis*, Brit. Med. J., 408-10, Aug. 17, 1901 (Ex. 10 to FVD). Bisphosphonates have been documented associated with osteonecrosis of the jaw since the 1980s. *See* J.E. Gotcher and W.S.S. Jee, *The Progress of the Periodontal Syndrome in the Rice Rat*, 16 J. Perio. Research, 441-55, 1981 (Ex. 11 to FVD). Novartis Zometa® researcher Jonathan Green testified he had the Gotcher and Jee study in his files that proved bisphosphonates cause ONJ since 1986. Jonathan Green, Ph.D. Dep. (Nov. 12, 2009), 127:4-15 (Ex. 12 to FVD).

### C. Bisphosphonate Related/Induced Osteonecrosis of the Jaws is a Distinct Disease Entity

Osteonecrosis of the jaw caused by bisphosphonates, termed Bisphosphonate Related/Induced Osteonecrosis of the Jaw ("BRONJ"/"BIONJ" or "BONJ"), is a distinct condition. Diane Young Dep. (Jun. 5, 2008) Ex. 4068 at Sec. 1.3.4.2.1 (ZAEM-001392121) (attached as Ex. 13 to FVD). Its hallmark in most cases, as defined by the American Association of Oral and Maxillofacial Surgeons ("AAOMS"), is exposed bone. *See* AAOMS Position Paper on BRONJ – 2009 Update (Ex. 14 to FVD). Before bisphosphonates, virtually the only cause of exposed bone in the oral cavity was radiation therapy directly to the jaw. Exposed dead bone caused by radiation therapy (osteoradionecrosis) responds to aggressive debridement and hyperbaric oxygen treatment. BONJ typically does not respond to this conventional treatment protocol. Expert Report of Dr. Robert E. Marx, D.D.S. (Oct. 6, 2008), ¶¶ 16-17 (Ex. 15 to FVD). *And see* Linda Lantwicki Dep. (Feb. 27, 2008) Ex. 2404 at ZAEM-01023237 (BONJ very different from osteoradionecrosis) (Ex. 16 to FVD). BONJ can become secondarily infected (osteomyelitis) and lesions can "heal" and reappear

periodically. BONJ is treated conservatively with anti-bacterial rinses and close observation, but due to length of time bisphosphonates remain in bone, there is no permanent cure.

**D. Novartis Had Notice of the Association Between Bisphosphonates and Osteonecrosis of the Jaw Well Before Mr. Taylor Started on Either Drug**

ONJ was documented in both the Aredia® and Zometa® clinical trials. When forced by Food and Drug Administration ("FDA") to review the data, Novartis reported at least six cases of ONJ in the clinical trials. *See* Green Dep. Ex. 6628 at ZA-0958893 (Ex. 17 to FVD); Nicholas Sauter (Sept. 3, 2008) Dep. Ex. 5741 at ZAEM-00288744 (Ex. 18 to FVD); Annemarie Petraglia Dep. (Jul. 30, 2008) Ex. 5152 (Ex. 19 to FVD). All the cases were in the drug arm of the trials. *See, e.g.*, page ZA-0958893 of Ex. 17 to FVD (two cases of ONJ in Aredia pivotal trials, four in Zometa trials, none in patients receiving placebo). Novartis found six cases of ONJ despite the fact that it lost over half the Aredia® clinical trial data. Prem Narang Dep. (Aug. 14, 2008) Ex. 5461 (Ex. 20 to FVD).

Dr. Salvatore Ruggiero, an oral/maxillofacial surgeon who along with Plaintiff's expert Dr. Marx is one of the leading authorities on BONJ, asked Novartis in April of 2002 if bisphosphonates cause ONJ. Peter Tarassoff Dep. (Apr. 10, 2008) Ex. 3202 (Ex. 21 to FVD). Dr. Marx authored a text book in Fall of 2002 that specifically attributed the cause of jaw necrosis to Aredia®. *See* ZA-0599911-15 (Ex. 22 to FVD). Adverse Event Reports dated September 2002 were sent to FDA and Novartis. *See Winter v. Novartis Pharms. Corp.*, No. 2:06-cv-4049, Trial Tr., 2436:2 - 2437:16 (W.D. Mo. Apr. 6, 2012) (THE COURT: "Your position was proved to be untrue.") (Ex. 23 to FVD). Another oral/maxillofacial surgeon reported three cases to NPC in early December 2002. R. Linda Weiss Dep. (Mar. 11, 2008) Ex. 2701 (Ex. 24 to FVD). Also in December of 2002 Dr.

Ruggiero was responsible for a seminal lecture discussing bisphosphonates and osteonecrosis of the jaw. Zometa® investigator Dr. Regina Landesberg explicitly provided NPC notice of the lecture. *See* Regina Landesberg Dep. (Jul. 31, 2008) Ex. 5206 (Ex. 25 to FVD). On December 30, 2002 Novartis received an additional report from a dentist of a patient with necrotic jaw bone. Katalin Csermak-Renner Dep. (Apr. 3, 2009) Ex. 7303 (Ex. 26 to FVD). FDA Medical Reviewer Dr. Bruce Schnieder contacted NPC about ONJ and bisphosphonates as he is seeing a bunch of cases with Aredia®. Csermak-Renner Dep. Ex. 7304 (attached as Ex. 27 to FVD).

### E. NPC Intentionally Mislead the Medical Community Regarding the True Relationship Between Aredia®, Zometa® and ONJ.

When Mr. Taylor started on Aredia and then Zometa there was absolutely nothing on the label regarding osteonecrosis of the jaw. Zometa® Label (Ex. 1 to FVD). Novartis sought to discredit information attributing the cause of the ONJ epidemic to Aredia® and Zometa®. *See* Stefano Fratarcangeli Dep. (May 22, 2008) Ex. 3610 (Ex. 28 to FVD); Fratarcangeli Dep. Ex. 3617 (Ex. 29 to FVD); Margaret (Dean) Linguri Dep. (Aug. 5, 2008) Ex. 5315 (Ex. 30 to FVD). When Novartis finally did change the labels, it added a few lines to the Post-Marketing Experiences section. *See* Zometa® Label (Sept. 2003) at ZA-0646743 (Ex. 31 to FVD). Any usefulness of that act was undercut by stating that ONJ has "other well documented multiple risk factors". *Id.* Attributing the case of ONJ to "other well documented multiple risk factors" is false and misleading. Peter Tarassoff Dep. (Jan. 14, 2009) Ex. 6925 (laundry list of risk factors has the appearance of "blowing smoke") (Ex. 32 to FVD); Tarassoff Dep. Ex. 6927 (warning to not "blow smoke" by adding co-risk factors) (Ex. 33 to FVD). Novartis' own epidemiologist informed it that such risk factors are in fact


Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 11 of 27 PageID #: 269606

not well documented at all, and are only presumed by Novartis as causes for BONJ. Katarzyna Sablinska Dep. (Apr. 15, 2008) Ex. 3312 (Ex. 34 to FVD). *See also* Young Ex. 4068 (Ex. 13 to FVD) (removed well documented as risk factors reported for osteoradionecrosis may not be appropriate for the distinct entity associated with the use of bisphosphonates); Robert Miranda Dep. (Sept. 11, 2008) Ex. 5901 (proof of chemotherapy and steroids as a cause is weak and assumed) (Ex. 35 to FVD); Yong Hei Dep. (Apr. 30, 2008) Ex. 3037 (risk factors are overly broad and do not reflect what is seen in BONJ patients) (Ex. 36 to FVD); Dionigi Maladorno Dep. (Mar. 19, 2008) Ex. 2906 (ONJ only reported with Aredia® and Zometa®) (Ex. 37 to FVD). Dr. Ruggiero advised that bisphosphonates are the real culprits. Peter Tarassoff (Apr. 10, 2008) Dep. Ex. 3233 (Ex. 38 to FVD). Novartis, however, sought to blame these "risk factors" for ONJ as much as possible. Weiss Dep. Ex. 2725 at ZAEM-00824590 (Ex. 39 to FVD). Novartis was advised in December of 2003 to warn the dental community. Linguri Dep. Ex. 5326 (attached as Ex. 40 to FVD).

**F. NPC Failed to Adequately Test Aredia® and Zometa®**

Despite the evidence demonstrating that NPC should have known that bisphosphonates can cause ONJ, the Aredia® and Zometa® trials failed to include any oral/maxillofacial surgeons or dentists. NPC's Third Supplemental Responses to Plaintiffs' First Set of Interrogatories, Number 13 (Ex. 41 to FVD). This contributed to the failure to detect ONJ. *Cf.* Robert Spaet Dep. (Feb. 19, 2008) Ex. 2127 (NPC did not collect and study jaw bones in Aredia®/Zometa® animal studies) (attached as Ex. 42 to FVD). Zometa® was approved by FDA as non-inferior, not superior, to Aredia® in preventing SREs. Ex. 1 to


Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 12 of 27 PageID #: 269607

FVD. The current recommended dosage is an overdose greatly increasing the risk of BONJ to no benefit, as a lower dose is equally as effective, but to protect Novartis revenue Novartis Oncology Chief Executive Officer David Epstein issued an order against testing lower doses. *Cf.* Weiss Dep. Ex. 2744 (Ex. 43 to FVD) *and* David Epstein Dep. (Feb. 9, 2010) Ex. 8802 (Ex. 44 to FVD). Novartis did not do any "registry studies" as requested by the FDA because it did not want to do the testing that would reveal proper dose and duration as related to ONJ. *See* Csermak-Renner Dep. Ex. 7342 (attached as Ex. 45 to FVD); Narang Dep. Ex. 5463 (attached as Ex. 46 to FVD).

These facts were adjudicated by the MDL Court and shown to overcome the Florida presumption. Mr. Taylor's testimony, and that of his treaters and experts only add to and extend this already dispositive fact pattern.

**G. Mr. Taylor and His Medical Treaters All Testified Regarding How His Treatment Would Have Changed to reduce the chance of BRONJ if NPC Had Adequately Tested and Warned Regarding Aredia®. and Zometa®.**

1. <u>Mr. Keith Taylor</u>

Mr. Taylor is a 52 year old resident of Ft. Lauderdale Florida. Taylor 03/22/2012 Dep. at 5, 10, excerpts attached as Ex. 1 to the Second Vecchione Declaration filed contemporaneously herewith ("SVD"). He was diagnosed with multiple myeloma in 1995. Id. Tr. 22-23. He has talked about the link between his ONJ with his oral surgeon Dr. Sawisch; his oncologist Dr. Wittlin and his dentist Dr. Cunningham. Tr. 45, ln 2-8. Dr. Sawisch told him that bisphosphonates caused his disease and that there was no cure for it. Id. Tr. 48, ln 1-15. His BONJ produced "the swelling of my face got really large, the pain was very intense, and I had numbness on the side of my face. And my jaw –I mean my


Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 13 of 27 PageID #: 269608

tongue, numbness in my tongue." Tr. 48, ln 18-21. The pain pills he was prescribed caused him to "throw up" and he stopped them. Tr. 50, ln 9-21. He continues to have numbness in his jaw and tongue "on and off." Tr. 75, ln 19-24. The sensation is "not pleasant." Tr. 77, ln 3-17. He fears going to dental appointments because of the danger of BRONJ. Tr. 78, ln 11-18. He is careful when he eats. Tr. 92, ln 5-12.

He was put on Aredia as "help for the bones". Tr. 119, ln 3-16. He was afraid of dying not wheelchairs when he was first diagnosed with multiple myeloma. Tr. 120, ln 3-16. He opted against tumor surgery on his spine given the uncertainty of result. Tr. 20-Tr. 121, ln 9. He was not told Aredia had anything to do with his walking or not; he was told it would help his bones and not of any side effect like BONJ. Tr. 121, ln 10-25. He started taking Aredia in 1995. Tr. 134, ln 16-20. He was switched to Zometa on October 16, 2001. Tr. 135, ln 16-20. It was prescribed, not for life extension or any other reason but "to hold calcium in my bones and bone pain management." Tr. 136, ln 10-25. Neither Zometa nor Aredia had any "significance" to how he felt. Tr. 141, ln 15-22. In April of 2004, while still on Zometa he went to have a tooth pulled. Tr. 142, ln 25-143, ln 2. He had **no** numbness in his lip or mouth after the removal of the tooth. Tr. 149, ln 5-21. That developed later. Tr. 149, ln 22-24. Dr. Sawisch "was very alarmed" after he examined Mr. Taylor. Tr. 150, ln 7-23. He went to his dentist thereafter and was concerned with the possibility of aggravating the injury. Tr. 153, ln 19-23. He specifically told Dr. Wittlin he could not go on Zometa again, reminding the doctor of his diagnosis. Tr. 165, ln 1-24.

2. Dr. Todd Sawisch, D.D.S.

Dr. Todd Sawisch, D.D.S., a board certified oral maxillofacial surgeon, has testified at trial about his diagnoses before. Tr. 8, ln 19- 9, ln 20 (Dr. Sawisch's transcript excerpts and cited exhibits are Ex. 2 to SVD). He has not been disqualified as an expert. He has not testified as an expert because at those times he was not board certified or did not think it in his best interest to do so. Tr. 10, ln 20- 10, ln 2. Dr. Sawisch produced his C.V. (Ex. 3 to SVD).[6]

Dr. Sawisch's diagnoses of Mr. Taylor's disease is in his records and is unequivocal:

> **IMPRESSION AND PLAN**: The patient's history of cancer and the use of bisphosphonate medications used to treat these conditions have contributed to his condition of the left posterior mandible. He has exposed necrotic bone due to concomitant use of Zometa and the removal of teeth 17. Keith's condition is consistent with a drug induced avascular necrosis of bone. This is a documented side effect of Aredia and Zometa.

(Ex. 4 to SVD, marked as part of Exhibit 2 to Dr. Sawisch's Deposition).

The document goes on to direct the treatment of BRONJ, not ONJ, for which the treatment is aggressive debridement and antibiotics. The term "avascular necrosis" is the first term given to BONJ by Dr. Robert Marx in his oral pathology textbook of 2002. Dr. Sawisch confirmed at his deposition that Dr. Wittlin consulted him on his diagnosis. Tr. 39-40, ln 25.

In 2005 his intake firm did not ask about bisphosphonates but they do today. Tr. 58, ln 21-59, ln 8. He now tries to proactively prevent "problems from happening. Tr. 59, ln 9-22. Dr. Sawisch explained in detail how BONJ differs from garden variety ONJ. Tr. 61, ln 17-62, ln 24. He recognized, as Novartis wouldn't that they are different entities. He testified that the presence of Aredia and Zometa made treating Mr. Taylor's injury more


Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 15 of 27 PageID #: 269610

difficult and explained why. Tr. 63, ln 1-25. Again, the bisphosphonates were the key measure as to his treatment of Mr. Taylor. Tr. 64, ln 11-65, ln 23.

Dr. Sawisch diagnosed him with BONJ before the AAOMS paper came out demonstrating not only his expertise but that the disease existed before the AAOMS definition and is independent of it. Tr. 66, ln 7-23.

3. Dr. Fredrick Wittlin, M.D.

Dr. Fredrick Wittlin, M.D. is an M.D. who has testified as an expert witness in federal court in his specialty. Wittlin Dep. Tr. 9, ln 5-17. (Excerpts of the deposition of Dr. Wittlin dated March 14, 2012 are attached as Ex. 5 to SVD). He is familiar with Aredia, pamidronate disodium. Tr. 11, ln 7-10. He is also familiar with Zometa. Id. at 11. He has treated Mr. Taylor for about fifteen years, "a long time." Id. Tr. 12, ln 15-19. Dr. Wittlin believes he participated in clinical trials when Novartis was testing 2 and 4 milligrams. Tr. 24. Dr. Wittlin states that as of 2001, 2002, 2003 "the issue of osteonecrosis of the jaw was not so clear." Tr. 31, ln 14-16. He notes that the drug was out before he knew of cases of osteonecrosis of the jaw. Tr. 31, ln 20-32, ln 12. He can't ascribe any pain control to Aredia or Zometa. Tr. 33, ln 18-34 ln 1. He stopped the Zometa because of renal concerns (creatine levels increasing). Tr. 35, ln 15-17. He received Dr. Sawisch's diagnosis of BRONJ. Tr. 38, ln 7-39, ln 18. He ascribes the BRONJ to the tooth extraction in April 2004. Tr. 44, ln 1-12. He expressed confusion as to the time of BRONJ. On September 2005 he notes he discussed BRONJ with "the Zometa company" [Novartis]. Id. 45, ln 19-24. He notes that a lesion in Mr. Taylor's mouth may be BRONJ. Tr. 48, ln 1-Tr. 49, ln 9. In August 18, 2010 there is a note of a two millimeter bone exposure" in Mr. Taylor's mouth. Dr. Wittlin



Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 16 of 27 PageID #: 269611

rejected the suggestions that that was a side effect of the chemotherapy he was taking at that time. Tr. 54, ln 13-21.

Novartis asks him whether if he was called to the stand would "he not offer an opinion within a reasonable degree of medical certainty as to what caused his ONJ?" Dr. Wittlin shot back "No. I wouldn't say that. I would say osteonecrosis of the jaw is certainly related in many cases to use of bisphosphonates." He then notes that he has changed what he tells the patients about bisphosphonates both as to the jaw and about femur fracture, and he notes ONJ is more prevalent in multiple myeloma patients. Tr. 60, ln 6-61, ln 13. He notes again that if he prescribes bisphosphonates but has changed his instructions and warnings. Tr. 62, ln 4-10. It is used to reduce Skeletal Related Events. Tr. 62, ln 13-16. He did not prescribe it for hypercalcaemia. Tr. 62, ln 18-21. He is unable to say what he would have done about putting Mr. Taylor on Zometa. Tr. 63, ln 23-24. He has no reason to dispute Dr. Sawisch's diagnosis of BRONJ. Tr. 66, ln 20-25. It seems plausible to him. Tr. 67, ln 20-22.

4. <u>James J. Driscoll, D.D.S.</u>

Dr. James J. Driscoll is a dentist and licensed oral surgeon. Tr. 53, ln 17-21. (Dr. Driscoll's April 3, 2012 deposition testimony is Ex. 6 to SVD). He had heard of Zometa but was not familiar with it until he prepared for his deposition. Tr. 10, ln 10-13. Dr. Driscoll retired in 2007. Tr. 15. He is a member of the American Dental Association and the American Association of Oral Maxillofacial Surgeons ("AAOMS") Tr. 19. (Dr. Driscoll's Curriculum Vitae is Ex. 7 to SVD). When he saw Mr. Taylor's decayed tooth there were two alternatives, remove or treat with antibiotics and let it take its own course. Tr. 29, ln 8-

30, ln 12. He did not routinely give antibiotics when removing a tooth at that time. Tr. 37, ln 2-17. Dr. Driscoll relied on the April 30, 2004 letter of Dr. Wittlin that there was no "contraindication" to that procedure from a "hematological standpoint." (Ex. 8 to SVD (From Exhibit 3 to Dr. Driscoll's Deposition)). Thus neither Dr. Wittlin, nor Dr. Driscoll knew of the dangers of pulling teeth while on Zometa and Aredia. Dr. Driscoll took this to mean he could pull the tooth with no expected adverse consequence. Tr. 41, ln 6-9. Mr. Taylor specifically told Dr. Driscoll he was on Zometa in 2004 but Dr. Driscoll was completely unaware of any association between Zometa and BRONJ. Tr. 43, ln 11-15. He had of course never seen any letter from Novartis on this matter. Tr. 43, ln 18-44, ln 11. Prior to 2005 or 2006 he provided no warning at all about ONJ when extracting teeth of those on bisphosphonates (or not on bisphosphonates); then he began using a warning from a study by Dr. Marx. Tr. 48, ln 7-49, ln 19. He recalls that after he became aware of it there was a recommendation to stop bisphosphonates three months before an extraction. Tr. 51, ln 1-25. He then began to do so relying on Dr. Marx. Tr. 52, ln 17-23.

Dr. Driscoll would have found it useful in his treatment of Mr. Taylor if he knew of the epidemic of ONJ Novartis was warned of by Dr. Marx in 2003. Tr. 57, ln 1-19. Had he known "He probably wouldn't have removed the tooth." Tr. 57, ln 21-23. He would have used the antibiotics which can be effective. Tr. 58, ln 2-14. His hesitation was because Mr. Taylor might be on antibiotics for life. Tr. 58, ln 18.[7]

5. Dr. Nelson Zide, M.D., FACP.

[7] Dr. Driscoll was then ganged up on by both his own defense lawyer and that of Novartis to change his testimony but his testimony creates an issue of fact.

Dr. Zide is an expert in infectious disease and has testified as such an expert in the past. Tr. 7, ln 13-17. (Transcript excerpts are Ex. 9 to SVD). Although he is an expert in infectious disease like HIV he is not aware it raises any risk of ONJ. Tr. 35, ln 7-13. He believes he's read literature that tells him Zometa has been "incriminated" in ONJ. Dr. Zide noted that Mr. Taylor's disease process in his jaw continued into October 19, 2005. Tr. 43.

6. <u>Dr. Vishtasb Broumand, M.D., D.M.D.</u>

Dr. Broumand, a board certified oral maxillofacial surgeon, submitted a written report, and was deposed on it as well. (SVD Ex. 10 and Ex. 11 are Dr. Broumand's Report and Deposition Excerpts respectively). In his report and in his testimony he notes that the more bisphosphonate the worse the prognosis for BONJ and that Mr. Taylor had such infusion for nearly nine years. Broumand Report at 1 He notes that Dr. Wittlin did not know about BRONJ until informed by Dr. Sawisch. Id. at 2. It is Dr. Broumand's opinion that the extraction of tooth 17 while on long-term bisphosphonates triggered Mr. Taylor's BRONJ. Id. He ruled out HIV, Decadron and Thalidomide as being the cause of Mr. Taylor's BRONJ. Id. at 4. His testimony was in accord with this. The numbness Mr. Taylor suffered was caused by BRONJ. Tr. 53-54, ln 3. The bone exposure was likely at least 6-8 weeks. Tr. 64, ln 7-25. He noted at his deposition that neither AIDS, no multiple myeloma, nor diabetes are causative factors for BONJ, they only predispose a patient to it. Tr. 90, ln 11-18. He noted the same for thalidomide. Tr. 92, ln 13-22. He noted his scientific analysis of why Mr. Taylor's injury was likely caused by bisphosphonates any of Defendant's other hypothetical "causes." Tr. 100, ln 3-21. Necrosis caused by bisphosphonates likely injured

Mr. Taylor's jaw as well. Tr. 106, ln 5-107, ln 5. He ruled out Mr. Taylor's various medications as causative of BRONJ. Tr. 140, ln 5-141, ln 8.

## III. ARGUMENT

### A. Summary Judgment Standard.

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. It is not the trial court's role to weigh evidence or make credibility determinations in ruling upon a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). It is the trial court's duty to determine whether there is a genuine issue of material fact for trial. *Id.* A court reviews the evidence in a motion for summary judgment in the light most favorable for the non-moving party. *Barnes v. Zaccari*, 669 F.3d 1295, 1298 (11th Cir. 2012). If the record presents a factual issue the Court must not decide it and must deny the motion and proceed to trial. *Western Group Nurseries v. Ergas* 167 F.3d 1354, 1359 (11th Cir. 1999). Every inference reasonably drawn from the evidence is resolved in the light most favorable to the non-moving party. *Perry v. Florida Secretary of Corrections*, 664 F.3d 1359, 1363 (11th 2011). Issues of proximate cause are best left to the jury. *See Sanders v. Lull Intern., Inc.*, 411 F.3d 1266, 1270-71 n.6 (11th Cir. 2005) issues of proximate cause best left to jury)(Georgia law); *King v. Story, Inc.*, 54 F.3d 696 (11th Cir. 1995)(same)(Georgia and Alabama law). In a pharmaceutical products liability suit the level and physician knowledge of incidence of risk can prevent summary judgment. *Tatum v. Schering Corp.*, 795 F.2d 925, 927-28 (11th Cir. 1995). The party opposing summary judgment need not respond until the movant has properly supported such a motion with sufficient evidence; if the moving party fails to show

that the facts underlying *all* relevant legal questions raised by the pleadings or otherwise are not in dispute summary judgment will be denied even if "the non-moving party has introduced no evidence whatsoever." *Amore v. G.D.Searle & Co., Inc.*, 748 F.Supp. 845 (S.D.Fla. 1990)(citations omitted). If there is doubt, the trial court should deny the motion and order a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. <u>The MDL Court Ruled that Plaintiffs Presented Sufficient Evidence to Contest the Issues of General Causation, Adequacy of Warnings, and Defectiveness.</u>**

Defendant has effectively conceded that if Dr. Broumand, or Dr. Sawisch can provide specific causation evidence of bisphosphonates and BRONJ this motion should fail. The MDL Court has already passed on whether the Florida plaintiffs like Mr. Taylor have presented enough evidence on general causation, inadequacy of warnings, and defectiveness to overcome summary judgment. Defendant's attempts to distinguish those rulings from the present motion are disingenuous. The Phossy Jaw and Gotcher and Jee articles speak for themselves. The Court should not condone NPC's attempts to reconsider these decided issues on which it has continually lost across the land. Defendant's motion must be denied.

**C. <u>Florida Law Requires a Warning to Dentists and There Is a Heightened Standard for Drug Companies Who Provide False Labels As Alleged Here.</u>**

Florida has adopted the Third Restatement Torts rather than the second. *Union Carbide Corp., v. Aubin*, __So.3d ---, 2012 WL 2327751 6-11 (Fla.App. 3 Dist.)(noting differences and similarities between second and third restatement). Because dentists are the main "trigger" point of BRONJ, as happened to Mr. Taylor, all federal courts addressing the question under the Third Restatement, in a tooth pull case, have found the learned intermediary doctrine extended to other treaters in a position to avoid the harm, as well as the

prescriber. *See Forman v. Novartis Pharms. Corp.*, No. 09-CV-4678 (ADS)(WDW), slip op. at p. 1 (E.D.N.Y. Nov. 14, 2011); *Fussman v. Novartis Pharms. Corp.*, No. 1:06CV149, 2011 WL 5836928, at *8 (M.D.N.C. Nov. 21, 2011); *Mahaney v. Novartis Pharms. Corp.*, No. 1:06-CV-00035-R, 2011 WL 6293439, at *4-*7 (W.D. Ky. Dec. 14, 2011); *In re Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (*White v. Novartis Pharms. Corp.*, No. 3:06-0550), 2009 WL 2497692, at *2 (M.D. Tenn. Aug. 13, 2009); *Hogan v. Novartis Pharms. Corp.*, No. 06CIV.0260, 2011 WL 1533467, at *9-10 (E.D.N.Y. Apr. 24, 2011); *Fussman v. Novartis Pharms. Corp.*, No. 1:06-CV-149, 2010 WL 4104707, at *2, *5 n. 2 (M.D.N.C. Oct. 18, 2010); *Stevens v. Novartis Pharms. Corp.*, 247 P.3d 244, 358 Mont. 474 (2010), cert. denied, 131 S.Ct. 2938 (May 31, 2011). Neither the prescriber nor the dentist in this case were warned by Novartis but both should have been.

Where Plaintiff has demonstrated falsehoods on the label, and misstatements by Novartis to the medical community, there is a heightened standard for the manufacturer to meet on its learned intermediary defense, and proximate cause. *See Zanzuri v. G.D. Searle & Company*, 748 F.Supp. 1511, 1518 (S.D.Fla. 1990)(when physician must piece together total risk of drug including 'misstatements by the product manufacturer, the physician's task becomes Herculean" as he must not only supplement the warning but "actually refute the errors communicated by the manufacturer.")(denying summary judgment on failure to warn and strict liability under comment k); *Amore v. G.D. Searle & Co., Inc.* 748 F.Supp. 845, 852 (S.D.Fla. 1990)(rejecting summary judgment where, as here, label failed to state drug caused the disease rather than that it was "associated" with it.)

**D. <u>Novartis' Proximate Cause Arguments Should be Rejected.</u>**



Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 22 of 27 PageID #: 269617

Defendant argues that this Court should unilaterally determine that Mr. Taylor's doctors would have prescribed Aredia® and Zometa® regardless, would not have given a warning about jaw problems, and that Mr. Taylor would not have heeded them if they had been warned adequately. Further, Novartis claim that these steps don't reduce incidence of ONJ. That is simply contra to every fact in the record. Dr. Wittlin says he would have given a warning, and Dr. Driscoll said he would not pull tooth 17 or give Mr. Taylor the option to wait on antibiotics. There is no reason to think they would not have discussed BONJ. Further, the testimony of Dr. Vogel, plaintiffs oncologic expert on cumulative dose and the famed Mayo Clinic's recommendations not to use Zometa in multiple myeloma patients will also raise an issue of fact.

Moreover, under Novartis' theory of the case Mr. Taylor should be taking the drug now, and he is not. The inference is clear and in Plaintiffs' favor. Novartis claims he is asymptomatic, there is no scientific evidence its drug causes ONJ, and that everyone would take the drug if they knew of the risk (that Novartis denies) anyway. Mr. Taylor is not taking Zometa® now that he knows the risk and even though Novartis claims he is asymptomatic. This is more than enough to preclude summary judgment. The treaters' testimony of what they would have done differently (including Dr. Wittlin's testimony on changed warnings and Dr. Driscoll's testimony on changing his warnings (and his note that said pulling the tooth was not contra indicated) demonstrate a different outcome. *See Sheckell v. AGV-USA Corp.*, 977 F.2d 1532, 1535 (11th Cir., 1993)(adequacy of warning and proximate cause jury issue and reversing summary judgment). Novartis's assertion that Mr. Taylor would have


Case 3:06-md-01760 Document 6020 Filed 07/30/12 Page 23 of 27 PageID #: 269618

contracted ONJ from something else is mere speculation. The fact his dental care is impacted by bisphosphonates as is the case with no other drugs. See Broumand Report, p. 4. Novartis's position is *contra* to facts in the record including information on its web site and the testimony of its own expert Alan Lipton. Novartis's website explains if you take the preventative steps it claims would not have affected Mr. Taylor, chances of ONJ ***decline by 75%.*** (Ex. 47 to FVD); Trial Testimony in Fussman v. Novartis of Defendant's Expert Alan Lipton, M.D. Ex. 61 to FVD).

**E. <u>Design Defect Survives and Comment k Never Requires Summary Judgment.</u>**

This has already been briefed and ruled on by the Court. Florida courts have handled comment k to Section 402A of the Restatement Second of Torts, *see Adams v. G.D. Searle & Co.*, 576 So.2d 278, 16 Fla. L. Weekly 103 (1991), in a manner that explains that warning and testing claims encompass defective design in Florida. The court in *G.D. Searle & Co.* noted that the claim for failure to test was within the failure to warn and design claim. *Id.*. The plaintiffs there, as here, brought forth evidence that the warnings were not "accurate, clear, and unambiguous." *Id.* ; *and see Union Carbide Corp. v. Aubin*, *supra.* (also denying dismissal under comment k under the Third Restatement). That is the same as the MDL Court's ruling here. *See* MDL-1760 Docket Nos. 2763 and DE 2764. The warning had to be submitted to the fact finder regardless of the presumptions of comment k, because knowledge had changed over time. In this case, the adequacy of dose, duration, and effects of Aredia® and Zometa® from their inception until now are issues of fact.

Defendant invites this Court to make a ruling contrary to Florida law that includes the warnings and instructions in its design claim.

## F. Implied Warranty

Novartis communicated with the prescriber through labels and sales representatives. In all of these communications it denied that its drug caused BRONJ. In such cases the warranty statements run through the physician. *See Knipe v. SmithKline Beecham Corporation*, 585 F.Supp.2d 602, 626 (E.D. Pa. 2008) (express warranty survives in prescription drug case as the warranty runs through the physician); *Forst v. SmithKline Beecham Corporation*, 602 F.Supp.2d. 960, 972 (E.D. Wisc. 2009) (same).[8]

Florida has abandoned privity in cases like this where a person like Mr. Taylor is a third party beneficiary of the contract and is the individual likely to consume the good or service. *See McCarthy v. Florida Ladder Company*, 295 So.2d 707, 709 (Fla. 2d. App. 1974)(no privity required to foreseeable users under implied warranty); *The Ocean Ritz of Daytona Condominium*, 710 So.2d 702, 705 (Fla. App. 5th 1998)(warranty runs to third party beneficiaries and foreseeable users).

The physician is an agent of the patient. This is also true under Florida law. *See Levine v. Wyeth, Inc*, 684 F.Supp.2d 1338, 1346 (M.D. Fla. 2010) (no evidence defendant was in "a contractual *or agency* relationship with plaintiff"). It would be strange indeed if the physician was patient's agent for learned intermediary but not for implied warranty and none of the cases cited by Novartis demonstrate such a strange outcome. A warranty runs to Mr. Taylor who was told the drug would strengthen his bones, not kill an important one.

## IV. CONCLUSION

For the foregoing reasons, NPC's motion should be denied.

---

[8] Plaintiff has stipulated to dismissal of his express warranty claim but not implied warranty.

Respectfully Submitted,

Dated: July 30, 2012

/s/ John J. Vecchione
John J. Vecchione
Valad and Vecchione, PLLC
3863 Plaza Drive
Fairfax, VA 22030
Telephone: (703) 352-4800
Facsimile: (703) 352-4820
jvecchione@valadlaw.com

-

**CERTIFICATE OF SERVICE**

I herby certify that a true and correct copy of the foregoing was furnished by operation of the Court's Electronic Case Filing System on counsel of record in case number 3:06-md-01760, on this 30th day of July, 2012.

/s/ John J. Vecchione
John J. Vecchione, Esq.