UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AREDIA® AND ZOMETA® PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | |
| | ) | No. 3:06-MD-1760 |
| (MDL No. 1760) | ) | Judge Campbell/Brown |
| | ) | |
| This Document Relates to: | ) | |
| *Delfino*, 3:08-0498 | ) | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that the motion to dismiss filed by Novartis Pharmaceuticals Corporation (NPC) (DE 6314; Related Case 17) be **GRANTED**, that this action be **DISMISSED** with prejudice under Rule 25(a)(1), Fed. R. Civ. P. and the Case Management Order (CMO), and that any pending motions be **TERMINATED** as moot.

### I.  INTRODUCTION
### AND
### BACKGROUND

Roseanne Delfino ("Ms. Delfino") and her husband, Thomas Delfino ("Mr. Delfino"), brought this action against NPC on August 22, 2006. (DE 6332, p. 1; Related Case 20) Ms. Delfino died on April 19, 2012, following which NPC filed a suggestion of death on October 5, 2012. (DE 6209; Related Case 10) NPC subsequently filed a motion to dismiss on January 8, 2013 for failure to comply with Rule 25(a)(1) and the CMO. (DE 6314, 6315; Related Case 17, 18) Mr. Delfino filed a cross-motion through counsel to substitute himself as his late wife's personal representative on January 22, 2013. (DE 6332, 6333; Related Case 20, 21) NPC replied on January 29, 2013, opposing Mr. Delfino's cross-motion. (DE 6341; Related Case 24)

The Magistrate Judge entered an order on April 2, 2013 denying the motion to substitute.

(DE 6523; Related Case 28) In that order, the Magistrate Judge noted that a separate report and recommendation (R&R) would be entered recommending that this case be dismissed for failure to comply Rule 25(a)(1) and the CMO. Plaintiff, through counsel, filed a document on April 15, 2013 captioned: "OBJECTIONS TO THE ANTICIPATED REPORT AND RECOMMENDATION ORDER TO DISMISS AND DENY SUBSTITUTION." (DE 6576; Related Case 29) NPC filed a response to the foregoing document on April 30, 2013 (DE 6605; Related Case 31), to which plaintiff replied on May 10, 2013 (DE 6660; Related Case 32).

The Magistrate Judge has reviewed and considered the documents referred to above. NPC's motion to dismiss is properly before the court.

## II. ANALYSIS

The procedures to be followed in substituting a personal representative for a deceased plaintiff in this multi-district litigation (MDL) are governed by Rule 25(a) and the CMO. The relevant parts of Rule 25(a) in this matter are as follows:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
>
> . . .
>
> A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. . . .

Rule 25(a)(1), (3), Fed. R. Civ. P. The court may enlarge the 90-day period under Rule 25(a)(1) if a motion for an extension of time is filed within the initial 90-day time frame. Rule 6(b), Fed. R. Civ. P. (1963 Amendment). Whether it does or not is left to the court's sound discretion. *Id*. The

2

court also may grant a motion for an extension of time after the 90-day time frame has run, but only upon a showing of "excusable neglect." Rules 6(b)(1)(B) and 25 (1963 Amendment), Fed. R. Civ. P.

The relevant parts of the CMO at issue here are as follows:

> Within sixty (60) days of . . . the death of a plaintiff . . . plaintiff's counsel shall file a 'Suggestion of Death' that identifies plaintiff and describes the time, date, and circumstances of plaintiff's death.
>
> . . .
>
> The ninety (90) day time period for filing a Motion for Substitution, as Required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death . . . .
>
> . . .
>
> In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open and estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death . . . .

(DE 89, pp. 12-13; 103, p. 1)

### A. NPC's Motion to Dismiss Under Rule 25(a)(1)

NPC's motion to dismiss under Rule 25(a)(1) is grounded in the facts and circumstances that resulted in the Magistrate Judge denying plaintiff's motion to substitute. (DE 6523; Related Case 28) The findings of fact and conclusions of law in that order are incorporated herein by reference. The dates relevant to the matter before the court are summarized below for convenience of review.

      Apr. 19, 2012  Ms. Delfino died.

May 21, 2012   Latest date under the CMO to open Ms. Delfino's estate based on the date of Ms. Delfino's death.

Jun. 18, 2012   Latest date under the CMO that plaintiff's counsel was required to file a suggestion of death based on the date of Ms. Delfino's death.

Sep. 17, 2012   Latest date under the Rule 25(a)(1) and the CMO to file a motion to substitute based on the latest date that the suggestion of death should have been filed.

Oct. 5, 2012   NPC filed a suggestion of death and served counsel with a copy via the district court's CM/ECF system, and Mr. Delfino by first-class mail.

Jan. 8, 2013   Motion to dismiss under Rule 25(a) filed by NPC.

Jan. 18, 2013   Letters of Administration are issued to Mr. Delfino.

Jan. 22, 2013   Cross-motion to substitute filed by plaintiff.

### 1. Excusable Neglect

The following conclusions may be gleaned from the time line provided above. Ms. Delfino's estate was opened nearly eight (8) months after it should have been under the CMO. The suggestion of death was filed more than three (3) months later than it should have been under the CMO, and then only when NPC filed it. Plaintiff filed his cross-motion to substitute more than five (5) months later than it should have been had plaintiff adhered to the not-later-than times established by the CMO, and nineteen (19) days late under Rule 25(a)(1). Plaintiff did not file a motion for an extension of time during the initial 90-day period under Rule 25(a)(1).

Although plaintiff did not file a motion for an extension of time within the 90-day period under Rule 25(a)(1), he did file a motion for an extension of time *nunc pro tunc* in his cross-motion to substitute after the 90-day period under Rule 25(a)(1) had run. For the court to grant plaintiff's motion to substitute filed after the 90-day period under Rule 25(a)(1), plaintiff must show

4

"excusable neglect." Rule 6(b)(1)(B), Fed. R. Civ. P.

Plaintiff claims that the following factors contributed to the delay in filing the motion to substitute. Plaintiff argues first that counsel was in trial when the suggestion of death was filed. (DE 6332, p. 2, 6333, p. 1, 6576, p. 1; Related Case 20, 21, 29) Plaintiff does not explain why being in trial in the beginning of October prevented counsel from filing the required motion to substitute during the remainder of the 90-day period when he was not in trial, or why being in trial in the beginning of October prevented counsel from at least filing a motion for an extension of time. The inability to comply with deadlines due to workload does not constitute "excusable neglect." *See Sherman v. Quinn*, 669 F.3d 421, 426 (7th Cir. 2012); *see also, McGuinnes v. Novartis Pharmaceuticals Corp.*, __ F.R.D. __, 2013 WL 425331 at * 3 (M.D.Fla. 2013)("the ability of Plaintiff's Counsel to manage his caseload is not a sufficient reason to disregard the Federal Rules of Civil Procedure").

Plaintiff's second argument is that following the trial "communication[s] between counsel and Mr. Delfino were sporadic"[1] due to unspecified holidays. (DE 6332, p. 2, 6333, p. 3, 6576, p. 6; Related Case 20, 21, 29) Plaintiff does not identify any holiday in particular, how its observance prevented counsel from filing a motion to substitute, or how that holiday prevented counsel from at least filing a motion for an extension of time to do so. *See Atkins v. City of Chicago, et al.*, 547 F.3d 869, 872 (7th Cir. 2008)("inexcusable" for not filing a motion for an extension of time to bring problems pertaining to substitution to the district court's attention).

Plaintiff's third argument is that communications also were "sporadic" during the period at

---

[1] "Sporadic" is defined as: "[o]curring at irregular intervals; having no pattern or order . . . ." *The American Heritage Dictionary* 1181 (2nd ed. 1982). The term "sporadic" does not mean that plaintiff was unable to, or did not, communicate with counsel because of the holidays, nor does plaintiff maintain that such was the case.

5

issue because of Hurricane Sandy. (DE 6332, p. 2, 6333, p. 3, 6576, pp. 6, 10-11; Related Case 20, 21, 29) Although Hurricane Sandy was a major disruptive force in the New York area when it hit, the storm did not make landfall until October 30, 2012 – more than three (3) weeks after the suggestion of death was filed. Again, plaintiff does not assert that he was unable to communicate with counsel, only that communications with counsel were "sporadic." Further, plaintiff makes no effort to explain what prevented him from complying with Rule 25(a)(1) in the three weeks before Sandy made landfall, or in the weeks and months following. Finally, counsel's offices are located in Fairfax, Virginia – not New York. Plaintiff makes no effort to explain why counsel in Virginia was affected by Hurricane Sandy hitting New York, and therefore unable to timely file the required motion to substitute or, once again, a motion for an extension of time.[2] *Id*.

Plaintiff's fourth argument is that counsel did not know whom to substitute for Ms. Delfino after her death – Mr. Delfino or their children. (DE 6332, p. 2, 6333, p. 4; Related Case 20, 21) Taking this argument as true, the record shows that the suggestion of death was served on counsel via the court's CMECF filing system. Therefore, during the "sporadic" communications between plaintiff and counsel, counsel had a duty to inquire if counsel were in doubt as to whom to substitute. As noted in n. 2 below, counsel already represented plaintiff in this litigation. Counsel had the authority to at least file motion for an extension of time to sort things out. *Id*.

Finally, plaintiff argues that counsel was never advised that he – Mr. Delfino – had been served with a suggestion of death. (DE 6332, p. 2, 6333, p. 1; Related Case 20, 21) Assuming that plaintiff did not advise counsel that he had been served the suggestion of death by first-class mail,

---

[2] Plaintiff makes much ado about the fact that counsel represented both he and his late wife, *i.e.*, that he was a real party in interest. Thus, even if there were no communications at all between plaintiff and counsel, counsel had the authority . . . indeed the duty . . . to file a motion for an extension of time to file a proper motion to substitute.

the suggestion of death was served on counsel via the court's CMECF system on October 5, 2012. The certificate of service clearly shows that a copy of the suggestion of death was served on Mr. Delfino by first-class mail. Thus, even if plaintiff did not advise counsel that he had been served a copy, counsel was on notice and had a duty to inquire.

None of the considerations raised by plaintiff addressed above, either individually or collectively, amount to "excusable neglect" as required under Rule 6(b)(1)(B). As the Magistrate Judge noted in his order denying the motion to substitute:

> [I]t is apparent that counsel has consistently ignored/disregard the procedures set forth in the CMO, and that he has twice missed the opportunity to comply with the 90-day filing requirement under Rule 25(a), even when NPC filed the suggestion of death – a requirement under the CMO that rests on the plaintiff's shoulders.

(DE 6523, p. 4; Related Case 28) Absent the required showing of "excusable neglect," this action should be dismissed with prejudice because counsel failed to comply with Rule 25(a)(1).

## 2. Notice and Service

Plaintiff argues that service of the suggestion of death was improper in an effort to prevent this case from being dismissed for failure to comply with Rule 25(a)(1): 1) plaintiff's counsel was not "asked if he would accept service" (DE 6576, pp. 7-10; Related Case 29); 2) the suggestion of death was not served on plaintiff (DE 6576, p. 7; Related Case 29); 3) the suggestion of death was not served on other successors and representatives and/or nonparty successors and representatives (DE 6576, p. 7; Related Case 29).

As to plaintiff's first argument, there is no question that Mr. Delfino was a party to this action before the suggestion of death was filed, and that he was represented by counsel during the period in question. (DE 4419; Related Case 5) Rule 5, Fed. R. Civ. P. governs the manner in which

7

service of the suggestion of death where a party is represented by counsel. Under Rule 5, "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Rule 5(b)(1), Fed. R. Civ. P. The Court has not ordered that service be made on parties in this MDL. Therefore, the suggestion of death should have been served on counsel . . . and it was. The next question is whether counsel agreed to accept service electronically.

If a local rule permits, "a party may make use of the court's transmission facilities to make service under Rule 5(b)(2)(E)." Rule 5(b)(3), Fed. R. Civ. P. The Federal Rules of Civil Procedure provides that:

> [S]ending [the document] by electronic means if the person consented in writing – in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served . . . .

Rule 5(b)(2)(E), Fed. R. Civ. P. Counsel in this case is deemed to have agreed in writing to this form of service given that, in every document that he has filed in this case since filing his initial notice of appearance, the certificate of service in those documents has stated: "I hereby certify that a copy of the foregoing was served on [date][ by operation of the Court's Electronic Case Filing System . . . ." As for the suggestion of death itself, the certificate of service on the last page shows that it was served on counsel, with following statement of service: "I hereby certify that I have on this 5th day of October, 2012 served a true and correct copy of the foregoing Suggestion of Death, by operation of the Court's Electronic Case Filing System . . . ." (DE 6209, p. 5; Ex. 1; Related Case 10) Plaintiff's argument that service on counsel was improper, or that counsel did not agree to accept service, is without merit.

Plaintiff's second argument is that the suggestion of death was not served on him personally.

8

For reasons already explained, personal service was neither required nor appropriate because plaintiff was represented by counsel. Even assuming that service on counsel were somehow improper, Rule 5(b)(C), Fed. R. Civ. P. provides that service may be made on a party by mailing the document to the party's last known address, in which case "service is complete upon mailing." The suggestion of death filed by NPC shows that a copy of the suggestion of death was mailed by first-class mail to plaintiff at 623 Rathburn Avenue, Staten Island, NY 10312 . . . the address shown in the plaintiff's fact sheet. (DE 6315, Ex. 3, p. 3; Related Case 18) As service was complete upon the mailing, plaintiff's argument that he was not served personally is without merit.

Plaintiff's last argument is that the suggestion of death was not served on nonparties. Because plaintiff was a party already subject to the court's jurisdiction, the only question is whether NPC failed to serve the suggestion of death on others with an interest in this action; in particular, the late Ms. Delfino's son and daughter (DE 6576, p. 7; Related Case 29).

Although Rule 25(a)(1) requires service, it does not specify which non parties to serve. *See Atkins*, 547 F.3d at 873 (citations omitted). Moreover, where, as here, the suggestion of death is filed by the opposing party, "that party is not required to serve a successor or representative if he doesn't know who that is, and so the 90-day period starts to run from the filing of the suggestion of death." *Id*. As previously noted, *supra* at p. 6, counsel did not know whom to substitute for Ms. Delfino – Mr. Delfino or their children. If counsel did not know whom the successor or representative was going to be, then it is fair to conclude that NPC would not have known. Consequently, formal service under Rule 4 was not required as to the late Ms. Delfino's children, and the 90 days under Rule 25(a)(1) began to run on October 5, 2012 when the notice of death was filed. For these reasons, plaintiff's argument that NPC did not serve the suggestion of death on the

9

late Ms. Delfino's children is without merit.

### B. Analysis of Dismissal on Procedural Grounds

NPC's motion to dismiss is based on the overarching argument that plaintiff has failed to comply with the procedures in Rule 25(a)(1) and the CMO. Dismissal on procedural grounds is disfavored in the Sixth Circuit, subject to the sound discretion of the court. *See Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). An abuse of discretion exists when the district court's action leaves "[a] definite and firm conviction that the trial court committed a clear error of judgment." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).

Courts in the Sixth Circuit have typically considered the following four factors when considering whether dismissal is proper for failure to comply with procedural rules: 1) whether the failure to comply was a result of willfulness, bad faith, or fault; 2) whether the adversary was prejudiced; 3) whether the dismissed party was warned that failure to comply could lead to dismissal; 4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See e.g., Schafer v. City of Defiance Police Department, et al.*, 529 F.3d 731, 737 (6th Cir. 2008); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999); *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988)(superseded by statute).

#### 1. Willfulness, Bad Faith or Fault

For the reasons explained, *supra* at pp. 5-7, counsel in this action was at fault for not filing either the required motion to substitute, or a motion for an extension of time to do so. Given that counsel was on notice on October 5, 2012 that a suggestion of death had been filed, counsel's failure to do one or the other is deemed to have been willful.

10

### 2. Prejudice

NPC has had to bear the costs of litigating this particular issue, costs that it would not have had to bear had counsel complied with Rule 25(a)(1) and/or CMO. NPC has been prejudiced to the extent that NPC has had to commit time and resources to litigate an issue resulting from counsel's willful disregard of Rule 25(a)(1) and the CMO.

### 3. Prior Warning

The Both Rule 25(a)(1) and the CMO provide clear warning that failure to substitute may result in dismissal with prejudice. (DE 89, ¶ V.C.3, p. 13) Moreover, counsel was a member of Plaintiffs' Steering Committee (PSC). (DE 87) Therefore he is knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligation to comply with those requirements. In other words, counsel knew, and fully understood, the possible consequences of his failure to comply with Rule 25(a)(1) and the CMO.

### 4. Whether Other less Drastic Sanctions Were Considered

The Magistrate Judge recognizes that dismissal with prejudice is the ultimate sanction for counsel's failure to comply with Rule 25(a)(1) and the CMO. However, after considering other less drastic sanctions, the Magistrate Judge is of the view that dismissal with prejudice is the appropriate sanction in this case. Counsel's failure to comply with Rule 25(a)(1) and the CMO has burdened the court, strained scarce court resources, delayed disposition of this case, and prejudiced the defendant.

### 5. Summary of the Analysis

The four factors addressed above each weigh in NPC's favor. Therefore, NPC's motion to dismiss on procedural grounds is warranted under the circumstances described herein.

11

## B. Mr. Delfino's Loss of Consortium Claim

Finally, plaintiff argues that, even if this case is dismissed for failure to comply with Rule 25(a)(1) and the CMO, his loss of consortium claim should be permitted to continue.

The following claim is set forth in the second amended complaint: "As a proximate cause of Defendant's wrongful conduct . . . Mr. Delfino has lost the spousal consortium of Mrs. Delfino. He will likely continue to lose his spouse's consortium in the future due to the Defendant's wrongful conduct." (DE 1331, Count VI, ¶ 53, p. 17; Related Case 1) The complaint is clear on its face that Mr. Delfino's claim in this action derives from his late wife's claims, *i.e.*, it is derivative.

The law in New York is well established that a loss of consortium claim is not an independent cause of action, but is derivative in nature and may only be maintained pursuant to the primary tort. *See Goldman v. MCL Companies of Chicago, Inc.*, 131 F.Supp.2d 425, 427 (S.D.N.Y. 2000)(citing *O'Gorman v. Holland*, 2000 WL 134514 at * 3 (S.D.N.Y. 2000); *Jordan v. Lipsig, Sullivan, Mollen & Liapakis, P.C.*, 689 F.Supp. 192, 196 (S.D.N.Y. 1988); *see also Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 894 (1984)(citing *Liff v. Schildkrout*, 49 N.Y.2d 622, 632-33 (1980)). Where the "injured" spouse's underlying claim is dismissed, the claim for loss of consortium must be dismissed as well. *See Gerzog v. London Fog Corp.*, 907 F.Supp. 590, 605 (E.D.N.Y. 1995); *see also Djeddah v. Williams*, 590 N.Y.S.2d 908 (2011)(citing *Camadeo v. Leeds*, 736 N.Y.S.2d 368 (2002))

As shown above, under New York law, Mr. Delfino's consortium claim does not survive the dismissal of his wife's underlying tort claim. Because this action should be dismissed for reasons explained herein, Mr. Delfino's loss of consortium claim must be **DISMISSED** as well.

## RECOMMENDATIONS

12

For the reasons explained above, the Magistrate Judge recommends that the motion to dismiss filed by NPC (DE 6314; Related Case 17) be **GRANTED**, that this action be **DISMISSED** with prejudice under Rule 25(a)(1), Fed. R. Civ. P. and the CMO, and that any pending motions be **TERMINATED** as moot.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the _____ day of May, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge