UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AREDIA® AND ZOMETA® PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | |
| | ) | No. 3:06-MD-1760 |
| (MDL No. 1760) | ) | Judge Campbell/Brown |
| | ) | |
| This Document Relates to: | ) | |
| (ALL CASES) | ) | |

**ORDER**

The Plaintiffs' Steering Committee (PSC) filed a motion on September 10, 2013 asking the court to "issue an order immediately staying all discovery in the pending [multi-district litigation] MDL cases, and for an Order remanding . . . all MDL cases at the rate of 100 cases per month until all . . . pending cases have been remanded." (MDL Doc. 6976) "Alternatively," the PSC "ask[s] that the Court immediately grant a Rule 16 conference." (MDL Doc. 6976) The Novartis Pharmaceuticals Corporation (NPC) responded in opposition to the motion on September 24, 2013 (MDL Doc. 7020), and the PSC replied on September 30, 2013 (MDL Doc. 7024). This matter was referred to the Magistrate Judge for decision. (MDL Doc. 6979)

**A. The PSC's Motion to Stay All Discovery
in the Pending MDL Cases**

The Magistrate Judge previously denied the PSC's motion to stay all discovery in this MDL pending NPC's response to the basic motion. (MDL Doc. 7014) NPC has responded. (MDL Doc. 7020) For reasons that will become apparent, the PSC's motion to stay all discovery in this MDL (MDL Doc. 6976) is again **DENIED**.

**B. The PSC's Motion to Remand 100 MDL Cases Each
Month Until Remand Is Completed**

The Magistrate Judge notes at the outset that this is not the first time that the PSC has raised this issue, or a variation of it, before the court. (MDL Doc. 2909, 3675, 4672, 5213, 5723) In each

instance, the PSC's efforts over the last four years to obtain blanket remand have been denied, the last time following a hearing before the District Judge on July 20, 2012. (MDL Doc. 2961, 4154, 4862, 5246, 6072) It was subsequent to that hearing that the present MDL schedule was ordered. (MDL Doc. 6072)

The PSC's first argument in this most recent incarnation is that, comparing this MDL with the *Fosamax* MDL, this MDL is too slow, and that "plaintiffs will still be in this Court into 2015" despite the fact that "[t]his MDL is even more mature than Fosamax." (DE 6977, ¶ 1, pp. 2-3) Under the court's current schedule, of which the PSC is well aware, the fourth and final group of cases (Group 4) will be referred to fact discovery in February 2014, with suggestion of remand scheduled for Group 4 cases in September 2014. Although there may be delays in some cases, the predictability of those delays, and the court's experience in dealing with them, should permit the court to meet the September 2014 remand schedule. The PSC's subjective opinion that the MDL cases still will be in this court into 2015 is just that – an opinion.

The PSC's second argument is that, under the present MDL, litigation upon remand will take longer than if all of the cases were remanded now. (MDL Doc. 6976, pp. 3-4) The PSC asserts the following in support of its view: "[W]henever a case is remanded, [NPC] explains to the remand court that nothing has been accomplished in the MDL Court, everything is just too complicated, and that two years are needed to get the case to trial." (MDL Doc. 6977, p. 3) The PSC refers to the joint case management report (JCMR) filed by the parties in *Arnold v. NPC*, 8:06-01709 (M.D. Fla., Tampa Div.)[1] – quoted in part below – to support its argument.

> NPC respectfully suggests that this case [*Arnold*] be set for trail on or after March 26, 2015. To date, 10 cases from the consolidated

---

[1] *Arnold* is a Group 1 case in which suggestion of remand was entered on March 11, 2013 (MDL Doc. 6456; Related Case 59)

2

> Aredia®/Zometa® litigation have proceeded to trial. Eight have proceeded to verdict, plaintiff voluntarily dismissed one with prejudice after two days of trial, and one is currently underway. All of these cases were remanded from the MDL court in a procedural posture different than this case, because until the two most recent waves, fact *and* expert discovery in the first six waves was conducted in the MDL, along with dispositive motions briefing. For the ten trial cases remanded in that advanced posture, 17 months passed on average from when the cases were remanded to when trial commenced. Because expert discovery has yet to be conducted in this case, **it is more appropriate that this complex case proceed on a 24 month timeline**, in order to allow the parties to fully develop the issues.

(MDL Doc. 6977, Ex. B, pp. 9-10)(emphasis added) It is apparent from the passage quoted above that NPC does envision that two years are required to conclude litigation, at least with respect to *Arnold*.[2] The next question is whether any inference can be drawn from NPC's stated position in *Arnold* with respect to the other MDL cases.

The PSC quotes the JCMR in *Arnold* in an effort to show that NPC's two-year position in *Arnold* pertains not just to *Arnold*, but to the other cases in the current MDL as well.

> Examples of prior cases in this district are instructive. Consider for example the three remanded cases in this district with scheduled trial dates. Unlike *Arnold*, these cases were remanded after the completion of expert discovery, as well as *Daubert* and dispositive motions briefing. The first case, *Chiles v. NPC*, was remanded to the Middle District of Florida on December 23, 2010. Trial commenced in *Chiles* over 25[3] months after remand on February 11, 2013 (Ex. 8). The second, *Dopson Troutt v. NPC*, was remanded to the Middle District of Florida on May 23, 2012, and trial is scheduled for October 21, 2013 (Ex. 9). In *Dopson Troutt*, approximately 17 months will pass between remand and the

---

[2] The actual case management and scheduling order (CMSO) entered on August 28, 2013 set trial in *Arnold* for the September 2014 trial term, approximately 18 months after suggestion of remand was entered. (Arnold Doc. 27, ¶ 5, p. 2)

[3] The memorandum in support of the PSC's motion incorrectly quotes the JCMR in *Arnold*, which actually reads: "[t]rial commenced in *Chiles* over 20 months after remand . . . ." (Chiles Doc. 19, p. 10) Although misquoted, the 25-month time frame is, in fact, correct based on the dates in the record.

3

> commencement of trial. The third, *Guenther v. NPC*, was remanded to the Middle District of Florida on September 5, 2012 (Ex. 10). Trial has been set to begin in *Guenther* on September 9, 2013. Therefore, over 12 months will pass between remand and the commencement of trial. Here, the *Arnold* case was remanded to the Middle District of Florida on March 21, 2013, without the benefit of completed expert disclosures, expert discovery, and *Daubert* motions and dispositive motions briefing previously completed in the MDL. The proposed schedule allows approximately 12 months for the proceedings that typically have occurred in the MDL, and then about 10 months for the proceedings that have typically occurred in remand courts (~~two months~~[4] faster than *Guenther* and *Dopson Troutt*).

(MDL Doc. 6977, pp. 3-4)

*Chiles v. NPC*, 3:06-00096 (M.D. Fla., Jacksonville Div.), cited above, was remanded in an advanced "procedural posture" on December 23, 2010. (MDL Doc. 4172) Trial began on February 11, 2013 – 25-plus months after remand.[5] (Chiles M.D. Fla. Doc. 198) *Chiles* does not illustrate that more time is needed to litigate current MDL cases following remand because of the tailored discovery conducted beforehand. Rather, *Chiles* illustrates that sometimes more than two years are needed to litigate even a case that has been remanded in an advanced "procedural posture," *i.e.*, the same length of time sought by NPC in *Arnold*.

The section of the JCMR quoted above also refers to *Dopson-Troutt, et al., v. NPC*, 8:06-01708 (M.D. Fla, Tampa Div.) and *Guenther v. NPC*, 6:08-00456 (M.D. Fla., Orlando Div.). *Dopson-Troutt* was remanded on May 23, 2012, and trial is set for October 21, 2013. (Dopson-Troutt M.D. Fla. Doc. 14, 47, 175, 182) If *Dopson-Troutt* proceeds to trial on schedule, then the time from remand to trial will be just shy of 17 months – approximately the same length of time scheduled to litigate the case in *Arnold*. *Guenther*, on the other hand, was remanded on September

---

[4] The stricken words "two months" do not appear in the quoted JCMR. (MDL Doc. 6977, Ex. B, p. 10)

[5] Judgment entered against NPC on March 1, 2013. (Chiles Doc. 231)

5, 2012, trial began on September 9, 2013 and ended on September 16, 2013.[6] (Guenther M.D. Fla. Doc. 15, 225, 263) Remand to trial in *Guenther* was just over one year.

Of the three cases referred to in the JCMR in *Arnold*, only two come close to supporting the PSC's argument: *Dopson-Troutt* and *Guenther*. That said, neither *Dopson-Troutt* nor *Guenther* support the conclusion that the remaining cases in the MDL should be remanded now. First, *Dopson-Troutt* and *Guenther* are statistically insignificant when viewed in the context of the many other cases that have been remanded since the Group 1 cases were first referred to fact discovery in August 2012. No decision of the magnitude sought by the PSC can rest on such a small statistical sample. Second, *Dopson-Troutt* and *Guenther* offer no assurance that remanding the cases will result in those cases being litigated sooner than they would be under the present MDL schedule. The only real conclusion that can be drawn from *Dopson-Troutt* and *Guenther* is that there is a 50:50 chance that one similarly situated case will be litigated sooner than another. Third, fact discovery has to be completed at some point. Although it is conceivable that remanding the MDL cases might save time in a limited number of cases, the blanket remand sought by the PSC almost certainly would not have the desired effect on saving time because other litigation requirements will then compete head-to-head with fact discovery presently being addressed in the MDL unencumbered by those other requirements. Moreover, given the discovery problems that continue to arise in the MDL, remanding the remaining MDL cases could actually increase the time required for litigation in that competitive environment. Fourth, the fact discovery ongoing in the MDL is based on the agreed premise that the oldest cases should proceed first. Were all of the MDL cases remanded as the PSC asks, this agreed approach would be unenforceable, possibly delaying litigation in some cases even more. Fifth, this court has guided the parties through the first three groups of the remaining MDL

---

[6] The jury in *Guenther* found for the plaintiffs, but final judgment has not yet entered. (Guenther Doc. 282)

cases referred to fact discovery. Having become familiar with likely problems in the fact discovery process, this court has the experience to ensure that fact discovery is completed in a timely manner that is fair to all parties. The remand court will not have the luxury of that experience, and the time necessary to resolve discovery issues upon remand would likely further increase the time to litigate these cases. Finally, coordinating competing fact discovery issues/requirements in a single court is a far more efficient for both the courts and the parties than trying to coordinate those same issues/requirements between many courts.

The PSC's third argument is that NPC "resists applying – as is required – the statute of limitations choice of law . . . ." (MDL Doc. 6977, p. 4) Remanding the MDL cases as the PSC urges will not change that.

The PSC's fourth argument is that the plaintiff's "need their day in court while they live." (MDL Doc. 6977, p. 4) As previously noted, *supra* at p. 5, the current MDL is structured with just that in mind. Nothing in the PSC's motion supports that conclusion that the plaintiffs to whom the PSC refers are more likely to have their day in court if their cases are remanded now than they would under the current MDL schedule.

The PSC's final argument is that "[e]nough cases have left this MDL that it can now manage the orderly remand for the Courts to handle the discovery . . . ." (MDL Doc. 6977, pp. 4-5) The PSC's argument flies in the face of reality. One only need look at the docket to conclude that many of the cases currently in the MDL likely will have discovery-related problems if relieved of the requirement to proceed in a systematic fashion through fact discovery under the aegis of the MDL. Failure to comply with discovery deadlines, unwillingness/refusal to provide required discovery, disputes over what is discoverable, refusal to cooperate, untimely/multiple requests for extensions of time, untimely motions to quash/for protective orders, failure/refusal to appear for noticed

depositions, failure to comply with the orders of the court, etc. are problems that continue unabated in a large number of cases that the PSC seeks to have remanded. The court has a duty under the MDL to ensure that these problems are not passed on to the remand court.

The PSC has not shown that changing horses mid-stream will result in the benefits claimed. Accordingly, the PSC's motion to remand all MDL cases (MDL Doc. 6976) is **DENIED**.

### C. The PSC's Motion in the Alternative for a Rule 16 Hearing

As previously noted, the subject before the court is not new. Nevertheless, the Magistrate Judge would be willing to have a Rule 16 hearing on ways to speed up the current process so that cases are not delayed beyond the present schedule. Unfortunately, the vast majority of the delays in the groups currently pending fact discovery have been caused by plaintiffs' counsel, not NPC. Under these circumstances, a Rule 16 hearing would serve no useful purpose. The PSC's motion for a Rule 16 hearing (MDL Doc. 6976) is **DENIED** without prejudice. The PSC may renew its motion for a Rule 16 hearing if it is prepared to present specific recommendations to make the current discovery process speedier and more efficient.

It is so ORDERED.

ENTERED this 10th day of October, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge