**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| In Re: | ) |
| | ) |
| **AREDIA® AND ZOMETA® PRODUCTS** | ) |
| **LIABILITY LITIGATION** | ) |
| | )     **No. 3:06-MD-1760** |
| **(MDL No. 1760)** | )     **Judge Campbell/Brown** |
| | ) |
| **This Document Relates to:** | ) |
| **(ALL CASES)** | ) |

## ORDER

### I.  BACKGROUND

Plaintiff Barbara Caruthers (Ms. Caruthers), case no. 3:07-01182, filed a motion to compel

on September 6, 2013.  (MDL Doc. 6962; Related Case 37)  The District Judge referred this matter

to the Magistrate Judge for decision the same day.  Thereafter, on September 9, 2013, plaintiffs

Larry Wood, case no. 3:08-00907, and Elaine and Robert Nerzig, case no. 3:08-00020, moved to

join Ms. Caruthers' motion on their own behalf, as well as on behalf of all the other plaintiffs in this

multi-district litigation (MDL).  (MDL Doc. 6967; Related Cases 44, 34)[1]  NPC filed a response in

opposition to the foregoing motions on September 20, 2013.  (MDL Doc. 7008)  On October 8,

2013, Ms. Caruthers filed a motion for leave to reply to NPC's response.  (MDL Doc. 7040; Related

Case 44)

The motion to join filed by plaintiffs Wood and Nerzig (MDL Doc. 6967; Related Cases 44,

34) is **GRANTED**.  Although the Case Management Order (CMO) in this MDL provides that

"[r]eplies . . . may be filed without leave of the Court" (MDL Doc. 89, ¶ IV.A, p. 11), the motion

for leave to file a reply is (MDL Doc. 7040; Related Case 44) is **GRANTED** as well.  The balance

of this order addresses the specific issues raised in the underlying motion (MDL Doc. 6962).

---

[1]  MDL Doc. 6967 appears as three separate docket entries, *i.e.*, 6967, 6968, and 6981)

## II. ARGUMENTS

### A. Plaintiff Caruthers' Motion to Compel

Ms. Caruthers asserts that MRC "has obtained over 660 sets of records" pertaining to her late husband, and demands that NPC "produce the records it has obtained from MRC." (MDL Doc. 6962, pp. 1-2) Ms. Caruthers alleges that, in response to her first request for production of these documents, NPC "directed [her] to obtain the requested documentation from . . . MRC . . . ." (MDL Doc. 6963, ¶ I, p. 2) Ms. Caruthers reminds the court that during a telephone conference with the Magistrate Judge on September 5, 2013 (MDL Doc. 6972), her attorney, William Curtis of the Curtis Law Group, "explained that it would be financially impractical to obtain the documentation held by MRC concerning [Mr.] Caruthers." (MDL Doc. 6963, ¶ III, p. 2) Ms. Caruthers contends further that she "has no way of determining which documents are pertinent." (MDL Doc. 6963, ¶ III, p. 3)

Ms. Caruthers also asserts that, in addition to "acquiring medical and billing records for [NPC]," MRC also "performs a medical record review and compiles a medical summary for [NPC's] sole use," and that "throughout the course of recent depositions . . . [NPC] regularly utilized MRC's medical summaries." (MDL Doc. 6963, ¶ II, p. 2) Ms. Caruthers argues that she is "entitled to . . . the medical records and billing related to [Mr.] Caruthers that [NPC] acquired from MRC," and that she should "not be forced to spend tens of thousands of dollars and wade through 496 sets of medical records and 165 sets of medical bills many of which appear to have been obtained by MRC well after" her late husband's death. (MDL Doc. 6963, ¶ IV, p. 3) Alternatively, Ms. Caruthers "seeks the medical summaries that MRC provide[s] to [NPC] [to] aid her in determining which medical records and bills are necessary to acquire directly form MRC." (MDL Doc. 6963, ¶ IV, p. 3)

## B. Motion to Join Filed by Plaintiffs Wood and Neirzig

The motion to join was filed by Mr. Terance Sweeney of the Law offices of Terence J. Sweeney, Esq. and John Vecchione Law, PLLC. In their motion, plaintiffs Wood and Neirzig assert the following:

> For the first time in this eight year old litigation, the above counsel has learned that defendant Novartis has long possessed the information for plaintiff's medical expenses that they routinely request in each case from each plaintiff under threat of preclusion. Novartis apparently has routinely received summaries of medical records and billing records. Though the length of time Novartis has been receiving these summaries cannot be determined at this time, clearly they have known exactly, for the most part, which medical bills relate to dental care and which do not.

(MDL Doc. 6967, ¶ 1, p. 1)

Plaintiffs Wood and Neirzig assert that the "large numbers of records" gathered by MRC "pose a dilemma" as to "which records contain the information necessary to comply with [NPC's] discovery demands." (MDL Doc. 6967, ¶ 3, p. 2) They assert further that "[t]he 'previews' or snapshots of these records offered by MRC do not always permit one to see if the records actually contain the information," that on occasion counsel have "purchased a record only to find out it does not actually contain the information necessary," that records obtained directly from the healthcare provider "are incomplete when compared to the records obtained by MRC," and that "[t]he record delivery system in place, available to plaintiffs, clearly presents numerous obstacles to plaintiffs in their desire to obtain complete and accurate information. . . ." (MDL Doc. 6967, ¶¶ 3-4, p. 2) Plaintiffs Wood and Neirzig request in the alternative that, should NPC "assert 'work product' or some other privilege, then a sampling of these summaries could be provided to the Court, in camera, for its review and guidance on redaction." (MDL Doc. 6967, ¶ 4, p. 2)

In addition to the foregoing, plaintiffs Wood and Neirzig assert that "th[e] Court and the Plaintiffs are entitled to any agreements [NPC] has with MRC for the organization and production of Plaintiff's medical records," that "perplexing" questions now exist regarding past preclusion relief granted to NPC based on NPC's claim that it "require[d] the information and could not ascertain it from any other source," and that the lack of the information "'force[d] NPC either to guess or conduct expansive deposition inquiry into each charge . . . .'" (MDL Doc. 6967, ¶¶ 6-7, p. 3) Concluding that NPC "seems to have possessed the very information they alleged that they lacked, from MRC," Plaintiffs demand the "same relief as plaintiffs in the Caruthers matter and that all contracts and agreements between Novartis or its counsel and agents and MRC be produced to the Court and the Plaintiffs." (MDL Doc. 6967,¶¶ 7-8, pp. p. 3-4)

## C. NPC's Response

The following summarizes NPC's responses in opposition to the motions presently before the court:

1. The motions are premature and procedurally improper, because plaintiffs failed to meet and confer on the matter following the September 5, 2013 telephone conference during which the Magistrate Judge "instructed the parties to 'discuss this issue offline to see if some accommodation could be reached.'" (MDL Doc. 7008, ¶ I, p. 3)

2. The motions are procedurally improper because they "seek an order compelling NPC to produce . . . medical summaries, billing summaries . . . and agreements between MRC and NPC" that "have never been subject of a formal or informal discovery request . . . ." "as set forth in the Federal Rules of Civil Procedure . . . ." (MDL Doc. 7008, ¶ I, pp. 3-4)

3. "Plaintiffs have the burden of proof . . . ." as well as the "responsibility . . . to obtain whatever records they need to determine and prove their alleged damages." (MDL Doc, 7008, ¶ II.A, p. 4)

4

4.    "NPC paid for MRC's services and also ensured that the records were available" to plaintiffs, but plaintiffs have the option to seek those records directly from their clients' medical and/or dental providers if they so desire.  (MDL Doc. 7008, ¶ II.A, pp. 4-7)

5.    Plaintiffs "seek[] to gain access, through NPC, to all the medical, billing, and other records that MRC has collected for free."  (MDL Doc. 7008, ¶ II.A, p. 5)

6.    Mr. Curtis, counsel for Ms. Caruthers, "grossly overstate[d] the cost" of obtaining the records sought from MRC when he told the Magistrate Judge during the September 5, 2013 telephone conference that it would cost $60,000 to obtain all the records from MRC. (MDL Doc. 7008, ¶ I.A, pp. 5-6)  NPC asserts further that Mr. Curtis could have obtained "all of the records from MRC" for less than $10,000, the records pertaining to medical expenses for $3,450, and the billing records for every dental provider from 2005 for $105.75. (MDL Doc. 7008, ¶ I.A, p. 6)

7.    "NPC paid MRC to collect the records of the[] . . . plaintiffs in the MDL," the records "are available to both NPC and the plaintiffs' counsel," MRC's copy/image fees "charged to plaintiffs for records the order . . . are a small fraction of what NPC . . . had to pay for the record collection and to have the repository," and Plaintiffs should not be "getting the records for free" because counsel "can neither trouble themselves to reach out to their own clients' providers to collect their own records . . . ."  (MDL Doc. 7008, ¶ II, p. 8)

8.    The medical summaries at issue are "prepared under the direction of counsel" and, as such "are protected work product" and not discoverable  (MDL Doc. 7008, ¶ III and III.A, pp. 8-10)

9.    The billing summaries at issue do not exist, but even if they did, they would not answer NPC's damages interrogatory, nor would they be discoverable because they would constitute work product.

10.    The third-party vendor agreements sought are not relevant to any trial issue, they constitute NPC's work product and, as such, are not discoverable.  (MDL Doc. 7008, ¶ III.B, p. 11)

### D.  Plaintiff Caruthers' Reply

In her reply, plaintiff Caruthers repeats her argument that she is entitled to the "records and bills which [NPC] actually obtained from MRC."  (MDL Doc. 7040, ¶ I, p. 1)  Counsel states that

"counsel for the respective parties . . . confer[red] regarding the issues raised in . . . the Motion to Compel."  (MDL Doc. 7040, ¶ II, p. 2)  Plaintiff asserts that "it would be a colossal waste of time and resources to obtain all of the documentation gathered by MRC concerning [Mr.] Caruthers," and that there would be "knowing one way or the other without purchasing each individual record or spending countless hours scanning half-pages of blacked out records to guess at whether [NPC] might have ordered the same records."  (MDL Doc. 7040, p. 2)  Plaintiff concludes by stating that she "should not be forced to order 621 sets of records, many of which contain irrelevant and redundant information." (MDL Doc. 7040, ¶ III, p. 3)  Finally, plaintiff Caruthers provided lengthy discussion of matters pertaining to the Plaintiffs' Steering Committee (PSC) motion for a protective order pertaining to NPC's efforts to obtain mental health records, which is not at issue here.[2]

### III.  DETERMINING THE MATTER BEFORE THE COURT

The subject before the court is familiar one.  Medical records collected by and obtained from MRC is one of the recurring themes in this action, plaintiffs' motion to compel being merely the latest twist.  As is also often the case in this MDL, the arguments on both sides are long on allegations of blame and bad faith, but short of specifics.  In short, the Magistrate Judge cannot render an informed judgment in this matter without additional detail.  Therefore, the parties shall provide the information described below within the time frames specified.  Plaintiffs may withdraw their motions not later than Friday, October 25, 2013 if they decide that they do not wish to proceed.

### A.  The Meet and Confer Instruction

The Magistrate Judge instructed the parties during the September 5, 2013 telephone conference to get together "offline" to see if this matter could be resolved without involving the

---

[2]  The motion attributed to the PSC was misfiled.  The Clerk directed that the order be refiled but, as of this date, it has not been.  Therefore the motion to which plaintiff Caruthers refers is not before the court.

court. Plaintiff Caruthers filed her motion to compel the next day on September 6, 2013. Mr. Sweeney filed the motion to join four days later on September 9, 2013.

As Mr. Curtis raised the issue, the Magistrate Judge deems that it fell to him to initiate those discussions with NPC. Mr. Curtis is ORDERED to notice the court not later than Friday, November 1, 2013 regarding what specific actions he took to comply with the Magistrate Judge's instruction between the time the telephone conference ended and when he filed the motion to compel the following day. As Mr. Sweeney has moved to join, Mr. Sweeney is ORDERED to notice the court not later than Friday, November 1, 2013 regarding what specific actions he took to comply with the Magistrate Judge's instruction between the time of the telephone conference and when he filed the motion to join.

### B. Costs of Production

The Magistrate Judge notes up front that he was particularly struck by Mr. Curtis's representation during the September 5, 2013 telephone conference that it would cost his client $60,000 to obtain the necessary records in her case from MRC. The Magistrate Judge is struck even more by the disparity between Mr. Curtis's September 5 representation and NPC's response that the cost is <u>substantially</u> less than that represented by Mr. Curtis. Although Mr. Curtis now characterizes those costs as "tens of thousands of dollars," the difference remains substantial.

Mr. Curtis is ORDERED to notice the court not later than Friday, November 1, 2013 with his explanation of how he calculated the $60,000 figure quoted during the September 5 telephone conference, including any documentation supportive of that calculation. Mr. Curtis is further ORDERED to provide whatever costs may have been incurred to date, *i.e.*, charges paid to MRC, in obtaining records from MRC in the two Group 3 cases in which he represents clients in this MDL,

7

*i.e.*, *McKinnon*, 3:08-00920 and *Watts*, 3:08-01082. Any charges in obtaining medical records from MRC in *McKinnon* and *Watts,* as well as similar charges discussed below, shall clearly distinguish between costs actually paid to MRC and those attributable to overhead.

NPC is ORDERED to notice the court not later than Friday, November 1, 2013 with an explanation of how it calculated the three amounts quoted in its response pertaining to *Caruthers*, *i.e.*, $10,000 to obtain all of the records, $3,430 to obtain all of the billing records, and $105.75 to provide the billing records for dental providers from 2005, including documentation supportive of those calculations.

Mr. Sweeney is ORDERED to notice the court not later than Friday, November 1, 2013 with the actual costs paid to MRC to obtain records from MRC in *Wood* and *Nerzig*, as well as *Casali*, 3:08-00928 and *Arbuckle*, 3:08-00916, both of which Mr. Sweeney refers to in the motion to join. Mr. Sweeney is further ORDERED to notice court not later than Friday, November 1, 2013 with the actual costs paid to MRC in the following cases in which he represented clients in this MDL: *Thorn*, 3:06-00771; *Scalamoni*, 3:06-01166; *Bee, et al.*, 3:07-00665; *LeCompte, et al.*, 3:07-00779; *Koppel, et al.*, 3:07-00779; *Weiner, et al.*, 3:08-00017; *Delfino, et al.*, 3:08-00498. As instructed above, Mr. Sweeney shall distinguish between costs actually paid to MRC and those attributable to overhead.

### C.  Medical Summaries

NPC argues that the medical summaries at issue constitute work product and, as such, they are not discoverable. NPC is ORDERED to deliver a copy of the medical summaries in *Caruthers*, *Wood*, and *Nerzig* to chambers for the Magistrate Judge's *in camera* inspection not later than Friday, November 1, 2013.

## D.  Billing Summaries

NPC argues that the billing summaries at issue do not exist.  Since it is difficult to prove a negative directly, NPC is ORDERED to deliver to chambers not later than Friday, November 1, 2013 a copy of those portions of its contract(s) with MRC that specify the deliverables that MRC is under contract to provide to NPC, as well as a single copy/example of each deliverable, for the Magistrate Judge's *in camera* inspection.

## E.  Parallel Discovery Efforts

Messers. Curtis and Sweeney are ORDERED to notice the court not later than Friday, November 1, 2013 with the details of what actions, if any, *i.e.*, the who, what, when, and how of those actions, counsel took in *Caruthers*, *Wood*, and *Nerzig* to obtain the medical/dental records at issue from the respective medical/dental providers prior to filing their respective motions.

It is so ORDERED.

ENTERED this 17th day of October, 2013.


/s/Joe B. Brown_____
Joe B. Brown
United States Magistrate Judge

9