UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| AREDIA and ZOMETA PRODUCTS ) | No. 3:06-MDL-01760 |
| LIABILITY LITIGATION ) | Judge Campbell/Brown |
| (MDL No. 1760) ) | |
| ) | |
| This Document Relates to[1] ) | |
| Case Nos. 3:07-CV-1182 Caruthers ) | |
| 3:08-CV-0907 Woods ) | |
| 3:08-CV-0020 Nerzig ) | |

### **O R D E R**

Presently pending are two motions to compel (Docket Entries 6962 (Caruthers), 6967 (Woods and Nerzig and all cases), and a motion (Docket Entry 6968) for Woods and Nerzig to join the motion to compel (6962). These are motions to compel the Defendant Novartis Pharmaceutical Corporation (NPC) to comply fully and produce all documentation responses to Plaintiffs' first requests for production, specifically the production of all medical and billing records pertaining to the three named Plaintiffs' cases, as well as all other cases where such requests were made.

The motions to compel (Docket Entries 6962 and 6967) are **DENIED**. The motion to join (Docket Entry 6968) is **GRANTED.**

The motion in the *Caruthers* case states: "Plaintiffs simply want NPC to produce the records it has produced from Medical Research Consultants" (MRC) (Docket Entry 7071). These motions were filed following a lengthy telephone conference with the parties on

---

[1] Clerk will spread this order to all cases.

September 5, 2013 (Docket Entry 6972). The Magistrate Judge would note that he had directed the parties to confer about the matter to see if it could be resolved before they filed motions. Plaintiffs' concluded on their own that this would be futile and counsel for Ms. Caruthers filed his motion on the following day (Docket Entry 6962).

The parties then filed a series of responses and replies, which as the Magistrate Judge noted in his order of October 17, 2013 (Docket Entry 7072) were long on accusations and short on specifics.

The Magistrate Judge had been particularly struck during the telephone conference by counsel for Ms. Caruthers stating that it would cost $60,000 to obtain all the records from MRC relating to Ms. Caruthers. In the various pleadings in this matter Plaintiffs' counsel have stressed the cost of obtaining records from MRC.

It now appears that costs to obtain all 371 records in the Caruthers' case would be some $9,716. The cost just for obtaining all billing and insurance records would be $3,430. The cost for only the doctors' billing records would be $105.75 (Docket Entry 7100, p. 2). According to Ms. Caruthers' counsel one additional record is now available from MRC (Docket Entry 7097 fn.3).

Once the actual costs incurred and the costs for all records of a Plaintiff was determined, it appears that the

estimated costs by Plaintiffs' counsel were greatly exaggerated. The Magistrate Judge's order directed the parties to provide the Magistrate Judge with a number of documents and explanations in order that these motions could be resolved (Docket Entry 7072). NPC, after seeking a review of the Magistrate Judge's order (Docket Entry 7101) and an affirmation by the District Judge (Docket Entry 7211), provided the Magistrate Judge *in camera* with the contract with MRC acquiring medical records pursuant to the case management order (Docket Entry 89), and the records secured by MRC for the Plaintiffs.

NPC also provided *in camera* the separate contract for MRC to provide medical summaries of the various records they obtained. NPC provided MRC sample summaries that had previously be done by NPC's in-house staff as go-by's. Under this contract the various medical records secured by MRC were reviewed by an MRC employee, generally a nurse, and a summary of the medical records was prepared for Defendant's counsel's use.

NPC provided copies of the medical summaries to the Magistrate Judge in the three cited cases, as well as an example of all records obtained in a closed case. The Magistrate Judge has reviewed these submissions by NPC and finds no summaries of billing records or any contract to provide billing summaries. The Magistrate Judge does find that there are summaries of the medical records. The Magistrate Judge fully agrees with NPC's position that

3

the medical summaries are classic attorney/work product and is not discoverable. *Hickman v. Taylor,* 329 U.S. 495 (1947).

NPC engaged MRC to secure medical records of the various Plaintiffs in this matter. It is clear from a review of the records available that MRC has vacuumed the field quite thoroughly. Even though these are records of the Plaintiffs, MRC apparently has been more efficient in some cases in obtaining records than Plaintiffs through their counsel.

It appears that MRC was able to obtain records that Plaintiffs' counsel could not obtain on their own (*see* Docket Entry 7096). In the *Wood* case Plaintiffs' counsel was only able to locate two of six doctors, whereas MRC apparently located records for all six. Plaintiffs' counsel was then able to obtain the records that he could not locate on his own for what appears to be nominal costs from MRC.

As NPC points out in their pleadings (Docket Entry 7130) NPC has paid MRC for obtaining these records. Plaintiffs' counsel are allowed partial views of 20 of the first 50 pages for free to determine if they wish to purchase a particular document set (Docket Entry 7130, p. 9). Actual costs for records ordered are $20 per set and 25¢ per page. A 100 page set would cost $45.

These are the Plaintiffs' records and they are certainly free to obtain them directly from the doctors, although as noted above, it appears that MRC has been more effective in locating

4

records than some of the Plaintiffs' counsel. NPC has paid for the acquisition of these records and has, as agreed early in the case, made the records available for the Plaintiffs' purchases at reasonable rates, all things considered.

Plaintiffs have not borne any of the costs for MRC's efforts to locate and acquire records. They get the benefit of having these records available should they want them. Requiring them to pay a reasonable fee for them is, in the Magistrate Judge's view, entirely appropriate.

The Plaintiffs demand that they be provided a list of all documents that NPC has ordered does invade the thought process and work product of NPC. Plaintiffs have failed to show that this is an extraordinary case that would justify such a production.

In short, the Magistrate Judge has read these extensive arguments of both sides, some of which are unnecessary personal attacks and unnecessary generalizations and speculations, to see what is actually at stake.

The Magistrate Judge finds first that NPC has not secured any summary of medical expenses from MRC and, therefore, there is nothing to produce of that nature. Second, the medical summaries prepared by MRC at NPC's direction and request are appropriately designated as attorney/work product and need not be produced. Third, NPC has used MRC to obtain voluminous medical records in the various cases, and all of the records so obtained are available to

Plaintiffs' counsel for reasonable costs. Plaintiffs' counsel have an opportunity to review portions of the records to see what is relevant. It would be unfair to require NPC to provide exactly what records it has ordered from the data base of records obtained. If Plaintiffs believe the MRC costs are expensive, they are free to obtain the records from the doctors and other providers themselves.

It is so **ORDERED**.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge